UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MERLENE BACCHUS,<br><br>              Plaintiff,<br><br>        -against-<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION, RENÉE PEPPER and BOARD OF EDUCATION EMPLOYEES LOCAL 372, DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO,<br><br>              Defendants. | Case No.: 12-cv-1663(WFK) (MDG)<br><br><br>**SECOND AMENDED COMPLAINT** |

Plaintiff MERLENE BACCHUS ("Plaintiff" or "Bacchus"), by and through her attorneys, LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C., as and for her Second Amended Complaint (pursuant to leave of Court granted by So Ordered Stipulation of the parties dated July 20, 2012 (Docket Entry No.: 16)) complains of Defendants NEW YORK CITY DEPARTMENT OF EDUCATION (the "DOE"), RENÉE PEPPER ("Pepper") and BOARD OF EDUCATION EMPLOYEES LOCAL 372, DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO (the "Union") (together "Defendants"), upon information and belief, as follows:

## I. NATURE OF THE ACTION

1.       Bacchus brings this action to remedy discrimination and hostile work environment on the basis of race, national origin and ethnicity in the terms, conditions, and privileges of employment in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§

1981"), the New York State Human Rights Law, Executive Law § 269 *et seq.* ("Human Rights Law") and the New York City Civil Rights Law ("City Law").

2. In addition, Bacchus claims that in violation of those laws, the DOE and Pepper retaliated against her and subjected her to hostile work environment retaliation for having complained about said Defendants' discriminatory acts toward her.

3. Bacchus further claims that the DOE terminated her employment wrongfully and without cause in breach of the terms of the Collective Bargaining Agreement ("CBA") between the DOE and the Union.

4. Bacchus also brings this action pursuant to the New York Civil Service Law Article 14 - Public Employees' Fair Employment Act, § 209-a (2) (C) ("Taylor Law"), the New York City Collective Bargaining Law (Administrative Code of the City of New York) § 12-306 (b) (1), and (3) ("NYCCBL") and/or the New York Common Law for breach of the CBA and the Union's duty of fair representation.

5. Bacchus seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to Title VII, § 1981, Human Rights Law, City Law, Taylor Law, NYCCBL and/or New York Common Law.

## II. <u>JURISDICTION AND VENUE</u>

6. Jurisdiction of the subject matter of this action is established in this court by Title VII and § 1981.

7. All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this court's jurisdiction, are based on the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, to hear related state law causes of action. The events, parties, transactions, and injuries that form the basis of Bacchus' federal claims are identical to the

events, parties, transactions, and injuries that form the basis of her claims brought under the Human Rights Law, City Law, Taylor Law, NYCCBL and/or New York Common Law.

8.      As part the unlawful employment practices complained of herein occurred within the Eastern District of New York and Defendants regularly do business within this District, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## III.  SATISFACTION OF PROCEDURAL PREREQUISITES FOR SUIT

9.      Bacchus has complied with all procedural prerequisites required by law.

10.     On or about March 3, 2010, Bacchus filed a discrimination complaint assigned Case No. 10140309 with the New York State Division of Human Rights ("NYSDHR") against the DOE. The discrimination complaint was timely filed under Title VII and the Human Rights Law.

11.     On or about September 26, 2011, Bacchus filed a retaliation complaint assigned Case No. 10150957 with the NYSDHR against the DOE. The retaliation complaint was also timely filed under Title VII and the Human Rights Law.

12.     By two separate Determinations and Orders of Dismissal for Administrative Convenience each dated January 11, 2012, the NYSDHR dismissed Bacchus' discrimination and retaliation complaints on the grounds of administrative convenience.

13.     By Notices of Suit Rights each dated January 26, 2012, the EEOC advised Bacchus of her right to sue on the discrimination and retaliation complaints respectively.

14.     Bacchus' claim pursuant to Title VII was timely commenced within 90 days of her receipt of said Notices.

15.     Pursuant to the provisions of the CBA, Bacchus  exhausted the contractual remedies prior to filing this suit.

3

16. Following the wrongful termination of her employment, Bacchus initiated a grievance through the Union.

17. In violation of the duty of fair representation it owed to Bacchus, the Union processed Bacchus' grievance arbitrarily and in bad faith.

18. The Union processed Bacchus' grievance up to Step 3 of the grievance procedure but unreasonably failed to process the grievance to arbitration or appeal same to a Step 4 grievance panel or to arbitration.

19. On or about March 6, 2012, the Union notified Bacchus that the Union had decided that it would not process the grievance to arbitration. Given the Union's representations, it is futile to expect that it would process the grievance any further.

20. Bacchus' claim pursuant to the Taylor Law, NYCCBL and/or New York Common Law was timely commenced within 4 months of such notification.

21. Prior to the commencement of this action, Bacchus complied with the New York Education Law § 3813(1) requirement for service of a notice of claim upon the DOE or its officers. Specifically:

   a. On or about March 26, 2010, the NYSDHR served the DOE with a copy of Bacchus' discrimination complaint assigned Case No. 10140309. The claim asserted by Bacchus' in this action pursuant the Human Rights Law and City Law are "reasonably related" to the claim set forth in Bacchus' discrimination complaint assigned Case No. 10140309.

   b. Also, on or about April 15, 2011, within 90 days after DOE terminated Bacchus employment, the Union served DOE with Bacchus' Step II Discharge Grievance.

   c. The combined effect of the service of Bacchus' discrimination complaint and Discharge Grievance upon the DOE substantially complied with the notice of claim requirement of Education Law § 3813(1).

   d. The notice of claim described above in paragraph 21(a)-(c) was timely served upon the DOE within 90 days after the accrual of Bacchus' claim.

e.    At least 30 days have elapsed since said notice of claim was served upon the DOE but they have neglected, failed and/or refused to satisfy the claim.

## IV.  **THE PARTIES**

22.    Bacchus is a Black female of West Indies or Caribbean national origin, in that she was born in Guyana, South America, one the Islands of the Caribbean.

23.    At all times herein alleged, Bacchus was resident within the City and State of New York, and was employed by DOE for more than 16 years.

24.    At all times herein alleged, The City of New York was and still is a municipal corporation duly organized and existing under the laws of the State of New York.

25.    At all times herein alleged, The City of New York has and still maintains an agency or department known as the DOE, with duly appointed officials, commissioners, principals, assistant principals, agents and/or employees, pursuant to State Law and the mandate of the Charter of the City of New York.

26.    The DOE is a system of public schools which consists of numerous schools, including but not limited to, PS/IS 295Q, District 29 ("PS 295") located at 222-14 Jamaica Avenue, Queens County, City and State of New York.

27.    At all times herein alleged, Pepper, was and still is an adult person and an employee, servant, agent, representative and/or an assistant principal with the DOE assigned to PS 295.

28.    At all times herein alleged, Pepper aided, abetted, incited, compelled or coerced the violation of Bacchus' rights in violation of § 1981, the Human Rights Law and the City Law.

29.    The DOE is an employer within the meaning of Title VII, § 1981, Human Rights Law, City Law, Taylor Law, NYCCBL and/or New York common law.

30.     At all times herein alleged, the Union was and still is a labor organization representing employees in an industry affecting commerce, and maintains its principal offices in New York, New York.

31.     At all times herein alleged, the Union was and still is the recognized exclusive collective bargaining representative of the bargaining unit consisting of employees of the DOE, including but not limited to Bacchus and all other regularly scheduled employees in the title of School Aide.

## V. FACTUAL ALLEGATIONS

32.     Bacchus was employed by DOE as a School Aide from December 1994 until March 11, 2011, when DOE wrongfully terminated her employment on the pretextual grounds of alleged history of corporal punishment complaints, verbal abuse complaints, Warning Letters, Disciplinary Letters, disciplinary suspension without pay, continued insubordination and disregard of school wide policies and Chancellor's Regulation.

33.     In actual fact, after having worked for the DOE for over a period of 14 years without receiving any disciplinary charge or write-up, Bacchus was discharged on the basis of a barrage of trumped-up disciplinary charges, complaints and/or warning letters machinated and compiled by Pepper during the last 17 months of Bacchus' employment for the purpose of Bacchus' discharge so that a former co-worker of Bacchus, Kasia Lopez ("Lopez"), (White female of Polish national origin, who was employed by DOE as a School Aide at PS 295 but laid-off on seniority grounds) could be given Bacchus' employment position.

34.     Bacchus was initially assigned to PS 295 on or about September 4, 2007. Prior to her assignment to PS 295, Bacchus had been employed by DOE as a School Aide at various schools (including IS 394K, IS 390K and MS 61K) for approximately 13 years during which she

had an unblemished work performance record devoid of any disciplinary action, write ups, warning letters, complaint or misconduct.

35.     Bacchus' job performance throughout her tenure with the DOE was consistently excellent.  In recognition of Bacchus' excellent job performance and dedicated service to DOE students, Bacchus was awarded numerous Certificates of Appreciation and commendations by the various schools she was assigned to.

36.     Despite Bacchus' outstanding job performance, Pepper, Angela Thompson ("Thompson") Principal of PS 295, Barbara Levy ("Levy") White female employed by DOE at PS 295 as Secretary/Office Manager, Colleen O'Connell ("O'Connell"), White female, employed by DOE at PS 295 as Guidance Counselor and Jennifer Laballa ("Laballa") White female also employed by DOE at PS 295 as a Teacher, intentionally discriminated against Bacchus and subjected her to hostile work environment on the basis of her race, national origin and/or ethnicity and retaliated against her for her complaints against discrimination, among other things, by procuring fabricated, false or trumped-up allegations of corporal punishment complaints, verbal abuse complaints, Warning Letters, Disciplinary Letters and other allegations of misconduct against her.

37.     When Bacchus began to work at PS 295 in September 2007, she was one of two individuals employed as School Aides at said school. During the earlier months of 2009, Lopez, a White female of Polish national origin was hired as a full time School Aide. A few months later Shawn Horton ("Horton") African America female was hired as the fourth School Aide.

38.     On or about September 24, 2009, the DOE notified Lopez and Horton that they had been selected on seniority grounds for lay-off due to budgetary constraints. Following such notification, the administrative staff of PS 295 (including but not limited to, Pepper, Thompson

and Levy) embarked upon a campaign of calumny against Bacchus, "forced" her to perform out of title work and started to procure fabricated, false or trumped-up disciplinary charges, complaints and/or write-ups against her, in order to create a pretextual ground for Bacchus' discharge or "force" her to resign so that Lopez can be recalled to take Bacchus' position.

39.     While soliciting donations for Lopez and Horton, Levy openly stated that it was so sad that Lopez and Horton had to be laid-off but that she (Levy) is unable to get rid of the workers (meaning Bacchus) she wished to discharge.

40.     Also, Thompson repeatedly stated that she did not like West Indian women, that she has a problem with West Indian women and that West Indians cannot even speak English language.

41.     Despite Bacchus' satisfactory job performance and numerous years of complete loyalty in serving the DOE, beginning from about September 2009, DOE by and through Pepper and other members of PS 295 administrative staff began to, unfairly write-up and reprimand Bacchus; continually harass Bacchus and subject her to verbal abuse, insulting remarks, open hostility, out of title  work assignment and duties undesired by other Student Aides; subject her to hostile work environment; closely monitor and subject her to closer scrutiny and criticism than similarly situated White and non-West Indian Student Aides; cut Bacchus' work hours and assign same to Lopez as a per diem or substitute employee; deprive Bacchus of job responsibilities or duties and suspend her from work without pay. Specifically:

a.     Shortly after Lopez's lay-off, Pepper and Thompson began to improperly cut or reduce the work hours of the remaining Student Aides (including Bacchus') and assigned such work hours to Lopez as a per-diem or substitute Student Aide.

b.      On the same September 24, 2009, Thompson borrowed a large flatbed cart from the school's custodial staff and instructed Bacchus to load the cart full with school supplies and boxes of books and push same from the basement to the third and fourth floors of the school building even though it was not within an Aide's job description to load and/or push such heavy cart.

c.      On September 25, 2009 Pepper again instructed Bacchus to load the flatbed cart with heavy boxes and books for distribution. When a male custodian offered to help Bacchus lift the heavy boxes, Pepper instructed him not to help Bacchus.

d.      On the same September 25, while in the basement loading the flatbed cart as directed by Pepper, Bacchus received a note from Rachel Langone ("Langone") (White substitute School Aide) by which Levy instructed Bacchus to go and transport class 502 from the library back to room 401. Bacchus was instructed to perform this duty even though Langone and Trina Nixon, a non-West Indian School Aide, were available and did not have any work assignment at the time.

e.      Bacchus hurt her back on September 25 while pushing the heavy flatbed cart. As a result, she consulted with a physician and was placed on a disability leave for a couple days and later diagnosed with lumbago. Also, it was recommended that she not lift weight in excess of 10 pounds.

f.      Because of the recommendation that Bacchus not lift weight in excess of 10 pounds, Thompson fabricated a story that Bacchus refused to lift two reams of paper and on the basis of the false story, she (Thompson) subjected Bacchus to a medical examination by DOE physicians for a determination as to whether Bacchus was fit to perform her duties as a School Aide.

g.      Thompson expected that the report of the medical examination would conclude that Bacchus was unfit for her duties so that she (Thompson) can recall Lopez to fill Bacchus' position. However, Bacchus passed the medical examination and returned to work on December 3, 2009.

h.      On November 25, 2009, Pepper improperly criticized and verbally abused Bacchus for allegedly failing to line up students when instructed to do so. In actual fact, no such instruction was given to Bacchus.

i.      Having failed to have Bacchus declared medically unfit to perform her duties, Pepper and Thompson procured and/or coerced a student to falsely allege that Bacchus subjected her to corporal punishment/verbal abuse on November 23, 2009, November 25, 2009, and December 1, 2009. Thus, on December 3, 2009 (the date Bacchus returned to work following the "forced" DOE medical examination), she received a letter dated the same date, concerning the false allegation.

j.      On or about December 4, 2009, ostensibly because of the false allegations of corporal punishment/verbal abuse, Bacchus was instructed, not to have contact with children, not to report to the lunchroom for lunch duty and not to report to the auditorium for dismissal.

k.      On December 9, 2009, Thompson alleged that there were complaints that on November 25, 2009, Bacchus called a student a "jerk", grabbed another student by his collar and yelled "you are in trouble", grabbed a third student and yelled "you are in trouble" and grabbed a fourth student, and that she allegedly violated Chancellor's Regulation 402, A-420 and A-421. These allegations were untrue. The students in question were coerced to make these allegations and the statements attributed to the respective students and alleged student witnesses were fabricated and/or forged by Thompson, Pepper, Levy, O'Connell and/or Laballa.

10

l.     On December 9, 2009, Thompson further alleged that a student alleged that on November 23, 2009, Bacchus grabbed her by the shoulders very hard and that the alleged conduct was in violation of Chancellor's Regulation A-420.  As with the other allegations, the student in question was coerced to make this allegation and the statement attributed to her was fabricated and/or forged by Thompson, Pepper, Levy, O'Connell and/or Laballa.

m.     On December 9, 2009, Thompson also alleged that a student alleged that on December 3, 2009, Bacchus called him "stupid" and that the allegation was in violation of Chancellor's Regulation A-421. As with the other allegations, the student in question was coerced to make this allegation and the statement attributed to the student was fabricated and/or forged by Thompson, Pepper, Levy, O'Connell and/or Laballa.

42.     As a result of the unfair treatment Bacchus was subjected to by Pepper and other members of PS 295 administrative staff, on or about December 16, 2009, Bacchus filed a complaint of discrimination with the DOE's Office of Equal Opportunity against PS 295 administrative staff, including, Pepper, Levy, O'Connell and Laballa.

43.     At the time Bacchus filed said complaint of discrimination, she reasonably believed and still believes that Pepper, Thompson and the other individuals named in the complaint were violating her civil rights by discriminating against her on the basis of age, race, color, ethnicity and/or national origin.

44.     As a result of Bacchus' complaint of discrimination and in furtherance of their attempt to set Bacchus up for discharge, Pepper, Levy, Thompson and O'Connell intensified the discriminatory acts against Bacchus and retaliated against her for making said complaint, among other things, by fabricating additional allegations of corporal punishment and/or verbal abuse against Bacchus and performing false investigations into such allegations; by failing to

investigate or properly investigate such allegations; by coercing students to make fabricated or false complaints against Bacchus; by suspending Bacchus from work without pay; by subjecting Bacchus to retaliatory hostile work environment; by constantly following Bacchus to the bathroom and subjecting her to closer scrutiny, micromanagement, disparate treatment and unfair criticism than similarly situated White and non-West Indian Student Aides; by subjecting Bacchus to unfair reprimands, continual harassment, intimidation, verbal abuse and/or insults; and by humiliating her by constantly yelling at her and speaking to her with loud tone of voice. Specifically:

a. On January 15, 2010, Thompson alleged that a student alleged that on December 1, 2009, Bacchus grabbed her "by the hair" and pulled her from the front of the line to the back of the line. This allegation was false and was emphatically denied by Bacchus. As with the other allegations, the student in question was coerced to make the allegation and the statement attributed to her was fabricated and/or forged by Thompson, Pepper, Levy, O'Connell and/or Laballa.

b. By Disciplinary Letter to Bacchus dated January 19, 2010 (which letter was riddled with fabricated or false statements allegedly obtained from false witnesses), Pepper allegedly found Bacchus' performance to be "unsatisfactory" and "unprofessional" with respect to an incident which took place on or about January 6, 2010, when Pepper followed Bacchus to the bathroom while closely monitoring and scrutinizing her performance. Following this incident, Pepper instructed Bacchus to go to the bathroom only after she has clocked out and that she should not to go to the bathroom without permission while still on the clock. Such restriction was not placed on White and non-West Indian Student Aides.

c.     By letter to Bacchus dated February 2, 2010, regarding the fabricated incidents alleged to have taken place on November 25, 2010, referred to in paragraph 41 (k) above, Bacchus was notified among other things that, Thompson had concluded that the allegations were substantiated and that Bacchus' actions allegedly violated Chancellor's Regulations A-420 and A-421.

d.     By letter to Bacchus dated February 5, 2010 regarding the fabricated allegation that Bacchus called a student "stupid" on December 3, 2009, referred to in paragraph 41 (m) above, Bacchus was notified that the allegation was substantiated and that Bacchus' action allegedly violated Chancellor's Regulations A-421.

e.     By letter to Bacchus dated February 22, 2010 regarding the fabricated incident alleged in paragraph 44 (a) above, Bacchus was notified about Thompson's conclusion that the allegation that Bacchus grabbed and pulled a student by the hair was substantiated. As a result, Bacchus was suspended from work without pay for two weeks effective February 23, 2010 through March 9, 2010.

45.     As a result of Bacchus' suspension, retaliatory hostile work environment and the barrage of fabricated disciplinary charges, letters and/or complaints which Bacchus was being subjected to, on or about March 4, 2010, Bacchus caused a complaint of discrimination to be filed against the DOE with the NYSDHR.

46.     At the time Bacchus filed said complaint, she reasonably believed and still believes that the DOE was violating her civil rights by discriminating against her on the basis of race, color, ethnicity or national origin and retaliating against her for complaining about such discrimination.

47. As a result of Bacchus' NYSDHR complaint of discrimination, the DOE by and through Thompson, Pepper, Levy, and O'Connell further intensified their discriminatory and retaliatory acts against Bacchus. Specifically:

a. On or about April 16, 2010, Pepper issued Bacchus with a Warning Letter to File dated the same date for alleged unprofessional conduct concerning alleged use of an umbrella on April 14, 2010, while it was sunny and a shoulder handbag at work. The warning letter was unjustified, unwarranted and/or unnecessary because Thompson had already discussed the issue with Bacchus and closed same without issuing any warning letter or discipline. Also, White and non-West Indies Student Aides carried their shoulder handbags, and on occasion non-West Indian Student Aides used an umbrella for shade but were not disciplined in anyway nor issued with any warning letter for such conduct.

b. By Warning Letter to File dated April 20, 2010, Pepper concluded that Bacchus did not use good professional judgment in reporting an allegation that on April 13, 2010, a male student went into the girl's bathroom in the lunchroom and slapped a female student. The warning letter was unjustified and unwarranted not only because Bacchus reported the alleged incident timely and properly in accordance with the applicable rules but also because the alleged incident was not an emergency. Also, White and non-West Indies Student Aides who failed to timely report similar incidents were not disciplined in anyway nor issued with any warning letter.

c. In January 2011, having laid the ground-work for Bacchus' discharge, Pepper recalled Lopez to work as a part-time Student Aide.

d. By letter dated January 21, 2011, entitled Summons to Disciplinary Conference, Pepper notified Bacchus that she scheduled an appointment to meet with Bacchus on January 26,

2011, concerning allegations of violation of school policy, failures to supervise and report a lunchroom incident on January 21, 2011.

e.      By letter dated January 26, 2011, entitled Summons to Re-Scheduled Disciplinary Conference, Pepper notified Bacchus that she has re-scheduled the appointment referred to above in paragraph 47(d) to February 3, 2011.

f.      By letter dated February 10, 2011, entitled Notice of Meeting Verbal Abuse Investigation, Pepper notified Bacchus that she had scheduled an appointment to meet with Bacchus on February 16, 2011, concerning investigation of an allegation of verbal abuse.

48.      On February 16, 2011, (during a meeting convened by Pepper at which Bacchus, Pepper, and Phyllis Wambser ("Wambser"), a Union Representative, were present) Pepper alleged that a complaint was filed against Bacchus alleging that Bacchus verbally abused a student by calling out to the student "Hey fat boy did you call him a name?" Bacchus denied that she called the student "fat boy", pointed out numerous inconsistencies which undermined alleged witness statements coerced from students regarding the allegation and questioned why there were no statements from several adults who were present at the time of the alleged incident.

49.      Also, consistent with Pepper's demonstrated resolve to compile disciplinary charges against Bacchus by all means, Pepper further alleged at the February 16, 2011, meeting that Bacchus improperly failed to notify PS 295 Administration about an alleged telephone call to a parent of a student. In response, Bacchus reminded Pepper that her (Bacchus') actions regarding the alleged phone call to a student's parent complied with and were consistent with the procedures or rules set by Pepper. White and non West Indian Student Aides routinely made similar phone calls but were not written-up nor subjected to any disciplinary action.

50.     By letter dated March 11, 2011, entitled Report of Investigation Summary Letter, Pepper and Thompson concluded among other things, that Bacchus' alleged behavior in calling the parent of a student and failing to notify Administration was unprofessional and that Bacchus used the words "fat boy" in addressing a student in violation of the Chancellor's Regulation.

51.     The March 11, 2011, letter also listed numerous false or trumped-up allegations of disciplinary charges, complaints or misconduct procured against Bacchus (including but not limited to an alleged Disciplinary Letter purportedly dated February 3, 2011, which Bacchus never received), notified Bacchus that her employment was terminated as of March 11, 2011 and falsely stated that the reason for the termination of Bacchus' employment was the alleged history of corporal punishment complaints, verbal abuse complaints, Warning Letters, Disciplinary Letters, disciplinary suspension without pay, continued insubordination and disregard of school wide policies and Chancellor's Regulation.

52.     In actual fact, Bacchus' employment was terminated on the basis of trumped-up disciplinary charges, complaints and/or warning letters machinated by Pepper and others to create a ground for Bacchus' discharge so that Lopez could be re-instated to Bacchus' position. Indeed, upon Bacchus' discharge, Pepper re-instated Lopez to a full-time Student Aide position as Bacchus' replacement.

53.     At all times herein alleged, each and all of the acts of Pepper, Thompson and other employees or agents of the DOE alleged herein were done by said individuals under color and pretense of the statutes, regulations, customs and usages of the City and State of New York and under the authority of their offices as alleged herein.

54.     By reason of the acts alleged herein, Bacchus' work environment was permeated with severe or pervasive discriminatory and/or retaliatory verbal abuse, intimidation, threats, ridicule, and harassment which created an abusive and hostile working environment for Bacchus and altered the conditions of her employment.

55.     As a result of the termination of her employment, on or about September 26, 2011, Bacchus caused a complaint of retaliation to be filed against the DOE with the NYSDHR.

56.     The DOE was fully aware of the retaliatory and discriminatory conduct against Bacchus and  encouraged such conduct by failing to take any action to remedy the situation, even though Bacchus made several complaints in connection thereto.

57.     The DOE by and through Pepper and Thompson follows a policy or practice that discriminates and/or encourages retaliation against Bacchus and other employees for their opposition against Pepper's and Thompson's unlawful employment practices.

58.     By reason of the acts alleged herein, the DOE breached its contractual obligations and implied covenant of good faith and fair dealing under the CBA by terminating Bacchus' employment without just cause and on the basis of trumped-up disciplinary charges, complaints and/or warning letters machinated by Pepper and others in order to create a ground for Bacchus' discharge so that Lopez could take Bacchus' position.

59.     Following the wrongful termination of her employment, Bacchus initiated a grievance through the Union. However, the Union processed the grievance arbitrarily, capriciously or in bad faith, in that the Union: processed the grievance in a perfunctory manner; unreasonably failed to pursue an investigation of the grievance; unreasonably accepted and relied upon Pepper's alleged investigation of the incidents in question to process the grievance; unreasonably ignored Bacchus' discrimination and retaliation claim; unreasonably failed to

investigate and/or pursue Bacchus' claim that disciplinary charges and allegations of misconduct were being fabricated and compiled against her in order to create a ground for her discharge so that upon such discharge Lopez will be given her position; and based its decision not to pursue the grievance to arbitration on irrational considerations.

60.     As alleged herein, none of the statements allegedly relied upon to substantiate the trumped-up disciplinary charges or allegations of misconduct referred to herein was made by an adult. The statements in question, were fabricated, forged and/or coerced from the minor students who allegedly wrote the statements. However, the Union failed to do anything to ascertain whether or not the statements were in fact written by such students and if so, whether the statements were made voluntarily or coerced.

61.     In fact, the Union did not interview nor attempt to interview any of the children who allegedly wrote the statements in question nor attempt to contact any of their parents.

62.     Furthermore, several adult individuals (including but not limited to Security Guards and other Student Aides) were present at the time and places of occurrence of the alleged incidents underlying said disciplinary charges or allegations of misconduct. If indeed such incidents occurred, the adult individuals would have witnessed any such occurrences. However, the Union failed to interview any of the adult individuals in connection with the alleged incidents nor attempt to obtain a statement from any of them.

63.     For instance, because he had issues with discipline, the student Bacchus allegedly called "fat boy" was regularly kept in close vicinity to the security guard on duty. If indeed Bacchus called the student "fat boy" such security guard would have heard such statement. However, the Union failed to interview the security guard and made no attempt to obtain his/her statement concerning the alleged incident.

64.     Similarly, there were surveillance cameras or videos at the places of occurrence of most of the alleged incidents underlying said disciplinary charges or allegations of misconduct. However, the Union failed to view nor request the production of any video footage or recording that may have captured events at the time and place of any of the alleged incidents.

65.     The Union processed Bacchus' grievance perfunctorily and decided, based on irrational considerations, not to process the grievance to a Step 4 grievance panel or arbitration. For instance, the decision not to process the grievance to arbitration was allegedly "[B]ased on the employer's [Pepper's] investigation of the incident" and the Union's arbitrary conclusions:

a.      That Bacchus violated DOE's rules by allegedly "calling a student's parent without informing or obtaining the approval of the school administration." and

b.       That the alleged "fat boy" incident "came on the heels of a two-week suspension that [Bacchus] served for striking another pupil."

66.     Contrary to the Union's conclusions, DOE had no rules which required a Student Aide to inform or obtain the approval of the school administration prior to making a telephone call to a student's parent. Furthermore, Bacchus notified the Union that her actions regarding the alleged phone call fully complied with the procedures or rules set by Pepper.

67.     Also, contrary to the Union's conclusion, Bacchus was not suspended for "striking" a student nor was it ever alleged that Bacchus struck a student. Furthermore, the "fat boy" incident allegedly occurred on February 2, 2011, certainly not on the "heels" of the alleged incident of December 1, 2009, for which Bacchus was allegedly suspended.

68.     The Union failed to investigate and/or pursue Bacchus' claim that the disciplinary charges and allegations of misconduct were being fabricated and compiled against her in order to create a ground for her discharge so that upon such discharge Lopez will be given her position,

even though it was undisputed that during her almost 17 year tenure with DOE, Bacchus never received any disciplinary charge or write-up until shortly before Lopez's lay-off.

69.     On or about September 23, 2011, Wambser and Craig Dickerson ("Dickerson"), another Union Representative, represented Bacchus at the Step 3 Grievance Conference. However, both individuals were unprepared for the Conference, did not perform any investigation of the facts underling the grievance and assumed from the beginning, that the Step 3 grievance decision would be against Bacchus but that it was a prerequisite to arbitration.

70.      On or about September 23, 2011, even before the Grievance Conference began, both Wambser and Dickerson told Bacchus that she has a meritorious grievance but that she should not expect that the grievance decision would be in her favor. And that upon receipt of the grievance decision, they (Wambser and Dickerson) would "write it up" and submit same to arbitration, where according to them, Bacchus would surely prevail.

71.     On or about September 23, 2011, Wambser and Dickerson stated to Bacchus:

> Don't raise your hopes high now. You will win at arbitration. No member wins a grievance at the chancellor's level, even if this man (referring to the grievance conference hearing officer) rules in your favor, his boss will overrule him.

72.     Wambser subsequently represented to Bacchus that her grievance was written-up and submitted for arbitration and that Bacchus will "get them" (meaning that Bacchus would prevail against Pepper and PS 295 Administration) at the arbitration.

73.     Meanwhile, because of Wambser's and Dickerson's representations, Bacchus was under the impression that her grievance had been submitted to arbitration.

74.     Unbeknown to Bacchus, the Union did not submit her grievance to arbitration, even though Wambser and Dickerson had represented to Bacchus that her grievance was meritorious and had been submitted to arbitration.

75.     On or about March 6, 2012, while still under the impression that the grievance was in arbitration, Bacchus contacted Dickerson to inquire about the status of the "arbitration". Dickerson initially claimed lack of knowledge about the status of the "arbitration" but said he would go down to the legal department to get Bacchus' file. Dickerson later informed Bacchus that the Union decided it would not process the grievance to arbitration.

76.     Although both Wambser and Dickerson had informed Bacchus that she had a meritorious grievance, both individuals and the Union as a whole, failed to perform any investigation of the grievance, processed the grievance in a perfunctory manner, accepted as true and relied upon Pepper's alleged investigation of the incidents in question to process the grievance and misled Bacchus to believe that the grievance was submitted to arbitration.

77.     The Union's failure to timely submit Bacchus' grievance to arbitration or process it to a Step 4 grievance panel constitutes a breach of the Union's duty of fair representation to Bacchus.

78.     Furthermore, the Union's false or deceitful representations to Bacchus that the grievance had been submitted to arbitration was done in bad faith and constitute a breach of the duty of fair representation the Union owed to Bacchus.

## FIRST CAUSE OF ACTION
### TITLE VII AND § 1981
### HOSTILE WORKENVIRONMENT/DISCRIMINATION

79.     Bacchus repeats and realleges each and every allegation contained in paragraphs 1 through 78 of this Second Amended Complaint with the same force and effect as if set forth herein.

80. By the acts and practices described herein, DOE and Pepper have subjected Bacchus to a hostile work environment and discriminated against her in the terms and conditions of her employment on the basis of her race and gender in violation of Title VII and § 1981.

81. In taking the above-described hostile and discriminatory actions, said Defendants acted with malice and/or reckless indifference to Bacchus' rights under Title VII and § 1981.

82. As a result of said Defendants' hostile and discriminatory acts, Bacchus has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

**SECOND CAUSE OF ACTION**
**TITLE VII AND § 1981**
**RETALIATION/RETALIATORYHOSTILE WORK ENVIRONMENT**

83. Bacchus repeats and realleges each and every allegation contained in paragraphs 1 through 81 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

84. In retaliation for Bacchus' complaints about DOE's and Pepper's discriminatory acts, said Defendants adversely affected Bacchus' employment.

85. In taking the above-described retaliatory actions, said Defendants acted with malice and reckless indifference to Bacchus' rights under Title VII and § 1981.

86. As a result of said Defendants' retaliatory acts, Bacchus has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

## THIRD CAUSE OF ACTION
## HUMAN RIGHTS LAW AND CITY LAW
## HOSTILE WORK ENVIRONMENT/DISCRIMINATION

87.     Bacchus repeats and realleges each and every allegation in paragraphs 1 through 86 of this Second Amended Complaint with the same force and effect as if set forth herein.

88.     By the acts and practices described herein, DOE and Pepper have subjected Bacchus to a hostile work environment and discriminated against her in the terms and conditions of her employment on the basis of her race and gender in violation of the Human Rights Law and the City Law.

89.     In taking the above-described hostile and discriminatory actions, said Defendants acted with malice and/or reckless indifference to Bacchus' right under the Human Rights Law and the City Law.

90.     As a result of said Defendants' hostile discriminatory acts, Bacchus has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION
## HUMAN RIGHTS LAW AND CITY LAW
## RETALIATION/RETALIATROY HOSTILE WORK ENVIRONMENT

91.     Bacchus repeats and realleges each and every allegation contained in paragraph 1 through 90 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

92.     In retaliation for Bacchus' complaints about DOE's and Pepper's discriminatory acts, said Defendants adversely affected Bacchus' employment.

93.     In taking the above-described retaliatory actions, said Defendants acted with malice and reckless indifference to Bacchus' rights under the Human Rights Law and the City Law.

94.     As a result of said Defendants' retaliatory acts, Bacchus has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

**FIFTH CAUSE OF ACTION AGAINST THE DOE
BREACH OF THE CBA
<u>UNDER NEW YORK LAW</u>**

95.     Bacchus repeats and realleges each and every allegation contained in paragraph 1 through 94 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

96.     The CBA has implied covenant of good faith and fair dealing.

97.     By the acts and practices described herein, DOE breached its contractual obligations under the CBA as well as the implied covenant of good faith and fair dealing.

98.     As a result of said Defendant's breach of the CBA and the implied covenant of good faith and fair dealing, Bacchus has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

**SIXTH CAUSE OF ACTION AGAINST THE UNION
BREACH OF DUTY OF FAIR REPRESENTATION UNDER
<u>NEW YORK LAW</u>**

99.     Bacchus repeats and realleges each and every allegation contained in paragraph 1 through 98 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

100.     The Union owed Bacchus a duty of fair representation.

24

101.     By the acts and practices described herein, the Union breached the duty of fair representation it owed to Bacchus.

102.     As a result of said the Union's breach of its duty of fair representation, Bacchus has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

## VI.  PRAYER FOR RELIEF

**WHEREFORE**, Bacchus respectfully requests that this Court enter a judgment:

(a)     declaring that the acts and practices complained of herein are in violation of the Title VII, § 1981, the Human Rights Law, the City Law, Taylor Law, NYCCBL and New York Common Law;

(b)     enjoining and permanently restraining these violations of Title VII, § 1981, the Human Rights Law, the City Law, Taylor Law, NYCCBL and the New York Common Law;

(c)     directing Defendants to take such action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Bacchus' employment opportunities;

(d)     directing Defendants to make her whole for all earnings she would have received but for Defendants' unlawful conduct, including, but not limited to, wages, salary raises, pension, bonuses, and other lost benefits;

(e)     directing Defendants to pay Bacchus an additional amount as compensatory damages for her pain and suffering;

(f)     directing Defendants to award Plaintiff back pay for the wrongful termination of Bacchus' including, but not limited to, pension, bonuses, and other lost benefits;

(g)     directing Pepper to pay Bacchus an additional amount as punitive damages for her

willful and/or reckless disregard for Bacchus' statutory rights;

(h)     awarding Bacchus such interest as is allowed by law;

(i)     awarding Bacchus her reasonable attorneys' fees and costs; and

(j)     granting other such and further relief as this Court deems necessary and proper.

## VII.   <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Bacchus demands

a trial by jury.

Dated:      Brooklyn, New York
            August 27, 2012

LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C.


By: /s/ Vincent I. Eke-Nweke_____
            Vincent I. Eke-Nweke (VE 5282)
            Attorney for the Plaintiff Merlene Bacchus
            498 Atlantic Avenue
            Brooklyn, New York 11217
             (718) 852-8300

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that a true copy of the Amended Complaint in the above captioned action was served on the Defendants by mailing the same in a sealed envelope, with the postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York at the following addresses the 27th day of August 2012:

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street, Room 2-103
New York, NY 10007

Attention: Kathryn E. Leone, Esq.
Assistant Corporation Counsel

JESSE GRIBBEN, ESQ.
Assistant General Counsel
District Council 37, AFSCME, AFL-CIO
125 Barclay Street, Room 510
New York, New York 10007

/s/ Vincent I. Eke-Nweke_____
   Vincent I. Eke-Nweke