UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERLENE BACCHUS,<br><br>　　　　　Plaintiff,<br><br>　-against-<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION, RENÉE PEPPER and BOARD OF EDUCATION EMPLOYEES LOCAL 372, DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO,<br><br>　　　　　Defendants. | Case No.: 12-cv- 1663 (WFK)(MDG) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CITY DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

Vincent I. Eke-Nweke, Esq.
Law Office of Vincent I. Eke-Nweke, P.C.
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300

Plaintiff Marlene Bacchus ("Plaintiff" or "Bacchus") respectfully submits this memorandum of law in opposition to Defendants New York City Department of Education (the "DOE") and Renée Pepper's ("Pepper") (together "City Defendants") motion for a protective order.

## RELEVANT FACTUAL BACKGROUND

Bacchus' Second Amended Complaint ("Complaint") alleges discrimination, hostile work environment and retaliation claims against the City Defendants pursuant to the Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law, Executive Law § 269 *et seq.* ("Human Rights Law") and the New York City Civil Rights Law ("City Law"). *Id.* at ¶¶ 1-2.

The Complaint further alleges that Bacchus was employed by the DOE as a School Aide from December 1994 until March 11, 2011, when DOE wrongfully terminated her employment on the basis of trumped-up disciplinary charges procured by certain DOE administrative staff assigned to the DOE school known as PS/IS 295Q. And that the trumped-up disciplinary charges were based on fabricated or false allegations of corporal punishment/verbal abuse of students procured during the last 17 months of Bacchus' employment for the purpose of terminating Bacchus' employment so that a laid-off White School Aide would be recalled and given Bacchus' position. *Id.* at ¶¶ 32, 38-52.

It was disclosed during discovery in this case that on September 27, 2010, then PS/IS 295 Principal lodged a complaint of misconduct against Bacchus with the DOE's Special Commissioner of Investigation. Evidently, the complaint was forwarded to Candace McLaren ("McLaren") Director of DOE's Office of Special Investigation ("OSI"). **(Exhibit "1" hereto)** At her deposition in this case, McLaren testified, *inter alia,* that as the Director the OSI she oversees twenty-two confidential investigators, including two attorneys and a temporary attorney. And that OSI conducts intakes, processes and investigates allegations of misconduct lodged against DOE employees. McLaren

further testified that said complaint of misconduct was investigated by an OSI investigator, Doris Moreno, who found same unsubstantiated. (McLaren Tr. pp.6-7, 24, 27, **Exhibit 2**)

Apparently, Ms. Moreno exchanged email (D 000860-61, D001056-57) with McLaren and/or other OSI employees in connection with said investigation. The City Defendants now seek to protect such email from disclosure. However, the further revised privilege log (City Defendants' Exhibit A) submitted in support of City Defendants' motion deficiently describes the documents withheld from disclosure. The City Defendants failed to cure the deficient description of the withheld documents notwithstanding that an opportunity to cure such deficiencies was afforded by the Court at the Status/Scheduling Conference held in this action on July 3, 2013. (**Exhibits 3 and 4[1] hereto**)

## ARGUMENT

**City Defendants Have Failed To Demonstrate That The Documents Withheld From Discovery Are Protected By The Attorney-Client Privilege Or Work Product Doctrine**

City Defendants have failed to establish their entitlement to the claimed privilege. Rather, as demonstrated below, neither the attorney-client privilege nor the work-product doctrine protects the documents withheld from disclosure.

**A.     Attorney-client Privilege**

It is well established that a party asserting the attorney-client privilege must demonstrate three elements, including (1) a communication between a client and counsel, (2) intended to be and kept confidential, and (3) made for the purpose of obtaining or providing legal advice or services. *United States v. Construction Prods. Research, Inc.,* 73 F. 3d 464, 473 (2nd Cir. 1996) (citing *Fisher v. United States,* 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976).

---

[1]There is no material difference between the description of the documents listed in the revised privilege log dated June 25, 2013 attached hereto as Exhibit "4" and the further revised privilege log submitted by City Defendants' as Exhibit "A" in support of the instant motion.

Attorney-client privilege is strictly construed because when applicable, it precludes the admissibility of relevant evidence in judicial and other proceedings. *See United States v. Int'l Bhd. of Teamsters*, 119 F. 3d 210, 214 (2nd Cir. 1997); *Smith v. The Harmon Group, Inc.*, 1992 U.S. Dist. LEXIS 242 at *5 (S.D.N.Y. Jan. 13, 1992)("The attorney-client privilege is narrowly construed because it obstructs the truth-finding process.") A claim for attorney-client privilege should be rejected if the privilege log does not:

> identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between . . . individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.

*Construction Prods. Research, Inc.*, 73 F. 3d at 473 (internal quotation marks and citation omitted). The privilege is destroyed if the privileged communication is disseminated beyond individuals with a need to know. Thus, a corporation or entity invoking the attorney-client privilege must demonstrate that "it preserved the confidentiality of the communication by limiting dissemination only to employees with a need to know". *The Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 1996 U.S. Dist. LEXIS 12090 at *8 (S.D.N.Y. Aug. 21, 1996). *See also, Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 464-5 (W.D.N.Y. 2006).

As the Supreme Court teaches, the attorney-client "privilege protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:

> [T]he protection of the privilege extends only to *communication*s and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or

write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395, 66 L. Ed. 2d 584, 101 S.Ct. 677 (1981) quoting, *Philadephia v. Westinghouse Electric Corp.*, 205 F. Supp. 830, 831 (Ed Pa. 1962)

As the Supreme Court observed in *Upjohn Co.*, "the courts have noted that a party cannot conceal a fact merely by revealing it to his lawyer". *Upjohn Co.*, 449 U.S. at 396 citing, *State ex rel. Dudek v. Circuit Court, 34 Wis. 2d 559, 580. See also SEC, Inc. v. Wyly*, 2011 U.S. Dist. LEXIS 87660 at *34 (S.D.N.Y. July 27, 2011)("an email that does nothing more than transmit a document -- without an indication of the content of that document -- is not a confidential communication protected by the privilege."); *Smith,* 1992 U.S. Dist. LEXIS 242 at *5 ("It is the communication which is privileged, not the underlying facts communicated.")

Further, the attorney client privilege is triggered only by a client's request for legal, as contrasted with business advice, and is "limited to communications made to attorneys solely for the purpose of the corporation seeking legal advice and its counsel rendering it." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1037 (2nd Cir. 1984). Solicitation or giving of business advice is not privileged. *See Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 204 (E.D.N.Y. 1988). When the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected simply because legal considerations are also involved. *See Hardy v. New York News Inc.,* 114 F.R.D. 633, 644 (S.D.N.Y 1987) citing *SCM v. Xerox,* 70 F.R.D. 508, 517 (D.Conn. 1976), appeal dismissed, 534 F.2d 1031 (2nd Cir. 1976); *Barr Marine Products Co., Inc. v. Borg-Warner,* 84 F.R.D. 631, 635 (E.D. Pa. 1979) ("business communications cannot be insulated from discovery by virtue of the mention of an attorney's name, or their being directed to an attorney").

B.  **Work Product Doctrine**

With respect to the work-product privilege, a party seeking to invoke the privilege must demonstrate that the documents sought to be protected were "prepared principally or exclusively to assist in anticipated or ongoing litigation." *Construction Prods. Research, Inc.*, 73 F.3d at 473; *Hickman v. Taylor*, 329 U.S. 495, 511-12, 91 L.Ed. 451, 67 S.Ct. 385 (1947); F.R. Civ. P. 26(3). The work product privilege is not intended to protect from general discovery materials prepared in the ordinary course of business. *See Gucci Am., Inc. v. Guess, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010)(noting that "documents prepared in the ordinary course of business, or that otherwise would have been prepared absent the prospect of litigation, do not receive work product protection."). Rather, the privilege protects an attorney's mental impression. *See Buxbaum v. St. Vincent's Health Servs.*, 2013 U.S. Dist. LEXIS 2246 at *9 (S.D.N.Y. Jan. 2013)(citing *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.").

In determining whether a document constitutes work product, the court must determine "the primary motivating purpose behind the creation of the document." *United States v. Gulf Oil Corp.*, 760 F. 2d 292, 296, citing *United States v. Davies*, 636 F. 2d 1028, 1040 (5th Cir. 1981). "If the primary motivating purpose behind the creation of the document is not to assist in pending or impending litigation, then a finding that the document enjoys work product immunity is not mandated." *id* at 296. "The mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity. The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or potential claim following an actual event or series

5

of events that reasonably could result in litigation." *Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 448-9 (S.D.N.Y. 1995)(internal quotation marks and citations omitted).

In the case at bar, there is no doubt that the City Defendants' further revised privilege log contains deficient descriptions to support the claim of privilege as to <u>each of the withheld documents</u>. In *Construction Prods. Research, Inc.*, 73 F. 3d 464, the Second Circuit considered a privilege log bearing similar descriptions as the log in this case and found that "[T]he descriptions and comments [contained in the privilege log] simply do not provide enough information to support the privilege claim, **particularly in the glaring absence of any supporting affidavits or other documentation**." *Id. at* 474. (emphasis added). Like in *Construction Prods. Research, Inc.*, City Defendants' claim of privilege should be rejected.

Significantly, the instant motion papers is devoid of any information regarding the date the alleged "Office of Labor Relations, Frequently Asked Questions" ("FAQs") (D 001152-D 001239) was created, or the identity of the author, and/or the persons the document was disseminated to. See *Scholtisek*, 441 F. Supp. 2d at 462 (quoting *Bell v. Pfizer, Inc.*, 2005 U.S. Dist. LEXIS 13174, No. 03 Civ. 9945, 2005 WL 1560488, at *7 n. 6 (S.D.N.Y. July 5, 2005) ("Since defendants bear the burden of demonstrating the existence of the attorney-client privilege, the ambiguity [or absence of date concerning the date on which a certain document was created] must be construed against them"); *Heublein, Inc. v. E & J Gallo Winery, Inc.*, 1995 U.S. Dist. LEXIS 16178, No. 94 Civ. 8155, 1995 WL 645438, at *2 (S.D.N.Y. Nov. 1, *1995)* ("The burden of sustaining the claim of privilege is on Heublein. Because the record is ambiguous, Heublein has not sustained its burden") (citing *Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 144 (2d Cir.), cert. denied, 481 U.S. 1015, 107 S. Ct. 1891, 95 L. Ed. 2d 498 (1987)).

Further, the allegation that the FAQs bear a legend that states they are "intended as legal advice for Principals and other supervisors..." does not, *ipso facto*, protect the document from disclosure as attorney client privilege or work-product privilege. *See Baptiste v. Cushman & Wakefield*, 2004 U.S. Dist. LEXIS 2579 at *8 (S.D.N.Y. Feb. 20, 2044)(holding that "the determination of whether a document is privileged does not depend upon the technical requirement of a privilege legend.")(quoting *In re Grand Jury Proceedings*, M-11-189, 2001 U.S. Dist. LEXIS 15646 at *36 (S.D.N.Y. Oct. 3, 2001).

Also, as submitted above, chain email (D 000858, 860-862, 1056 and 1057), to or from counsel, by which documents were either forwarded or requested, and/or which discussed underlying facts, is not protected as attorney-client privilege. Similarly, chain email by and between non-attorneys cannot be protected by attorney-client privilege or work product doctrine merely because a copy thereof was later forwarded to an attorney. City Defendants have failed to demonstrate that any of the email in the chain was sent to counsel solely for the purpose of seeking legal advice or rendering of legal advice by counsel. Indeed, the glaring absence of any affidavit or documentation justifying the claimed privilege compels a finding that the withheld documents are not privileged.

### C. **FAQs Is Relevant To The Parties' Claims And Defenses**

Generally, [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). *See Trilegent Corp v. Sitel*, F.R.D. 360, 363 (S.D.N.Y. 2010)("Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept."). Given the Complaint allegation in this case, Bacchus easily satisfies the standard for production under Federal Rule of Civil Procedure 26 and governing decisional law. This is so because, it appears the FAQs is a document prepared in the ordinary course of business that provides

business "advise to principals and other supervisors regarding hiring and assignments, discipline, and grievances, among other issues." (see City Defendants' main memo. at p. 3). As demonstrated above, the FAQs is a "nonprivileged matter". Accordingly, it should be produced in this litigation.

### D. In Camera Review Is Not Warranted

The decision whether to conduct an *in camera* review of alleged privileged documents is within the sound discretion of the district court. *See Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y. 1993); *In re In-Store Advertising Securities Litigation*, 163 F.R.D. 452, 459-60 (S.D.N.Y. 1995). The Court should decline the invitation to conduct an in camera review because the information contained in the motion papers does not raise any reasonable probability that the withheld documents may be privileged. If the defendants had submitted an affidavit or other evidentiary showing in an attempt to justify the claimed privilege, then an *in camera* review by the Court would have been justified.

### CONCLUSION

In view of all the foregoing, Bacchus respectfully requests that the City Defendants' motion for a protective order be denied in its entirety.

Dated:   August 19, 2013
         Brooklyn, New York

Respectfully submitted,

LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C.

By: _____
Vincent I. Eke-Nweke (VE 5282)
Attorney for Plaintiff Merlene Bacchus
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300