UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

MERLENE BACCHUS

                                       Plaintiff,

-against-

THE CITY OF NEW YORK, RENÉE PEPPER and
BOARD OF EDUCATION EMPLOYEES LOCAL 372,
DISTRICT COUNCIL 37, AMERICAN FEDERATION
OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO,

                                         Defendants.

------------------------------------------------------------------------ x

**CITY DEFENDANTS'
LOCAL RULE 56.1
STATEMENT OF
UNDISPUTED MATERIAL
FACTS**

12 CV 1663(PKC)(MDG)

       Pursuant to Local Rule 56.1 of the Civil Rules of this Court, Defendants New York City Department of Education ("DOE") and Renée Pepper (together "City Defendants") submit their statement of material facts as to which there is no genuine issue to be tried:

       1.      Plaintiff, a former school aide, brings this action pursuant to Title VII, 42 U.S.C. § 1981, the New York State and City Human Rights Laws, and New York Common Law for breach of the collective bargaining agreement alleging that the City Defendants discriminated against her based on race, national origin, and ethnicity, subjected her to a hostile work environment, and retaliated against her after complaining of the alleged discrimination. *See* Second Amended Complaint, filed August 27, 2012 (hereinafter, "Compl."), annexed as Exhibit A.[1]

---

[1] References to all exhibits are to those annexed to the Declaration of Kathryn E. Martin, dated April 25, 2014 ("Martin Decl."), submitted herewith in support of the City Defendants' motion for summary judgment.

**Background:**

2. In or about September 2007, Plaintiff was hired as a school aide at PS 295 by Principal Angela Thompson after being interviewed by Thompson. *See* Deposition Transcript of Plaintiff Merlene Bacchus ("Bacchus Dep."), dated May 21, 2013, annexed as Exhibit B, at 14:12-15:9.

3. Plaintiff identifies as black and she is from Guyana, part of the West Indies. She identifies her national origin as "Guyanese" and "West Indian." *See* Bacchus Dep. at 8:10-17.

4. Thompson, who died on January 20, 2012, was black. *See* Bacchus Dep., Ex. B at 15:16-17; *see also* Obituary of Angela Thompson published in the Birmingham News from January 26 – January 27, 2012, annexed as Exhibit C.

5. PS 295 was a new school that opened in 2007 and initially served grades kindergarten through second and sixth. In its second year, it became kindergarten though third grade and sixth and seventh grades. In its third year, it became kindergarten through eighth grade and was fully staffed. *See* Deposition Transcript of Defendant Renée Pepper ("Pepper Dep."), dated June 14, 2013, annexed as Exhibit D, at 30:7-22.

6. Plaintiff's duties as a school aide included, among other things, answering phones, making copies, stamping books, maintaining book inventory, delivering books to the book room and classrooms, supervising students, and performing related work for the Principal and office staff as needed. *See* School Aide Job Description, annexed as Exhibit E.

7. When Plaintiff was hired, there was one other school aide working at PS 295, Trina Mixon, who is black, non-West Indian. *See* Bacchus Dep., Ex. B at 20:19-25.

8. As the school year progressed, additional school aides were hired, including Katarzyna "Kasia" Lopez, who is white and of Polish national origin. *See* Compl., Ex. A ¶ 37;

Letter from Chad B. Pimentel to Cynthia B. Mendoza-Garcia dated December 1, 2011, annexed as Exhibit F.

9. Lopez and another school aide, Shawn Horton, who is black, non-West Indian, were the least senior school aides, and were laid off in or about November 2009 due to budget cuts. Compl., Ex. A ¶¶ 37-38; *see* Bacchus Dep., Ex. B at 22:1-5, 25:9-21.

10. The work hours for the remaining school aides, including Plaintiff, were also reduced at that time as a result of budget cuts. *See* Bacchus Dep., Ex. B at 42:16-43:8; Compl., Ex. A ¶ 41(a).

11. After being laid off, Lopez and Horton occasionally worked as substitute aides at PS 295. *See* Bacchus Dep., Ex. B at 43:4-17.

12. Lopez returned to PS 295 as a full time school aide in January 2011. *See* Lopez Work History, annexed as Exhibit G.

13. Renée Pepper began working as a teacher at PS 295 in August 2007. She became Acting Assistant Principal in February 2009 and then the Assistant Principal in May 2009. *See* Pepper Dep., Ex. D at 18:14-20:12.

14. Barbara Levy was Thompson's secretary and started working for her in August 2007, when the school opened. *See* Deposition Transcript of Barbara Levy ("Levy Dep."), dated June 27, 2013, annexed as Exhibit H, at 9:1-17.

15. Colleen O'Connell began working as a Guidance Counselor at PS 295 in September 2009. *See* Deposition Transcript of Colleen O'Connell ("O'Connell Dep."), dated June 17, 2013, annexed as Exhibit I, at 12:9-11.

16. Part of O'Connell's duties as a Guidance Counselor included taking student statements when a student presented with a problem or a conflict. *See* O'Connell Dep., Ex. I at 18:6-19:2.

17. Plaintiff testified that between 2009 and 2011, she "frequently" overheard Thompson say that she did not like West Indian women, that they could not speak English, and that she could not understand what West Indian parents were saying when she spoke to them on the telephone. *See* Bacchus Dep., Ex. B at 38:15-42:13.

18. Plaintiff testified that in September 2009, Thompson and Pepper ordered her to lift heavy boxes containing books and school supplies onto a flatbed cart. *See* Bacchus Dep., Ex. B at 44:15-24; 45:20-23.

19. According to Plaintiff, when she asked the custodian for assistance with lifting the heavy boxes, Pepper instructed the custodian not to help. Despite the instruction, the custodian lifted the boxes for Plaintiff anyway. *See* Bacchus Dep., Ex. B at 46:13-22.

20. In or about October 2009, Thompson made a written request to the DOE Division of Human Resources to have Plaintiff medically examined to determine whether she was physically fit to perform her job after Plaintiff "verbally expressed that her back hurt[] and therefore [could not] perform her assigned tasks," "brought in a doctor's note stating that she [could not] lift heavy objects," and "clocked out early several times … because she was not feeling well or had a doctor's appointment." *See* Report of Reasons for Requesting Medical Examination of Employee Merlene Bacchus from Angela Thompson annexed as Exhibit J.

21. By letter dated November 9, 2009 from the DOE Division of Human Resources, Plaintiff was directed by Deputy Superintendent Lenon Murray to report to a medical examination pursuant to New York State Education Law § 2568. *See* Letter dated November 9,

2009 from Hubert Guscott, Manager, HR Connect – Medical Administration to Merlene Bacchus, annexed as Exhibit K.

22. Following a medical examination on December 2, 2009, Plaintiff was deemed fit for duty. *See* Memo from Division of Human Resources, HR Connect – Medical Administration to Merlene Bacchus re: Employee Medical Review, annexed as Exhibit L.

23. In or about October 2009, Thompson also made a written request for Trina Mixon to be medically examined after Mixon brought in a doctor's note stating that she could not lift objects due to back pain and she refused to carry two reams of papers because she claimed it would hurt her back. *See* Report of Reasons for Requesting Medical Examination of Employee Trina Mixon from Angela Thompson, annexed as Exhibit M.

24. Mixon was directed to undergo a medical examination on December 1, 2009, and she was deemed fit for duty. *See* Memo from Division of Human Resources, HR Connect – Medical Administration to Trina Mixon re: Employee Medical Review, annexed as Exhibit N.

25. Plaintiff claims that on November 25, 2009, Pepper "shouted" at her because the students she was supervising in the gym were admittedly not lined up while they waited for their teachers to pick them up. One of Plaintiff's duties as a school aide is to have the children lined up. *See* Bacchus Dep., Ex. B at 51:15-52:2; 52:11-53:4.

**Plaintiff's Unsatisfactory Work Performance And Students' Allegations of Corporal Punishment and Verbal Abuse Against Plaintiff**

26. On May 26, 2009, Pepper met with Plaintiff and her union representative, Phyllis Wambser, to discuss an incident on May 19, 2009 in which Plaintiff brought a 4th grade class from the auditorium to their classroom without instruction to do so from a supervisor. *See* Letter of Instruction from Renée Pepper to Merlene Bacchus dated May 28, 2009, annexed as Exhibit O.

27. Pepper gave Plaintiff a letter of instruction dated May 28, 2009 regarding the incident. *See id*.

28. Mixon also received a letter of instruction for taking students out of the auditorium without permission to do so in connection with the same May 19, 2009 incident. *See* Letter of Instruction from Renée Pepper to Trina Mixon dated May 28, 2009, annexed as Exhibit P.

29. A fourth grade student, M.P., alleged that on November 23, 2009, Plaintiff grabbed her by the shoulders, a violation of Chancellor's Regulation A-420. *See* Alleged Corporal Punishment and/or Verbal Abuse Report of Investigation dated December 7, 2009, annexed as Exhibit Q; *see also* Student Statement of M.P. dated December 4, 2009, annexed as Exhibit R; Chancellor's Regulation A-420, annexed as Exhibit S.

30. After meeting with Plaintiff and Wambser on December 9, 2009 to discuss the allegations made by M.P., Thompson substantiated the allegations. *See* Letter from Angela Thompson to Merlene Bacchus dated February 8, 2010, annexed as Exhibit T.

31. Plaintiff received a letter to file regarding the substantiated allegations and Thompson "highly" recommended that Plaintiff utilize the Personal Service Unit of her union to receive training on proper business conduct and requested that Plaintiff provide her with proof of attendance for these training sessions. *See id*.

32. Student M.S. and student P.H., both in the fourth grade, alleged that on November 25, 2009, Plaintiff grabbed them by their collars and yelled "you are in trouble," violations of Chancellor's Regulations A-420 and A-421. *See* Alleged Corporal Punishment and/or Verbal Abuse Report of Investigation dated December 3, 2009 and Alleged Corporal Punishment and/or Verbal Abuse Report of Investigation dated December 4, 2009 annexed as Exhibit U; *see also*

Student Statement of P.H. dated December 2, 2009 and Student Statement of M.S. dated December 4, 2009, annexed as Exhibit V; Chancellor's Regulation A-421, annexed as Exhibit W.

33. Student M.A., also in fourth grade, alleged that on November 25, 2009, Plaintiff grabbed him by the wrist, a violation of Chancellor's Regulation A-420. *See* Alleged Corporal Punishment and/or Verbal Abuse Report of Investigation dated December 4, 2009, annexed as Exhibit X; *see also* Student Statement of M.A. dated December 4th, annexed as Exhibit Y.

34. Students K.Z. and T.W. provided witness statements regarding the allegation made by M.A. *See* Student Statements of K.Z. and T.W. dated December 4, 2009, annexed as Exhibit Z.

35. On November 30, 2009, the grandmother of fourth grade student I.D. called the school and reported that I.D. came home crying from school and told her that Plaintiff yelled at him and his class that day and called them "jerks," a violation of Chancellor's Regulation A-421. *See* Alleged Corporal Punishment and/or Verbal Abuse Report of Investigation dated December 1, 2009, annexed as Exhibit AA; *see also* Student Statement of I.D. dated December 2, 2009, annexed as Exhibit BB; Telephone Message Form dated November 30th, annexed as Exhibit CC.

36. Thompson met with Plaintiff and Wambser on December 9, 2009 to discuss the allegations of students I.D., M.S., P.H., and M.A. *See* Letter from Angela Thompson to Merlene Bacchus dated February 2, 2010, annexed as Exhibit DD.

37. After reviewing the written statements of I.D., M.S., P.H., and M.A., the witness' statements and Plaintiff's explanation during the December 9, 2009 meeting, Thompson substantiated the allegations of corporal punishment and verbal abuse. Thompson stated that

Plaintiff's actions "were a result of extreme poor judgment and demonstrated [her] inability to utilize proper behavioral techniques to students." *See id*.

38. Thompson again "highly" recommended that Plaintiff utilize the Personal Service Unit of her union to receive training on proper business conduct and she requested that Plaintiff provide her with proof of attendance for these training sessions. *See id*.

39. Plaintiff received a letter to file regarding the substantiated allegations. *See id.*

40. Fourth grade student J.T. alleged that on December 3, 2009, Plaintiff called him "stupid." *See* Alleged Corporal Punishment and/or Verbal Abuse Report of Investigation dated December 7, 2009, annexed as Exhibit EE; *see also* Student Statement of J.T. dated December 4th, annexed as Exhibit FF.

41. J.T.'s mother reported this allegation to Thompson on the day that it occurred, December 3, 2009. *See* Letter from Angela Thompson to Merlene Bacchus dated February 5, 2010, annexed as Exhibit GG.

42. Thompson substantiated J.T.'s allegation of verbal abuse and again "highly" recommended that Plaintiff utilize the Personal Service Unit of her union to receive training on proper business conduct and requested that Plaintiff provide her with proof of attendance for these training sessions. *See id*.

43. Plaintiff received a letter to file regarding the substantiated allegations. *See id*.

44. Student E.S., a seventh grade student, alleged that on December 1, 2009, she and her class were lining up in the cafeteria. E.S. alleged that when she began to walk forward, apparently without the permission of Plaintiff, Plaintiff pulled her hair. *See* Alleged Corporal Punishment and/or Verbal Abuse Report of Investigation dated December 10, 2009, annexed as Exhibit HH; *see also* Student Statement of E.S. dated December 10, 2009, annexed as Exhibit II.

45. E.S. reported this incident to her teacher on December 10, 2009 after the teacher heard other students talking about the incident. *See* Letter from Angela Thompson to Merlene Bacchus dated February 22, 2010, annexed as Exhibit JJ.

46. Students B.B. and R.R. provided witness statements regarding E.S.'s allegation. *See* Student Statements of B.B. and R.R. dated December 10, 2009, annexed as Exhibit KK.

47. After meeting with Plaintiff and her union representative on January 15, 2010, Thompson substantiated E.S.'s allegation and suspended Plaintiff without pay for two weeks. *See* Ex. JJ.

48. Plaintiff's union grieved the suspension, which led to an arbitration hearing. *See* Opinion and Award dated August 19, 2011, annexed as Exhibit LL.

49. E.S. testified at the arbitration hearing. The arbitrator found the student to be "truthful and consistent with her prior written statement" and "very credible." *See id.*

50. The arbitrator found that the inconsistencies in the witness statements were "minor and not material and [did] not impugn the credibility of the students." *See id.*

51. The arbitrator found Plaintiff to be "less than credible in her testimony." *See id.*

52. Plaintiff's grievance was denied. *See id.*

53. On January 15, 2010, Pepper met with Plaintiff, Wambser, Thompson and O'Connell to discuss an incident that occurred on January 6, 2010. Plaintiff secretly tape recorded this meeting. *See* Bacchus Dep., Ex. B at 114:17-115:22; Disciplinary Letter from Renée Pepper to Merlene Bacchus dated January 19, 2010, annexed as Exhibit MM; Plaintiff's transcript excerpts of January 15, 2010 meeting, certified on September 10, 2012 and CD of audio recording, annexed as Exhibit NN.[2]

---

[2] City Defendants' counsel has made track changes to the Plaintiff's transcripts, Exhibits NN and TT, based on the recordings, which have also been provided to the Court.

54. According to Plaintiff, on January 6, 2010 around 3:19 p.m., she was headed to the bathroom when Pepper asked her "Are you on the clock?" Plaintiff responded that she was on the clock until 3:30 p.m. In the presence of Pepper, Plaintiff said to the security guard on duty, "Now I am being followed to the bathroom." *See* Letter from Merlene Bacchus to Renée Pepper dated January 28, 2010, annexed as Exhibit OO.

55. When Plaintiff returned to the main office from the bathroom, Pepper heard laughter and heard Plaintiff say "…wipe my butt." *See* Ex. MM; *see also* Statement of Renée Pepper dated January 6, 2010, annexed as Exhibit PP.

56. In witness statements, O'Connell and Levy stated that they were in the main office during the incident and heard Plaintiff say "Are you going to wipe my butt too?" *See* Statement of Colleen O'Connell dated January 8, 2010 and Barbara Levy dated January 8, 2010, annexed as Exhibit QQ.

57. Witness statements submitted by Pria Bala, the parent coordinator, and Mixon, who were both in the main office at the time, stated that they heard Plaintiff say that she was being followed to the bathroom. *See* Statement of Pria Bala, undated, and Statement of Trina Mixon dated January 19, 2010, annexed as Exhibit RR.

58. During the meeting, Wambser, Plaintiff's union representative, told Plaintiff that she did not understand how Pepper's actions could be perceived as following Plaintiff to the bathroom. *See* Ex. NN: Pl. Transcript at 28:3-10, Audio at 44:56–45:04.

59. Wambser also told Plaintiff that it is within Pepper's "purview to ask whether or not you are on the clock or not…" *See id*.: Pl. Transcript at 29:10-15, Audio at 46:10-46:42.

60. Wambser told Plaintiff that "making a comment to a supervisor or to someone in the[ir] presence, 'I'm being followed to the bathroom,' is a problem" and "not appropriate" and

advised her "not do it in the future." *See id*.: Pl. Transcript at 35:25-36:4, 43:7-11, Audio at 57:15-58:02, 51:30-52:08.

61. Wambser recommended that Plaintiff attend the union's Personal Service Unit to "help her on how to handle things when she gets upset so she does not come off in [an] unprofessional manner." *See id*.: Pl. Transcript at 32:18-23, Audio at 51:30-52:08.

62. Plaintiff testified that she did not utilize any training regarding conduct through her union. *See* Bacchus Dep., Ex. B at 68:15-69:20.

63. Wambser also told Plaintiff that her behavior toward Thompson during the January 15, 2010 meeting was "aggressive" and "disrespectful." *See* Ex. NN: Pl. Transcript at 21:14-25, Audio at 29:35-30:19.

64. Pepper issued Plaintiff a disciplinary letter dated January 19, 2010 stating that her behavior was unsatisfactory and unprofessional. *See* Ex. MM.

65. Pepper met with Plaintiff and Wambser on April 15, 2010 to discuss Plaintiff's use of an open umbrella while supervising students in the school yard and carrying a handbag while supervising students in the lunchroom. Pepper determined that such behavior was unprofessional and impeded Plaintiff's ability to perform her duties and issued Plaintiff a warning letter to file. *See* Warning Letter to File from Renée Pepper to Merlene Bacchus dated April 16, 2010, annexed as Exhibit SS.

66. Plaintiff secretly tape recorded the April 15, 2010 conference. *See* Bacchus Dep., Ex. B at 114:17-115:22; *see also* Plaintiff's transcript excerpts of April 15, 2010 meeting, certified on September 10, 2012 and CD of audio recording, annexed as Exhibit TT.

67. During the meeting, Wambser stated that in her nineteen years as a representative, she had never heard of a school aid taking an umbrella outside and that such conduct was "unacceptable." *See* Ex. TT: Pl. Transcript at 29:15-20, Audio at 41:40-42:10.

68. During that same meeting, they discussed an incident that occurred two days earlier in the lunchroom sometime between 11:20 a.m. and 12:00 p.m. in which a fifth grade female student reported to Plaintiff that a male student had slapped her in the bathroom. Plaintiff did not report the incident until 2:35 p.m. Pepper determined that Plaintiff did not use good professional judgment in not reporting the incident immediately to administration. *See* Letter from Renée Pepper to Merlene Bacchus dated April 20, 2010, annexed as Exhibit UU.

69. Plaintiff's union representative, Phyllis Wambser, also told Plaintiff that she used "poor judgment by not reporting the incident immediately…" *See* Ex. TT: Pl. Transcript at 7:22-9:16, Audio at 10:51-12:50.

70. Pepper gave Plaintiff a warning letter to file regarding her failure to immediately report the slapping incident and her use of an umbrella and handbag while supervising students. *See* Ex. UU.

71. On February 2, 2011, two sixth students came to Pepper's office to address issues they were having with Plaintiff. Pepper told the students to write down the issues. *See* Pepper Dep., Ex. D at 158-:5-160:12.

72. In their letters to Pepper, the students described, among other things, that Plaintiff had called another six grade student, A.A., "fat boy" that day in the auditorium. *See* Letters from J.M., K.R. and S.P. to Renée Pepper dated February 2, 2011, annexed as Exhibit VV.

73. That same day, Pepper asked A.A. whether anything happened that day in the auditorium. He provided a written statement that Plaintiff called him "fat boy" in the

auditorium.  *See* Pepper Dep., Ex. D at 160:12-16; *see also* Statement of A.A. dated February 2, 2011, annexed as Exhibit WW.

74. Pepper informed Thompson of the students' allegation against Plaintiff.  *See* Pepper Dep., Ex. D at 160:16-18, 162:12-16.

75. Additional student statements were gathered regarding the allegation, some of which made no mention of Plaintiff calling A.A. "fat boy."  *See* Students Statements, annexed as Exhibit XX.

76. A conference regarding the allegation took place on February 16, 2011 with Plaintiff, Wambser, and Pepper, during which Plaintiff denied the allegation.  *See* Report of Investigation Summary Letter from Angela Thompson to Merlene Bacchus dated March 11, 2011, annexed as Exhibit YY.

77. During the meeting, Plaintiff's log book was reviewed.  *See id*.

78. School aides are to maintain log book entries of "all incidents with all the necessary details: full name of student, class, incident, your statement, the action taken, follow-up investigation by administration."  All incidents must be reported to Administration.  *See* Lunch Schedule Memorandum dated November 24, 2010, annexed as Exhibit ZZ.

79. While Plaintiff had not made an entry for February 2, 2011, she did make an entry for February 4, 2011, which stated that Plaintiff had called another student's parent regarding the student's behavior.  *Id*.

80. Plaintiff failed to report this phone call to administration as required by school policy.  *Id*.

81. Thompson substantiated the verbal abuse allegation based on the credibility of the students who heard Plaintiff call A.A. "fat boy," the credibility of the victim, A.A., and the lack

of credibility of Plaintiff.  *See* Ex. YY ; *see also* Alleged Corporal Punishment And/Or Verbal Abuse Report of Investigation dated February 3, 2011, annexed as Exhibit AAA.

82. After considering Plaintiff's "history of corporal punishment complaints, verbal abuse complaints, Warning Letters, Disciplinary Letters, and a disciplinary suspension without pay, and [her] continued insubordination and disregard of school wide policies and Chancellor's Regulations," Thompson terminated Plaintiff effective March 11, 2011.  *See* Ex. YY.

83. Plaintiff grieved the termination on March 15, 2011.  *See* Grievance Form dated March 15, 2011, annexed as Exhibit BBB.

84. Her grievance was denied on or about October 21, 2011.  *See* Grievance Decision ordered by Chancellor Dennis M. Walcott dated October 21, 2011, annexed as Exhibit CCC.

**Plaintiff's Complaints of Discrimination**

85. Plaintiff made a complaint of discrimination to the DOE's Office of Equal Opportunity on or about December 16, 2009.  *See* Complaint of Alleged Discrimination form dated December 16, 2009, with attached letter dated December 14, 2009, annexed as Exhibit DDD.

86. Plaintiff alleged that Levy, Pepper, O'Connell and Jennifer LaBella, a teacher at PS 295, discriminated against her based on age, color, ethnicity/national origin, and race.  *See id*.

87. Plaintiff alleged, among other things, that Levy, Pepper, O'Connell and LaBella coerced students into writing false statements of abuse against her and also wrote the students' statements themselves.  *Id*.

88. Plaintiff "believe[d] their ultimate aim [was] to have [her] relieved from duty so they [could] replace [her] with an aide with less seniority," *i.e*. Lopez, who had been laid off due to budget cuts, and who, according to Plaintiff, was friends with Levy.  *Id*.

89. According to Plaintiff, she and another aide were made to do a lot of heavy lifting and had to move teachers' belongings from one class to another or to the basement for end of year storage. *Id*.

90. Plaintiff's complaint of discrimination made no mention of overhearing Thompson state that she had a problem with West Indian women. *Id.*

91. Plaintiff brought a complaint of discrimination based on race/color and national origin with the New York State Division of Human Rights ("NYSDHR") on or about March 3, 2010. *See* New York State Division of Human Rights Verified Complaint, Case No. 10140309, annexed as Exhibit EEE.

92. Plaintiff brought a complaint of retaliation with the NYSDHR on or about September 26, 2011. *See* New York State Division of Human Rights Verified Complaint, Case No. 10150957, annexed as Exhibit FFF.

93. Plaintiff claimed she was retaliated against after she filed her complaint of discrimination by: (1) receiving a letter for having an open umbrella and handbag while supervising students and for failing to report an incident in a timely manner; (2) having to request permission to use the bathroom; and (3) being terminated. *See id*.

94. The NYSDHR dismissed her complaints of discrimination and retaliation for administrative convenience on or about January 11, 2012. *See* Determination and Order of

Dismissal for Administrative Convenience for case nos. 10140309 and 10150957, annexed as

Exhibit GGG.

Dated: New York, New York
April 25, 2014

                                      ZACHARY W. CARTER
                                      Corporation Counsel of the City of New York
                                        Attorney for Defendant New York City
                                      Department of Education & Renée Pepper
                                      100 Church Street, Room 2-102
                                      New York, New York 10007
                                      (212) 356-2444

                                    By:          /s/
                                          Kathryn E. Martin
                                          Senior Counsel
                                          kmartin@law.nyc.gov