UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MERLENE BACCHUS,

        **Plaintiff,**

-against-

THE CITY OF NEW YORK, RENÉE
PEPPER and BOARD OF EDUCATION
EMPLOYEES    LOCAL 372, DISTRICT
COUNCIL 37, AMERICAN
FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, AFL-
CIO,

        **Defendants.**

---

Case No.: 12-cv- 1663 (PKC)(MDG)

*SERVED ON AUGUST 22, 2014*

---

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
*DOE DEFENDANTS'* MOTION FOR SUMMARY JUDGMENT

---

Vincent I. Eke-Nweke, Esq.
Law Office of Vincent I. Eke-Nweke, P.C.
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CONTENTS | | i |

TABLE OF CONTENTS............................................................................................i

PRELIMINARY STATEMENT...............................................................................1

STATEMENT OF FACTS.......................................................................................2

ARGUMENT............................................................................................................5

I.  BACCHUS' CLAIMS AGAINST THE DOE BROUGHT
    UNDER THE CBA, THE NEW YORK STATE AND CITY
    LAWS ARE NOT BARRED BY EDUC. LAW §3813(1)................................5

    A.  Bacchus' Claims Under The CBA, The New York State
        and City Laws Are Not Barred Because The DOE Waived
        The Applicability Of Educ. Law § 3813(1) By The
        Detailed Grievance Procedure Set Forth In The CBA............................5

        1.  The Applicable CBA Contains Detailed Grievance
            Procedure Which Are Clearly Inconsistent With The
            Provisions Of § 3813.....................................................................7

    B.  Services Of Bacchus' Discrimination Complaints And
        Grievances Upon DOE Comply With § 3813 Requirements...................8

        1.  The Retaliations Claims Are "Reasonably Related"
            To The Discrimination Claims........................................................9

        2.  Bacchus' NYSDHR Discrimination Complaint, The
            Suspension and Discharge Grievances Were Properly
            Served Upon The "Governing Body" For The City
            School District Of The City Of New York In
            Accordance With New York Law....................................................10

            i.  Because The DOE Is A Public Corporation, The
                Discrimination Complaint Was Properly Served
                Upon Its General Counsel Under
                NY GMU. Law § 50-e(3)(a)...............................................10

ii.      BOE And DOE Officially Waived The
Applicability Of §3813's Requirement..................................................11

iii.     Service Upon DOE's General Counsel
Is Tantamount to Service Upon DOE..................................................12

II.     CLAIMS AGAINST PEPPER UNDER §1981 SHOULD
BE CONSTRUED UNDER §1983.....................................................................12

III.   BACCHUS' RACE & NATIONAL ORIGIN DISCRIMINATION
CLAIMS ARE VIABLE.....................................................................................13

    A.    Standard For Establishing Discrimination.................................................14

       1.    DOE Defendants Subjected Bacchus
To Adverse Employment Actions...............................................14

           i.     Bacchus' Termination, Suspension and
Disciplinary Letters Were Adverse Actions......................................15

           ii.    The Excessive Work Load, Scrutiny Etc,
Constitute Adverse Employment Actions..........................................15

           iii.   Bacchus Need Not Establish Adverse
Employment Action.........................................................................16

       2.    The Adverse Employment Actions Give Rise
To An Inference Of Racial And National
Origin Discrimination...............................................................17

           i.     Pepper and Others Frequently Mimicked
Bacchus' West Indian Accent.........................................................18

           ii.    Defendants Subjected Bacchus To Fabricated
Charges Of Corporal Punishment Or Verbal
Abuse/Misconduct, Terminated Her
Employment And Re-Hired Lopez And
Treated Lopez And Other Non-West
Indian School Aides More Favorably................................................19

           iii.   The Inference of Discrimination Is Not Negated
By The Same Actor Inference..........................................................21

        3.      DOE Defendants Failed To Articulate A Legitimate,
Non-discriminatory Reason..............................................................................3

                i.      The Arbitration Award Was Biased And Wrong
As A Matter Of Law And Fact............................................................22

                ii.     Bacchus Was Not Insubordinate,
Aggressive Nor Disrespectful............................................................23

        4.      The Reason Given By Defendants For
Terminating Bacchus Is A Pretext...................................................................24

                i.      Totality of The Circumstances Raise Triable Issues........................24

                ii.     Bacchus' Long History of Good Performance
Followed By Alleged Precipitous Decline
in Performance Is Suggestive of Pretext".........................................25

        iii.    Pepper and Thompson's Failure To Comply
With The Specific Instructions Itemized In
OSI Emails Is Evidence Pretext.......................................................25

IV.    DOE DEFENDANTS SUBJECTED BACCHUS
TO A HOSTILE WORK ENVIRONMENT.........................................................................26

    A.    Circumstantial Evidence Is Sufficient To Establish
Race And National Origin Based Hostile Work Environment...................................28

V.     DOE DEFENDANTS SUBJECTED
BACCHUS TO RETALIATION...........................................................................................29

CONCLUSION......................................................................................................................30

## PRELIMINARY STATEMENT

Plaintiff Marlene Bacchus ("Plaintiff" or "Bacchus") submits this Memorandum of Law in opposition to the motion by the City of New York (the "City") and Renée Pepper ("Pepper") (together DOE defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment. Bacchus opposes said defendants' motion because as set forth in Plaintiff's Statement of Disputed Material Facts Pursuant to Rule 56.1 ("Plaintiff's Disputed Statement"), there is genuine issue of material fact for trial.

## STATEMENT OF FACTS

Bacchus respectfully refers the Court to her accompanying (i) Affidavit in Opposition to the instant motion ("Bacchus Opp. Aff"), (ii) Plaintiff's Disputed Statement and (iii) the Affidavit ("Bacchus Aff.") and (iv) Statement of Undisputed Material Facts ("Plaintiff's Statement") she submitted in support of her motion for partial summary judgment against the Board of Education Employees Local 372, District Council 37 and American Federation of State, County and Municipal Employees, AFL-CIO ("Unions" or "Union Defendants") (all of which are hereby repeated and incorporated herein by reference), for a complete recitation of the material facts. Bacchus also incorporates herein by reference, relevant portions of the facts and argument contained in the Memorandum of Law submitted in support of her motion for summary judgment against the Unions.

Following the disclosure in September 2009, of Katarzyna Lopez's ("Lopez"), impending lay-off, Pepper, Angela Thompson, deceased, ("Thompson") and other members of the Administration of PS 295 procured approximately **thirteen (13)** fabricated allegations of corporal punishment or verbal abuse of minor students or other misconduct against Bacchus. (Plaintiff's Statement ¶ 74, 75; Bacchus Aff. 57-69)). Altogether, a total of **eight (8)** allegations of corporal punishment or verbal abuse were reported to the DOE's Office of Special Investigations ("OSI")

against Bacchus. Six (6) of such allegations were presented to Bacchus on one date -- December 9, 2009 -- and were allegedly investigated by Thompson, whereas the seventh of such allegations was presented to Bacchus on January 15, 2010, and was also allegedly investigated by Thompson. The eight and last allegation of verbal abuse of a student -- the "fat boy" allegation for which Bacchus was allegedly discharged -- was presented to Bacchus on February 16, 2011, and was allegedly investigated and substantiated by Pepper. (Bacchus Aff. ¶¶ 45-47, 57-63; Bacchus Opp. Aff. ¶5; Plaintiff's Statement ¶¶ 14-17; Plaintiff's Disputed Statement ¶¶29-44).

The applicable provisions of the DOE's Chancellor's Regulations A-420 and A-421, precluded the school principal from conducting any investigation into an allegation of corporal punishment or verbal abuse unless such allegation was **first reported** to the OSI and a confirmation number generated for such allegation. "After making [such] report to OSI, the principal shall take no further investigative action until OSI provides instructions as to how to proceed." (Martin Decl. Exhs. S at D 000319-20 and W at D 000325-6). If the school principal was instructed by OSI to conduct the investigation, the principal must follow specific guidelines and instructions given by OSI to conduct the investigation. Such guidelines and instructions were set forth in the Chancellor's Regulations A-420 and A-421 as well as in separate emails the OSI sent to the principal with respect to each allegation of corporal punishment or verbal abuse reported to the OSI and referred to the principal for investigation. (Eke-Nweke Opp. Decl Ex. 11(a-e); McLaren Tr. 23,33-37,Exs. 2-4, 9).

The Chancellor's Regulations A-420 and A-421 did not permit the OSI to refer an allegation of corporal punishment or verbal abuse for investigation directly to a school Assistant Principal. (McLaren Tr. 31:12-17). However, in this case, OSI disregarded such proscription and referred the "fat boy" charge directly to Assistant Principal Pepper for investigation. (Plaintiff's Disputed

2

Statement ¶ 74(a)-(h)). Also, Pepper and Thompson disregarded the specific guidelines or instructions set forth in the respective email OSI sent to Pepper or Thompson with respect to each charge OSI referred to them for investigation being investigated. (Eke-Nweke Opp. Decl Exh.11(a-e)

With respect to the five (5) charges of misconduct against Bacchus which did not involve any allegation of corporal punishment or verbal abuse, Pepper and Thompson allegedly found that each such charge was substantiated, except the eleventh allegation, which the OSI investigated directly and found to be **unsubstantiated** despite the apparent pressure on OSI Confidential Investigator Morano to substantiate same. (Bachus Aff. ¶67; McLaren Tr. 27, Exh. 6, Roach Tr. Exh. 93, Exh.15; Eke-Nweke Decl. Exh. 11(f))

In addition to the thirteen (13) allegations of corporal punishment or verbal abuse or misconduct brought against Bacchus, it was later disclosed in the course of this litigation that Pepper allegedly procured statements or letters from other students containing allegations of abuses or misconduct which were apparently not reported to the OSI nor investigated by the Administration. (Plaintiff's Disputed Statement ¶ 72) In one such allegation, it was alleged in a letter to Pepper that Bacchus, among other things, pulled a student by the arm and **spit on the face of another student for no reason**[1]. (Pepper Tr. Exh. 43 (D 001386). Other such allegations state, *inter alia,* that Bacchus was disrespectful to classes 601 and 602 and that Bacchus stuck out her middle finger to tell students to sit down (Pepper Tr. Exh. 44 (D 001390); and that Bacchus came up to a student and asked the student to throw away her food. (Pepper Tr. Exh. 56 (D001385))

---

[1] Had there been any semblance of reliability to this allegation, Bacchus would have, at a minimum, been immediately suspended from employment pending any investigation by the New York City Police Department or the OSI into the matter. But because Pepper manipulated these students to fabricate these nefarious allegations against Bacchus, she (Pepper) recognized that such allegation --that Bacchus spat on the face of a student -- was way too far-fetched to be believed. Therefore, Pepper suppressed the statement, did not report the allegation to the OSI nor bring it up at a disciplinary conference.

Furthermore, after the initial depositions of Pepper and Guidance Councillor, Colleen O'Connell ("O'Connell"), DOE defendants produced copies of alleged students' statements which contain additional fabricated allegations that were apparently not reported to OSI nor investigated by Pepper or the school Administration, nor disclosed to Bacchus or her union representative, Phyllis Wambser ("Wambser"). (Pepper Tr. Exhs. 57-64). Also, on February 3, 2011[2], Pepper held a disciplinary conference with Bacchus and her Union Representative, concerning an alleged incident of violation of school policy or failures to supervise and report. Bacchus was not issued with a disciplinary letter with respect said incident. However, the record in this case reveals that Pepper drafted an unsigned disciplinary letter concerning the incident. (Pepper Tr. 66)

With respect to the alleged investigation of the "fat boy" charge, Pepper alleged that Bacchus called AA "fat boy" while AA and CT, another sixth grader were having a verbal altercation inside PS 295 auditorium. The record establishes, that Bacchus and Donna Arjoon were together at the time AA was allegedly called "fat boy", that School Safety Agent ("SSA") Parker was standing behind AA at such time (Pepper Exh. 52), that the auditorium was equipped with surveillance cameras, that AA and CT (*Id.* at Exh 49) were sitting close to the other sixth grade *male* students, and that Bacchus denied that she called AA "fat boy." (Plaintiff's Statement ¶¶16-18, 25-33). Despite such denial by Bacchus, the availability of said potential eye and ear witnesses who could have offered probative statement or testimony and the clear guidelines and instructions OSI set forth in the email to Pepper (Pepper Tr. Exh. 38), Pepper purported to substantiate the "fat boy" allegation without obtaining or

---

[2]The conference was originally scheduled for January 26, 2011, the same month that Lopez was re-hired but was later held on the same date (2/3/2011) that Pepper allegedly obtained some of the students' witness statements concerning the "fat boy" allegation. See Pepper Exh. 66.

disclosing witness statements from CT[3], SSA Parker, Ms. Arjoon, nor any other male student, nor

relevant surveillance video footage, in her purported investigation of the allegation.

## ARGUMENT

## I

## BACCHUS' CLAIMS AGAINST THE DOE BROUGHT UNDER THE CBA, THE NEW YORK STATE AND CITY LAWS ARE NOT BARRED BY EDUC. LAW §3813(1)

Bacchus' New York State law and City law claims asserted against the DOE[4] (including

claims under the Collective Bargaining Agreement ("CBA"), Human Rights Law and City Law) are

not barred because the DOE waived the applicability of the condition precedent to suit set forth in

Educ. Law §3813(1), and because the combined effect of the service of Bacchus' New York State

Division of Human Rights ("NYSDHR") complaints of discrimination, suspension and discharge

grievances upon the DOE complied with the notice of claim requirements of § 3813.

A. **Bacchus' Claims Under The CBA, The New York State and City Laws Are Not Barred Because The DOE Waived The Applicability Of Educ. Law § 3813(1) By The Detailed Grievance Procedure Set Forth In The CBA**

"Section 3813 of the Education Law is designed to give school districts prompt notice of

*claim before it is too late for investigation to be efficient[]." Matter of Geneseo Cent. School, v.*

*Perfetto & Whalen Constr. Corp.,* 53 N.Y. 306 at 311, 441 N.Y.S. 2d 229 (1981) (internal citation

and quotation marks omitted). *See also, Lewinter v. New York City Dept. Of Educ.,* 2010 U.S. Dist.

---

[3]Apparently exculpatory statements were obtained from CT (Pepper Exh. 49) and EA (Pepper Exh. 52), but Pepper and O'Connell suppressed such statements and did not disclose their existence until July 1, 2013 in this litigation.

[4]Claims asserted against Pepper are not subject to the notice of claim provision in §3813 because she was employed as an Assistant Principal. *See Moore v. City of New York,* 2010 U.S. Dist. LEXIS 19183 *32 (S.D.N.Y. March 2, 2010)(noting that claims against a principal and assistant principal are not subject to § 3813(1) since assistant principal is not an "officer" within the scope of the statute.).

LEXIS 68493 at *9 (S.D.N.Y. July 9, 2010). Consistent with the stated purpose of Educ. Law § 3813(1), it is settled law that the "parties to a contract can indicate their intent to render that section inapplicable." *Matter of Guilderland Cent. School Dist., v. Guiderland Cent. Teachers Assn.,* 45 A.D. 2d 85, 86, 356 N.Y.S. 2d 689 (3rd Dept., 1974). Thus, New York courts have recognized that the condition precedent to suit set forth in Educ. Law §3813 is deemed waived, where as in this case, "there are procedures set forth in a separate statute or contractual provision which either afford the school district notice similar to that contained in [§3813(1)] or which waive compliance with its requirements." *Matter of Grey v. Board of Educ. of Hudson Falls Cent. School Dist.,* 60 A.D. 2d 361, 363, 401 N.Y.S. 2d 880 (3rd Dept., 1978), *leave denied* 44 N.Y 2d 645.

It is also settled law that the condition precedent to suit contained in Educ. Law § 3813(1) is deemed waived and inapplicable where the CBA between the parties "contains detailed procedures for the submission of grievances including a notice provision which is inconsistent with the provisions of [said] statute." *Matter of Enlarged City School Dist. of Troy, v. Troy Teachers Assn.,* 79 A.D. 2d 738, 739(3rd Dept., 1980). *See e.g.,Davis-Wallbridge, Inc., v. City of syracuse,* 71 N.Y. 2d 842 at 843, 522 N.E. 2d 1034, 527 N.Y.S. 2d 736 (1988)(holding that statutory condition precedent to suit will be deemed waived where waiver may be implied from the parties detailed procedures which are inconsistent with the statutory provision); *Matter of Local 832 Terminal Employees of the City of NY v. Dept., of Educ. Of the City of New York,* 60 A.D. 3d 567 at 570 (1st Dept., 2009)(rejecting the DOE's contention that the union's petition is barred for non compliance with §3813(1) where the subject CBA contained detailed grievance procedure that are plainly inconsistent with the provisions of §3813(1)); *N. Picco & Sons Contracting Co., Inc., v. Board of Educ. of Bronxville Sch.,* 26 A.D. 3d 317, 318 (2nd Dept., 2006)(finding that the plaintiff was excused

6

from complying with the provision of §3813(1) given the parties' detailed grievance procedure which were plainly inconsistent with those contained in § 3813 thereby indicating the parties' implicit intention to waive the applicability of §3813.);*Matter of South Cent. School Dist., v. South Colonie Teachers' Assn.,* 86 A.D. 2d 686, 447 N.Y.S. 2d 37 (3rd Dept., 1982)(same).

## 1. *The Applicable CBA Contains Detailed Grievance Procedure Which Are Clearly Inconsistent With The Provisions Of § 3813*

Contrary to the DOE defendants' contention, the provisions of N.Y. Educ. Law § 3813(1) is not applicable to this action because the CBA which the DOE entered into with the Unions -- for the benefit of Bacchus and others in the title of School Aide -- "contain[s] detailed grievance procedures waiving compliance with [the statutory notice of claim requirement in Educ. Law § 3813]." *Civil Serv. Empl. Assn. v. Board of Educ. of Lakeland Cent. School Dist. Of Shrub Oak,* 230 A.D. 2d 703, 646 N.Y.S. 2d 357 (2nd Dept., 1996). Therefore, Bacchus "was excused from complying with the statutory notice-of-claim requirement in Education Law § 3813." *Id.*

In this case, Article XX of the CBA contains very detailed four Step grievance procedure, with specified time limitation for each Step as well as notice provisions which, *inter alia,* require that an employee's complaint be presented within a period of 75 days from the date of occurrence of the subject incident. The grievance procedure in question is clearly inconsistent with the provisions of §3813 and does not require compliance with said statute. By agreeing to the terms of the grievance procedure, the DOE implicitly waived the applicability of §3813 to "complaint[s] [by any employee in the title of School Aide, including Bacchus] concerning any condition of employment within the authority of the [DOE]...." CBA Article XX. *See Matter of Guilderland Cent. School Dist.,* 45 A.D. 2d 85, 86, (concluding that the parties there intended to waive the

7

provisions of §3813, where as in Bacchus' case, the CBA "set forth in elaborate detail step-by-step grievance procedures, nowhere requiring compliance with section 3813[]" with specified time limitations that were plainly inconsistent with those set forth in § 3813).

## B. Services Of Bacchus' Discrimination Complaints And Grievances Upon DOE Comply With § 3813 Requirements

Several district courts in this circuit have concluded that "a charge filed with the EEOC may under some circumstances, satisfy §3813's notice of claim provisions." *Anna-Marie v. New York City Dept., of Educ.*, 938 F. Supp. 2d 334 at 360 (E.D.N.Y. 2013). To satisfy §3813, the EEOC charge must be served upon the proper "governing body" of a school and be served within three months of the accrual of the claim. *Id. See also, Tomici v. New York City Dept., of Educ.*, 2012 U.S. Dist. LEXIS 190052 at *8 (E.D.N.Y. Dec. 19, 2012) (holding that "[a] charge filed the [EEOC] and served on the proper "governing body" of a school should satisfy the notice of claim provision."); *Donlon v. Bd. of Educ. of the Greece Cent. Sch. Dist.*, 2007 U.S. Dist. LEXIS 93492 at *8 (W.D.N.Y., Dec. 20, 2007) (finding that courts have permitted other forms of documents, not denominated as notice of claims, to satisfy § 3813(1) requirement "if it provides the necessary information as to the nature of the claim.") *quoting Mannella v. Uniondale Union Free Sch. Dist.*, 287 A.D. 2d 636, 732 N.Y.S. 2d 40 (2nd Dept. 2001) (petition to Commissioner of Education constituted notice of claim.); *Kushner v. Valenti*, 285 F. Supp. 2d 314, 316 (E.D.N.Y. 2003) (holding that EEOC Notice of Charge of Discrimination sent to the school district was sufficient to satisfy § 3813(1) notice of claim requirement); *Lewinter v. New York City Dep't of Edu.*, 2010 U.S. Dist. LEXIS 68493 at * 10-11 (S.D.N.Y. July 9, 2010)(assuming that plaintiff's complaint in the action could serve as § 3813(1) notice of claim).

8

Here, the complaints of discrimination and retaliation Bacchus filed with the NYSDHR as well as her suspension and discharge grievances all combine to satisfy § 3813 requirements. The DOE defendants concede that Bacchus' March 2010 discrimination complaint was served upon the DOE's legal department within the statutory time period -- three months of the accrual of the discrimination claim. In addition, it is undisputed that on or about February 23, 2010 and April 15, 2011, the suspension and discharge grievances were respectively served upon Lenon Murray, the DOE's Community Superintendent for District 29 -- governing body of the DOE School District 29 -- responsible for PS 295, within three months of Bacchus' suspension and discharge, respectively. And that the DOE conducted several grievance hearings on both the suspension and discharge grievances. *see* Plaintiff's Statement ¶¶36-42, 69; Cabranes Tr. Exhs. 5 and 18.

### 1. *The Retaliations Claims Are "Reasonably Related" To The Discrimination Claims*

Bacchus submits that her retaliation claims are "reasonably related" to her March 2010 timely served underlying discrimination complaint. Consequently, the DOE is deemed to have been given sufficient notice of the retaliation claims in compliance with the requirements of Educ. Law § 3813(1). Indeed, because Bacchus timely filed her underlying complaint of discrimination with the NYSDHR in compliance with the Human Rights Law procedures, she was not required, following her subsequent termination, to formally file a retaliation complaint with the NYSDHR in order for her to exhaust her administrative remedies prior to suit. As this Court recognized in *Ibraheem v. Wackenhut Services, Inc.*, 2014 U.S. Dist. LEXIS 64475 *22 (May 9, 2014), "claims of both retaliation and wrongful termination postdating the submission of an EEOC charge are excepted from the requirement that the claim must first have been made in the EEOC charge." *Id.*

It follows therefore, that Bacchus satisfied §3813 requirements with respect to her New York

State and City laws claims for breach of the CBA, discrimination and retaliation. Consequently, she was not required to serve the DOE with additional notice of claim, particularly, in light of the New York Court of Appeals recognition in *Union Free School Dist. No. 6 of Towns of Islip & Smithtown Bd. v. New York State Human Rights Appeal Bd.,* 35 N.Y. 2d 371, 380, 320 N.E. 2d 859, 362 N.Y.S. 2d 139 (1974), that the "procedures under Human Rights Law afford the school district notice and opportunity for adjustment and settlement" of claims, similar to §3813(1) requirements. *See also Matter of De Meurers v. New York State & Local Empls. Retirement Sys.,* 243 A.D. 2d 54, 58 (3rd Dept. 1998)(finding as a "well-recognized exception" to the requirements of Education Law § 3813(1), procedure in a separate statute or contractual provision which afford the school district notice and opportunity for settlement similar to that required by § 3813(1)).

**2.      *Bacchus' NYSDHR Discrimination Complaint, The Suspension and Discharge Grievances Were Properly Served Upon The "Governing Body" For The City School District Of The City Of New York In Accordance With New York Law***

As demonstrated below, the DOE defendants' argument that Bacchus' discrimination complaint was served upon the DOE's legal department, as opposed to the school district's "governing body" required by § 3813, is without merit and should be disregarded by the Court.

***i.      Because The DOE Is A Public Corporation, The Discrimination Complaint Was Properly Served Upon Its General Counsel Under NY GMU. Law § 50-e(3)(a)***

Firstly, it should be noted that the Board of Education of the City of New York ("BOE") is a public corporation created under the laws of the State of New York. *See Matson v. Board of Education of the City of New York,* 631 F. 3d 57 at 77 (2nd Cir. 2011) (Straub, Circuit Judge dissenting) (concluding that the BOE "was created as a public corporate entity...")(quoting *Nacipucha v. City of New York,* 849 N.Y.S. 2d 414, 417 (NY Sup. Ct. 2008); *Wodetzky v. Borad of*

*Education of the City of New York*, 16 N.Y.S. 2d 107 at 110 (1939). Pursuant to General Municipal Law § 50-e(3)(a), a notice of claim against a public corporation such as DOE or BOE may be served upon "an attorney regularly engaged in representing such public corporation. *See Nacipucha*, 849 N.Y.S. 2d at 419 (quoting General Municipal Law § 50-e(3)(a)). Therefore, Bacchus' discrimination complaint -- served within the statutory time period upon the General Counsel of the DOE who was "regularly engaged in representing" the DOE and who represented the DOE at the underlying NYSDHR proceeding -- satisfied §3813 requirements for service of notice of claim.

## ii. *BOE And DOE Officially Waived The Applicability Of §3813's Requirement*

Secondly, the BOE, by its bylaws created the DOE as the governance structure or "governing body" for the City School District. *See Nacipucha*, 849 N.Y.S. 2d at 419. Bacchus contends that both BOE and DOE implicitly waived the strict applicability of §3813's requirement that notice of claim be served upon a school district's "governing body." Such waiver was effectuated by official notice published in the New York Law Journal on November 12, 2002, which designated a third party -- the City Law Department[5] -- as agent for service of notices of claim for the DOE and BOE. *See Nacipucha, Id. See also, City of New York v. Philadelphia Indemnity Ins. Co.*, 2010 U.S.Dist. LEXIS 78699 at *32 (S.D.N.Y. July 27, 2010) (BOE appointed the City Law Department as its agent for service). Given such designation of a third party, the DOE should be deemed to have waived §3813's requirement that notice of claim be served upon a school district "governing body." Therefore, such requirement should not be strictly construed by the Court.

---

[5]Because Bacchus' DFR and breach of CBA claims began to accrue in March 2012, see memo. in opp to the Unions' motion at 1, service of the initial Complaint (Dkt. 1) in this action upon the Corporation Counsel on April 19, 2012 (Dkt. 3) also satisfied §3813 requirements. See *Demchik v. General Motors Corp.*, 821 F. 2d 102, 105 (2nd Cir. 1987)(holding that "[w]hen the cause of action is based on a breach of the union's [DFR], the claims against both the employer and the union begin to accrue no later that the time when plaintiffs knew or reasonably should have known that such a breach had occurred.") (internal quotation marks omitted)

### *iii.    Service Upon DOE's General Counsel Is Tantamount to Service Upon DOE*

Thirdly, even assuming *arguendo*, the notice published in the New York Law Journal is not deemed a waiver of the strict applicability of §3813's requirement that notice of claim be served upon a district's "governing body", given that the DOE itself is the "governing body" for the City School District, service of Bacchus' complaint of discrimination upon the DOE's General Counsel was, indeed, tantamount to service upon the DOE in satisfaction of the requirements of §3813.

### C.    DOE BREACHED THE CBA

Bacchus submits that the DOE breached Articles II and XXI of the CBA by subjecting her to discrimination and hostile work environment based on her race and national origin, retaliation for engaging in protected activities as demonstrated herein in III-V, and by terminating her employment based upon fabricated charges and without good and sufficient reason. *See, Gold v. Local Union No. 888*, 758 F. Supp. 205 at 207 (1991)(finding that plaintiff is entitled to sue his employer for breach of the CBA where the union breached its duty of fair representation ("DFR")).

### II

### CLAIMS AGAINST PEPPER[6] UNDER §1981 SHOULD BE CONSTRUED UNDER §1983

It is well settled law that §1981 prohibits "discrimination with respect to the enjoyment of benefits, privileges, terms and conditions of a contractual relationship, such as employment, ... and is applicable to a plaintiff complaining of discrimination during an employment period[.]" *Patterson v. County of Oneida*, 375 F.3d 206 at 224-5 (2nd Cir. 2004)(internal quotation marks and citation omitted). Bacchus concedes that the Second Circuit has held that, "the express cause of action for damages created by §1983 constitutes the exclusive federal remedy for violation of the rights

---

[6]Bacchus hereby withdraws her § 1981 claims as asserted against the DOE only.

12

guaranteed in §1981 by state governmental units." *Id.* at 225. (quoting *Jett v. Dallas Independent School District,* 491 U.S. 701, 733, 105 L. Ed. 2d 598, 109 S.ct. 2702 (1989).

Although the decision in *Jett,* applies solely to actions against "governmental units", some courts --whose decisions are not binding on this Court --have interpreted *Jett* as also applicable to actions against individuals sued in their individual capacities. *See Whaley v. City University of New York,* 555 F. Supp. 2d 381 at 400-01 (S.D.N.Y. 2008)("The holding in *Jett* has been interpreted to encompass not only governmental entities, but also individuals sued in their individual capacities..."). Even though such interpretation is not bound on this Court, Bacchus respectfully requests leave of Court to further amend her Complaint so as to assert claims against Pepper under §1983 and further requests that her §1981 claims against Pepper be construed by the Court as brought under § 1983. *See Rehman v. State University of New York at Stony Brook,* 596 F. Supp. 2d 643 at 654 (E.D.N.Y. 2009)(finding that the plaintiff does not have an independent § 1981 claim against the defendants *but construing the plaintiff's § 1981 claims as asserted under §1983).*

### III

### **BACCHUS' RACE & NATIONAL ORIGIN DISCRIMINATION CLAIMS ARE VIABLE**

A plaintiff in an employment discrimination case has the initial burden of:

proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 , 252-53 (1981) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

## A.    <u>Standard For Establishing Discrimination</u>[7]

In order to establish a *prima facie* case of employment discrimination under Title VII, Bacchus must show (1) that she belongs to a protected class, (2) that she was qualified for the position she held, (3) that she suffered an adverse employment action, and (4) that the adverse employment action occurred under "circumstances giving rise to an inference of racial [or national origin] discrimination." *Burdine,* 450 U.S. at 253-54, n. 6; *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2nd Cir. 1987). A plaintiff's burden to establish a *prima facie* case of discrimination "is not onerous." *Burdine,* 450 U.S. at 253; *Gallo v. Prudential Residential Services Ltd. Partnership,* 22 F.3d 1219 at 1225 (2nd Cir. 1994). Direct evidence is not necessary. *Tyler v. Bethlehem Steel Corp.* 958 F.2d 1176 at 1187 (2nd Cir. 1992).

DOE defendants appear only to dispute the third and fourth elements of the *prima facie* case.

### 1.    <u>DOE Defendants Subjected Bacchus To Adverse Employment Actions</u>

An "adverse employment action" is one which is "more disruptive than a mere inconvenience or an alteration of job responsibilities" *Terry v. Ashcroft,* 336 F.3d 128, 138 (2nd Cir. 2003) (citing *Galabya v. New York City Bd. of Ed.,* 202 F. 3rd 636, 640 (2nd Cir. 2000) "A materially adverse change might be indicated by a termination of employment, ... a material loss of benefits, significantly diminished material loss of responsibilities, or other indices ... unique to a particular situation." *Id.,* (internal quotation marks omitted).

---

[7]    Standards set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1972) relating to burden and order of proof in Title VII cases also apply to cases arising under § 1981 and §1983 consequently, all of Bacchus ' discrimination and retaliations claims will be analyzed under the *McDonnell Douglas* framework. *See Pena v. Brottleboro Retreat,* 702 F.2d 322, 323 (2nd Cir. 1983). Also, the same legal standards govern claims under Title VII and the Human Rights Law. *Brennan v. City of White Plains,* 67 F. Supp. 2d 362, 371-372 (S.D.N.Y. 1999). However, City law claims are evaluated under a much more liberal standard. See *Meyer v. State of New York Office of Mental Health,* 2014 U.S. Dist LEXIS 61347 *25, fn. 10 (May 2, 2014)(citing *Mihalik v. Credit Agricole Cheuvreux North America, Inc.,* 715 F.3d 102, 109 (2nd Cir. 2013))

### i. *Bacchus' Termination, Suspension and Disciplinary Letters Were Adverse Actions*

In the case at bar, the termination of Bacchus, "was the quintessential materially adverse action." *Humphries v. City University of NY*, 2013 U.S. Dist. LEXIS 169086 *24 (S.D.N.Y. Nov. 26 2013)(citing *Williams v. R.H. Donnelley, Corp.* 368 F. 3d 123, 128 (2nd Cir. 2004). Similarly, her two-week "suspension constitutes an adverse employment action insofar as it result[ed] in loss of pay and ha[d] a negative impact on [her] employment record and workplace reputation." *McLean v. Metropolitan Jewish Geriatric Center,* 2013 U.S. Dist. LEXIS 152377 (E.D.N.Y. Oct. 23, 2013).

Also, the disciplinary letters to file, warning letters and disciplinary charges each constitutes adverse employment action because they were part of Bacchus' employment file, impacted negatively on her grievance and arbitration hearings and decisions, and were listed negatively in her termination letter, grievance and arbitration decisions. *See Miller v. N.Y. City Health & Hosp. Corp.,* 2004 U.S. Dist. LEXIS 17050 * 25 (S.D.N.Y. Aug. 25, 2004)(negative memorandum or letter to an employee may constitute adverse employment action where it forms part of the employee's personnel record and as a result, affects the employment negatively.). *See also Knight v. City of New York,* 303 F. Supp. 2d 485, 497 (S.D.N.Y. 2004)("Disciplinary memoranda and evaluations are adverse employment actions [] if they affect ultimate employment decisions such as promotions, wages or termination."); *Johnson v. Connecticut,* 392 F. Supp. 2d 326, 340 (D. Conn. 2005)(same).

### ii. *The Excessive Work Load, Scrutiny Etc, Constitute Adverse Employment Actions*

DOE defendants' argument that some of the actions alleged by Bacchus are not adverse employment is misplaced and should be rejected. Courts have recognized that an employer's action of minor severity may constitute adverse action. *See Phillips v. Bowen,* 278 F.3d 103 at 109 (2nd Cir. 2002)(noting that lesser actions may constitute adverse employment actions.) Consequently, "courts

in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny ... constitute adverse employment actions..." where as here, they lead to more tangible adverse actions like a two-week suspension without pay, termination and/or a hostile work environment. *Honey v. County of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2000)("A reprimand can constitute adverse employment action."). *See also, Uddin v. City of New York*, 427 F. Supp. 2d 414 (S.D.N.Y. 2006) ("Reprimands and excessive scrutiny of an employee can contribute to a finding that an adverse employment action has taken place."); *Feingold v. New York*, 366 F.3d 138, 153-54 (2d Cir. 2004)( assignment of a disproportionately heavy work load constitutes adverse employment action); *Wanamaker v. Columbia Robe Co.*, 108 F.3d 462, 466 (2nd Cir. 1997) (recognizing that Title VII does not define adverse employment action solely in terms of job termination or reduced wages and benefits, and that less flagrant reprisals by employers may indeed be adverse).

Therefore, the disparate assignment of work undesired by other School Aides to Bacchus, disparate assignment of disproportionately excessive and/or out of title work -- being forced to lift heavy boxes onto a flatbed cart and photocopies for extended length of time -- excessive scrutiny, and regularly followed around and to the bathroom, verbal abuse, screaming and yelling at Bacchus, disciplinary letters to file, warning letters, false investigation allegations of misconduct and unfair medical examination, constitute adverse employment actions since such actions significantly contributed to the termination, suspension, hostile work environment, and retaliatory hostile work environment. *See* Bacchus Opp. Aff. ¶¶6(a-e); Plaintiff's Disputed Statement ¶17(a)-(d).

### iii. *Bacchus Need Not Establish Adverse Employment Action*

In any event, because Bacchus asserts a hostile work environment claim, it is not necessary for her to demonstrate that DOE defendants' alleged lesser severe actions constitute cognizable

16

adverse employment action since the cumulative effect of such actions also constitutes a hostile work environment. *See, Grepory v. Daly,* 243 F. 3d 687, at 691 (2nd Cir. 2001) ("harms suffered in the workplace are cognizable under Title VII, even when they are not the result of "tangible employment actions," if they arise from conduct (1) that is "objectively" severe or pervasive -- that is, if it creates "an environment that a reasonable person would find hostile or abusive") *See also, Weeks v. New York State Div. of Parole,* 273 F.3d 76, 86 (2d. Cir. 2001)(plaintiff proceeding under a hostile work environment theory need not establish adverse employment action); *Nash v. NYS Executive Department Div. Parole,* 1999 U.S. Dist. LEXIS 16066 *34 (S.D.N.Y. 1999). (In a Title VII retaliation claim, the adverse employment action -- can be hostile environment.).

## 2. *The Adverse Employment Actions Give Rise To An Inference Of Racial And National Origin Discrimination*

"Inference of discrimination is a flexible standard that can be satisfied differently in differing factual scenarios. No one particular type of proof is required to show that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination." *Dall v. St. Catherine of Siena Med. Center,* 2013 U.S. LEXIS 115090 (E.D.N.Y. August 14, 2013)(internal quotation marks and citation omitted). Thus, the Second Circuit has clarified that proof of discriminatory intent could be inferred from various circumstances, including *inter alia,* "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2nd Cir. 2001)(quoting *Chambers,* 43 F.3d at 37). "In assessing the inferences to be drawn from the circumstances of the termination, the court must be alert to the fact

17

that employers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law." *Ramseur v. Chase Manhattan Bank,* 865 F. 2d 460, 464-5 (2nd Cir. 1989) (internal quotation marks omitted). It is submitted that evidence from which race and national origin discrimination can be inferred is abound in this record.

### *i.    Pepper and Others Frequently Mimicked Bacchus' West Indian Accent*

It is well recognized that remarks about an employee's accent may constitute proof of national origin discrimination. *See Tomassi v. Insignia Fin. Group, Inc.,* 478 F. 3d 111 at 116 (2nd Cir. 2007)(discriminatory remarks tend "to show that the decision maker was motivated by assumptions or attitudes relating to the protected class"). *See also Morgan v. NYS Attorney General's Office,* 2013 U.S. Dist. LEXIS 17458 *25 (S.D.N.Y. Feb. 8, 2013)("Comments ridiculing an employee's accent may be relevant evidence of national-origin animus"); *Altman v. N.Y.C. Dept. of Edu.,* 2007 U.S. Dist. LEXIS 91348 (S.D.N.Y. Dec. 12, 2007)("comments about a person's accent may be probative of discriminatory intent").

Contrary to DOE defendants' contention, the discriminatory remarks made by Pepper, Thompson and others were not "stray remarks" because such remarks were made frequently over an extended period of time. *See* Plaintiff's Disputed Statement ¶ 17. Also, such remarks cannot be characterized as "stray" where as in this case, there is other evidence of discrimination in the record. See, *Danzer v. Norden Systems, Inc.,* 151 F. 3d 50 at (2nd Cir.1998) (where there is other evidence of discrimination, discriminatory remarks cannot be considered "stray," the trier of fact is entitled to consider whether the remarks constitute evidence of invidious discrimination.)

The record here contains evidence that Thompson, Pepper and other PS 295 Administration staff regularly mimicked Bacchus' West Indian accent, laughed at her when she spoke, imitated or

ridiculed her West Indian manner of speaking. Thompson frequently stated she did not like West Indian women, called them stupid and stated as follows to Bacchus: "Merlene, what are you saying? You sound like you're saying blah blah blah. Why can't you West Indian women learn to speak the English language properly? Learn to speak the English language." *See* Bacchus Opp. Aff. ¶¶15-17; Plaintiff's Disputed Statement ¶17(a)-(d).

ii.     ***Defendants Subjected Bacchus To Fabricated Charges Of Corporal Punishment Or Verbal Abuse/Misconduct, Terminated Her Employment And Re-Hired Lopez And Treated Lopez And Other Non-West Indian School Aides More Favorably***

In the context of "discipline based on a violation of a rule of the work place, [a Title VII plaintiff] must show that either she did not engage in the proscribed activity, or that if she did, similarly situated employees who were not members of a protected group were not punished. *Williams v. Casey,* 691 F.Supp. 760 at 767. (S.D.N.Y. 1988). *See also, Feingold v. New York,* 366 F.3d 138, 153-54 (2d Cir. 2004)("evidence that African-American [co-workers] were not disciplined *at all* for [similar misconduct] does support the conclusion that a discriminatory motive underlay [White/Jewish plaintiffs'] dismissal"); *Gilman v. Runyon,* 865 F.Supp. 188 at 192 (S.D.N.Y. 1994)("plaintiff can also indirectly prove causal connection by showing a similarity between her conduct and that of non-protected employees who were treated differently.).

Here, the evidence establishes that Bacchus was terminated and Lopez re-hired into Bacchus full time position. The DOE defendants' argument that the rehiring of Lopez and termination of Bacchus did not occur on the same date is without merit. Firstly, OSI Investigator Moreno's February 18, 2010 email substantiates the fact that Pepper and Thompson **"want[ed] to terminate [Bacchus]"**before January 2011. However, Investigator Moreno thwarted that effort when she rejected the pressure to substantiate the fabricated charge the Administration had expected to use as

19

a pretext for terminating Bacchus before January 20011. *See Mandell v. County of Suffolk,* 316 F.3d 368 at 384 (2nd Cir. 2003)(recognizing that in certain situations "the opportunities for [termination] do not necessarily immediately present themselves."). Secondly, Pepper made another attempt to terminate Bacchus by January 2011-- the same month Lopez was reinstated -- by soliciting the fabricated statements from students in January 2011, including one which states Bacchus spat on a student's face (see Pepper Exhs. 43, 44, 57-64), scheduled a disciplinary conference on January 26, 2011[8] which was later held on February 3, 2011 because Wambser was not available on January 26. *See* Pepper Exh. 66 -- however, the attempted January 2011 termination was scuttled temporarily when Pepper realized that the allegation of spitting was too far fetched to be believed. Thus, she suppressed the spitting allegation statement at the February 3, 2011 conference until July 1, 2013, and immediately procured the "fat boy" allegation used to terminate Bacchus in March 2011.

Also, Bacchus was the only School Aide of West Indian national origin and was subjected to disciplinary charges, written-up and disciplined for alleged failure to properly supervise students. Contrastingly, Lopez was involved in two similar incidents but Pepper failed to document such incidents nor subject Lopez to any disciplinary action on account of her handling of the incidents. *See* Plaintiff's Disputed Statement ¶¶ 68(a-g), 70(a-c). Also, all the School Aides regularly had a handbag while supervising students and occasionally used an umbrella for sun-shade but Bacchus was the only person subjected to disciplinary action for such conduct. *Id.* at ¶ 65(a)-(b). In addition, Bacchus was the only school Aide "forced" to lift heavy boxes unto a flatbed truck borrowed from the school's custodian staff, assigned to make photocopies which required her to keep standing for

---

[8]*See* Pepper Exhibit 66 stating in relevant parts that the "original conference was scheduled for January 26, 2011." But was re-scheduled to February 3, due to the unavailability of Wambser. *Id.* at D 001311.

more than three consecutive hours and make photocopies for the school. *Id.* at ¶¶19-20.

### iii.    *The Inference of Discrimination Is Not Negated By The Same Actor Inference*

The same actor inference is a questionable proposition which suggests that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire, [if] the firing has occurred only a short time after the hiring." *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir. 1997). Here, defendants are not entitled to same actor inference for a variety fo reasons.

Firstly, "[t]he inference is applicable so long as one management-level employee played a substantial role in both the hiring and firing of the plaintiff." *Dorcely v. Wyandanch Union Free Sch. Dist.,* 665 F. Supp. 2d 178, 198 (E.D.N.Y. 2009). Here, Pepper was responsible for the termination -- she procured the fabrication of the "fat boy" allegation, allegedly investigated and substantiated same and prepared the termination letter for the terminally sick Thompson to co-sign. Secondly, the same actor inference does not apply, where as in this case, there is a gap of over two years between the hiring and firing. *See Thomas v. iStar Fin. Inc.,* 438 F. Supp. 2d 348, 361 (S.D.N.Y. 2006)(recognizing that the same actor "inference no longer applies when more than two years separate the hiring and firing."). Thirdly, the inference is not dispositive where, as here, the decisionmakers make remarks demonstrating discriminatory animus. *See Smith v. Tuckahoe Union Free Sch. Dist.,* 2009 U.S.Dist. LEXIS 91106 *21(S.D.N.Y. Sept. 30, 2009).

Furthermore, the inference of race discrimination is not diminished by the fact that Thompson shared the same race as Bacchus. *See Danzer,* 151 F. 3d at 55 (holding that "the proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable."); *Feingold,* 366 F.3d at 155 (rejecting the suggestion that employers will not discriminate

against members of their own race or gender.).

### 3. *DOE Defendants Failed To Articulate A Legitimate, Non-discriminatory Reason*

Once a plaintiff has established a *prima facie* case of discrimination under Title VII, as Bacchus has done here, the burden shifts to the employer to proffer "a legitimate, non-discriminatory reason for the employment action." *Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39 42 (2nd Cir. 2012). As the Second Circuit has cautioned, an "employer's explanation of its reasons must be clear and specific" in order to "afford the employee a full and fair opportunity to demonstrate pretext." *Byrnie v. Town of Cromwell, BD. of Educ.*, 243 F.3d 93, 105 (2nd Cir. 2001), (quoting *Meiri v. Dacon*, 759 F.2d 989, 996-97 (2nd Cir. 1995). As demonstrated herein, the termination of Bacchus, her suspension, disparate treatment and the hostile work environment were all premised on disciplinary charges based on fabricated allegations. Consequently, Bacchus submits that DOE defendants have failed to articulate a legitimate non-discriminatory reason for said adverse actions.

### i. *The Arbitration Award Was Biased And Wrong As A Matter Of Law And Fact*

"[A] negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee. *Collins New York City Transit Auth.*, 305 F. 3d 113, 119 (2nd Cir. 2002)(recognizing that the "determination of how much weight to give a particular arbitration decision is left to court's discretion and depends on facts and circumstances of each case)(citing, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n. 21, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974)). In this case, the suspension arbitration Award should not be given any weight because, contrary to DOE defendants' argument, the arbitrator was not "independent." He was appointed and controlled by the DOE to represent DOE's interest. The Unions' appointee to the panel did not agree with the Award. *See* Plaintiff's Disputed Statement ¶52. In addition, the Award is wrong as a matter of fact

22

given the DOE defendants' failure to disclose the existence of the video footage testified to by O'Connell at her deposition as well as all the other significant inconsistencies and contradictions about the "hair-pulling" allegation. *Id.* at ¶¶ 44(a)-(h)-47, 50.

Also, the Award does not, as a matter of law contractually bind Bacchus given the Unions' failure to conduct any investigation into the hair-pulling allegation and the breach of the DFR they owed to Bacchus. *See Gorwin v. Local 282, I.B.T.,* 1997 U.S. Dist LEXIS 3822 *16 (S.D.N.Y. Apr. 1, 1997) (union member is not bound by arbitration award where the grievance "process has fundamentally malfunctioned by reason of the bad faith performance of the union.")

### ii. *Bacchus Was Not Insubordinate, Aggressive Nor Disrespectful*

"[I]t has long been settled that an employer may not rely on an employee conduct that it has unlawfully provoked as a basis for disciplining an employee." *U.S. v. Dist. Council of NYC & Vicinity of Carpenters,* 1996 U.S. Dist. LEXIS 5856 at *20 n.10 (S.D.N.Y. May 2, 1996)(quoting *NLRB v. Southern Bell Telephone Co.,* 694 F. 2d 974, 978 (5th Cir. 1982). Here, Bacchus' comments: "Ms. Thompson, you're not there. I am there I know" were justified because Thompson unlawfully provoked the comments by the presentation of the seventh fabricated allegation of corporal punishment or verbal abuse against Bacchus. *See* Plaintiff's Disputed Statement ¶63. Similarly, Bacchus' statement to her co-worker: "Now I'm being followed to the bathroom," was justified because Pepper unlawfully provoked the statement by her excessive scrutiny of Bacchus and by following her around. In any event, the allegations of insubordination, aggressive and/or disrespectful conduct cannot be relied upon as a defense here since such conduct was not proffered by the DOE defendants as the basis for termination of Bacchus nor for any of the adverse actions.

**4.** _**The Reason Given By Defendants For Terminating Bacchus Is A Pretext**_

Even if (which is not the case), DOE defendants proffered "a legitimate, non-discriminatory reason for the employment action", it is submitted that Bacchus has presented sufficient evidence from which a trier of fact could conclude that each adverse treatment she was subjected to was a pretext for racial and national origin discrimination. _See Reeves v. Sanderson Plumbing Products, Inc.,_ 530 U.S. 133, 152 (2000),(stating that, even after the defendant has stated a non-discriminatory reason for its action, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual") _See also  Gallo,_ 22 F3d at 1226; _Ramseur,_ 865 F. 2d at 465 ("the absence of direct or explicit evidence that a challenged personnel action was motivated by race is not fatal to a claim of race discrimination. A showing that a proffered justification is pretextual is itself sufficient to support an inference that the employer intentionally discriminated.")

**i.**    _**Totality of The Circumstances Raise Triable Issues**_

Here, Bacchus emphatically denied the charge that she called AA "fat boy."  Despite such denial, Pepper purported to substantiate the charge without obtaining or disclosing witness statements from eye or hear witnesses, including but not limited to, CT, SSA Parker, Ms. Arjoon, nor any other male student, nor relevant surveillance video footage.  Therefore, it is submitted, consistent with this Court's conclusion in _Ibraheem,_ that Pepper's failure to obtain or disclose such statements or evidence "raises triable issues of fact as to the veracity of the charge[s] and motivation behind the [termination of Bacchus' employment]" _Ibraheem,_ 2014 U.S. Dist. LEXIS 64475 *31-2 (denying defendants' motion for summary judgment in part where defendants failed to produce video evidence of alleged misconduct for which plaintiff was allegedly disciplined.).

It is further submitted, that the totality of the circumstances of the charges, including the factual disputes regarding each of the eight (8) charges of corporal punishment or verbal abuse brought against Bacchus, as well as the five (5) charges of misconduct "raise questions about the motivation behind [Bacchus' discipline and] termination." *Id.* at 32-34. *See, Stern v. Trustees of Columbia University*, 131 F.3d 305 at 314 (2nd Cir.1997)("an invidious discriminatory purpose may often be inferred from the totality of the relevant facts.")

### ii. Bacchus' Long History of Good Performance Followed By Alleged Precipitous Decline in Performance Is Suggestive of Pretext"

Courts have recognized that a sudden and unexpected downturn in an employee's performance when coupled with evidence of discriminatory comments may constitute evidence of pretext. *See Danzer,* 151 F. 3d at 56-57, (rejecting as "meritless" the defendant's argument that a sudden and unexpected downturn in a plaintiff's performance report cannot support a discrimination claim). *See also, Pearse v. Interstate Brands Corp.,* 1995 U.S. Dist LEXIS 5586, 1995 WL 250447 at *4 (E.D.La April 26, 1995) ("A long history of good performance followed by a precipitous decline in performance is suggestive of pretext."). In this case, the DOE employed Bacchus for approximately fifteen (15) consecutive years without issuing her with any disciplinary charge. However, on or about December 9, 2009 -- less than three weeks after Lopez was laid-off -- Bacchus was presented with six (6) charges of corporal punishment or verbal abuse of children. Altogether, a total of thirteen disciplinary charges were brought against Bacchus.

### iii. Pepper and Thompson's Failure To Comply With The Specific Instructions Itemized In OSI Emails Is Evidence Pretext

An employer's departure from its regular procedure in the treatment of a person in a protected class, is itself evidence of discrimination. *Village of Arlington Heights v. Metropolitan Housing*

*Dev. Corp.*, 429 U.S. 252 (1977). *See also, Stern, v. Trustees of Columbia University*, 131 F.3d 305 at 313 (2nd Cir.1997) (finding that "departures from procedural regularity [], can raise a question as to the good faith of the process where the departure may reasonably affect the decision.")(internal quotation marks omotted); *Lynn v. Deaconess Medical Center-West Campus*, 160 F.3d 484, 488 (8th Cir.)(in finding adequate evidence of pretext, the court relied in part on the failure of the plaintiff's supervisor to follow internal procedures before disciplining the plaintiff).

In this case, DOE defendants violated Chancellor's Regulations A-420 and A-421, by referring the "fat boy" charge directly to Pepper -- a school Assistant Principal -- for investigation. *see* McLaren Tr. 31:12-17; Plaintiff's Disputed Statement ¶ 74(a)-(h). Also, Pepper and Thompson disregarded the specific instructions contained in OSI emails for investigating corporal punishment or verbal abuse complaints. Eke-Nweke Opp. Decl Exh. 11(a)-(e). Specifically, they disregarded the bullet point instructions under the following headings for each charge: investigation, taking notes, interviewing complainant and witness, potential witnesses, and the subject of the investigation. With respect to the subject of investigation, they failed as required by the instructions, to interview persons named by Bacchus alibi or corroborating witnesses.

## IV

## DOE DEFENDANTS SUBJECTED BACCHUS<br>TO A HOSTILE WORK ENVIRONMENT

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the work place is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment," *Rivera v. Rochester Genesee Reg'l*

*Transp. Auth.*, 743 F.3d 11 at 20 (2nd Cir. 2012) (internal quotation marks omitted). As the Second Circuit has repeatedly cautioned "while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Terry,* 336 F.3d at 148. (Internal quotation marks omitted).

Bacchus submits that she was subjected to a hostile work environment because of her race, national origin and in retaliation for filing complaints of discrimination. Bacchus further submits that the effects of racial and national origin discrimination described herein in III, intermingled to aggravate the effect of hostile work environment and retaliatory hostile environment. *See Ibraheem*, 2014 U.S. Dist. LEXIS *39 ("The facts and arguments that support Plaintiff's discrimination claim are intertwined with, and support, his hostile work environment claim."); *See also Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 572 (2nd Cir. 2000) ("Given the evidence of both race-based and sex-based hostility, a jury could find that [the manager's] racial harassment exacerbated the effect of his sexually threatening behavior and vice versa."); *Terry,* at 150 (finding that "hostile racial attitudes could have exacerbated the effect of retaliation-based or age-based hostility and vice versa.").

Here, as in *Ibraheem*, the totality of the circumstances, including but not limited to, the facts contained[9] in III; Plaintiff's Opp. Aff. ¶¶ 6, 9, 11, 12, 15-17(a)-(e) and Plaintiff's Disputed Statement paragraphs 17(a) to (d), coupled with the circumstances surrounding the fabricated thirteen charges of corporal punishment or verbal abuse of children or misconduct (during the period in question, Bacchus was served with each of the disciplinary charges, summoned to a disciplinary conference

---

[9] Also, the following pages of the deposition transcript of Bacchus contain testimony regarding the hostile work environment Bacchus was subjected to: 17-19, 21, 36, 38-42, 44,46-49, 62, 63, 70-74, 82, 84-85, 90-95, 113, 218-19, 221-22)

for each charge and was issued a disciplinary letter allegedly substantiating each charge) demonstrate that Bacchus was subjected to a hostile work environment because of her race, national origin and in retaliation for filing her complaints of discrimination. *Id.* at *39. *See also, Redd v. New York State Div. of Parole*, 678 F.3d 166 at 176 (2nd Cir. 2012)("The objective hostility of a work environment depends on the totality of the circumstances, viewed from the perspective . . . of a reasonable person in the plaintiffs position, considering all the circumstances including the social context in which particular behavior occurs and is experienced by its target.")(internal quotation marks omitted)

The work place hostility caused Bacchus to suffer psychological and physical harm, be diagnosed with lumbago and humiliated openly in the presence of other employees of the school and parents of students. Offensive and insulting remark such as: "I hope she didn't blow it up" or "don't blow it up please" or "look at the mad old lady", "Aunt Jemima" or "ugly monkey" were directed at Bacchus. (*see* Bacchus Aff. ¶70) Plaintiff's Disputed Statement ¶20, Bacchus Opp. Aff. ¶¶16-17).

### A. Circumstantial Evidence Is Sufficient To Establish Race And National Origin Based Hostile Work Environment

Circumstantial evidence of race or national origin based hostility is sufficient to establish a hostile work environment claim -- "direct evidence of explicit racial harassment" is not necessary. *Rivera*, 743 F. 3d at 23 (vacating grant of summary judgment on hostile work environment claim finding that plaintiff provided sufficient evidence of national origin-based harassment). *See also, Raniola v. Bratton*, 243 F. 3d 610, 621-22 (2nd Cir. 2001) (recognizing that "prior derogatory comments by a co-worker may permit an inference that further abusive treatment by the same person was motivated by same [race or national origin-bias] manifested in the earlier comments."). As

demonstrated herein in III, DOE defendants subjected Bacchus to race and national origin discrimination.

## V.

## DOE DEFENDANTS SUBJECTED BACCHUS TO RETALIATION

In order to establish a *prima facie* claim of retaliation under Title VII, a plaintiff must prove that she engaged in protected activity known by the employer, an adverse employment action, and a causal connection between the protected activity and the adverse action. *See Decinto v. Weschester County Medical Center,* 821 F.2d 111, 115 (2nd Cir. 1987). "Proof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." *Id.* "Causation generally is a question for the finder of fact." *Depace v. Flaherty,* 183 F. Supp. 2d 633, 638 (S.D.N.Y. 2002).

In this case, DOE defendants' argument that there is no causal connection between Bacchus' complaints of discrimination and adverse actions is misplaced because Bacchus can also establish causation through direct evidence of retaliation. The cases cited by defendants in support of their argument apply only to situations where the plaintiffs seek to prove causal connection only through evidence of temporal proximity between the adverse action and protected activity. *See, Slattery v. Reinsurance A. Corp.,* 248 F. 3d 87, 95 (2nd Cir. 2001). However, here, in addition to indirect proof of causal connection through timing of the adverse actions (*see* Bacchus Opp. Aff ¶¶8,10,12) and disparate treatment, Bacchus can also, establish retaliation by direct proof of retaliatory animus exhibited by Pepper through her comments and angry demeanor. *See, Abreu v. Suffolk County Police*

*Dept.,* 2007 U.S. Dist. 12695 *41-2 (E.D.N.Y. Feb. 23, 2007)("Verbal comments may constitute direct evidence of retaliation when made by a decision-maker in the adverse employment action, and where there is a close nexus between the comments and the action.")(citing, *Rose v. N.Y. City Bd. of Educ.,* 257 F.3d 156, 162 (2nd Cir. 2001)). Shortly after Bacchus filed her complaints of discrimination with DOE's Office of Equal Opportunity and NYSDHR, respectively, Pepper angrily made threatening retaliatory comments to Bacchus. *See* Bacchus Tr. 85:16-86:1, 108:9-21; Bacchus Opp. Aff ¶¶10, 12).

As demonstrated herein in IV, Bacchus claim of retaliation is predicated on the same underlying incidents and events as her discrimination and hostile work environment claims, and DOE defendants have failed to show a legitimate non-retaliatory reason for their adverse actions. *See Ibraheem,* 2014 U.S. Dist. LEXIS *39.

## CONCLUSION

In view of all the foregoing, Bacchus respectfully requests that DOE defendants' motion for summary judgment be denied in its entirety.

Dated: August 22, 2014
      Brooklyn, New York

                     Respectfully submitted,

                     LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C.

By:_____

                     Vincent I. Eke-Nweke (VE 5282)
                     Attorney for Plaintiff MERLENE BACCHUS
                     498 Atlantic Avenue
                     Brooklyn, New York 11217
                     (718) 852-8300