UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERLENE BACCHUS,<br><br>Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK, RENÉE PEPPER and BOARD OF EDUCATION EMPLOYEES LOCAL 372, DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO,<br><br>Defendants. | Case No.: 12-cv- 1663 (PKC)(MDG)<br><br>**PLAINTIFF'S STATEMENT OF *DISPUTED* MATERIAL FACTS PURSUANT TO RULE 56.1** |

Plaintiff Merlene Bacchus ("plaintiff" or "Bacchus"), pursuant to Local Civil Rule 56.1 submits this Statement of Disputed Material Facts (Plaintiff's Disputed Statement") in opposition to the motion for summary judgment by Defendants New York City Department of Education ("DOE") and Renée Pepper ("Pepper") (together "DOE defendants").

Plaintiff's Disputed Statement is set forth in numbered paragraphs in response to the respective corresponding numbered paragraphs of DOE defendants' Statement Pursuant to Local Rule 56.1 ("Defendants' Statement").

1.      Plaintiff admits in part, the allegations contained in paragraph "1" of the Defendants' Statement and refers to the Second Amended Complaint. (Bacchus[1] Tr. Exh B ¶¶1-5)

---

[1]References to:

- **"Bacchus Tr. __ "** refers to the transcript of plaintiff's deposition and exhibits to (**"Bacchus Tr. Exh.__"**) taken in this action on May 21, 2013 and August 14, 2013, which are attached as **Exhibit "2"**to Eke-Nweke Decl. submitted herewith.

- **"Bacchus Opp. Aff. ¶ __ "** refers to the Affidavit of plaintiff submitted herewith in opposition to the defendants' motions for summary judgment and annexed as Exhibit 1 to Eke-Nweke Opp. Decl., submitted herewith.

- **"Eke-Nweke Opp. Decl. Exh__"** refers to any of the other documents attached as **"Exhibit _"** to Declaration of Vincent I. Eke-Nweke in opposition to Defendants motions.

- **"Bala Tr. __ "** refers to the transcript of Barbara Levy's deposition, excerpts of and exhibits to ("**Bala Tr. Exh.__**") taken in this action on June 20, 2013, which are attached as **Exhibit 7** to Eke-Nweke Opp. Decl. submitted herewith.

- **"Levy Tr. __ "** refers to the transcript of Barbara Levy's deposition, excerpts of and exhibits to ("**Levy Tr. Exh.__**") taken in this action on June 27, which are attached as **Exhibit 8** to Eke-Nweke Opp. Decl. submitted herewith.

- **Martin Decl. Exh__"** refers to the documents attached as **"Exhibit _"** to Declaration of Kathryne E. Martin, Esq., in support of DOE defendants motion for summary Judgment.

- **"Bacchus Aff. ¶ __"** refers to the Affidavit of plaintiff attached as **Exhibit 1** to Declaration of Vincent I. Eke-Nweke submitted herewith and in support of plaintiff motion for partial summary judgment against the Unions.

- **"Cabranes Tr. __ "** refers to the transcript of Myna Cabranes's deposition, excerpts of and exhibits to ("**Cabranes Tr. Exh.__**") taken in this action on June 12, 2013, which are attached as **Exhibit 4** to Eke-Nweke Decl. submitted herewith.

- **"Dickerson Tr. __ "** refers to the transcript of Craig Dickerson's deposition, excerpts of and exhibits to ("**Dickerson Tr. Exh. 1**") taken in this action on June 12, 2013, which are attached as **Exhibit 5(a)** to Eke-Nweke Decl. submitted herewith.

- **"Menduina Tr. __ "** refers to the transcript of Michelle Menduina's deposition, excerpts taken in this action on June 13, 2013, which are attached as **Exhibit 5(b)** to Eke-Nweke Decl. submitted herewith;

- **"McLaren Tr. __ "** refers to the transcript of Candace McLaren's deposition, excerpts of and exhibits to ("**McLaren Tr. Exh.__**") taken in this action on June 20, 2013, which are attached as **Exhibit 5(c)** to Eke-Nweke Decl. submitted herewith.

- **"Lopez Tr. __ "** refers to the transcript of Katarzyna Lopez's deposition, excerpts of and exhibits to ("**Lopez Tr. Exh.__**") taken in this action on June 20, 2013, which are attached as **Exhibit 5(d)** to Eke-Nweke Decl. submitted herewith.

- **"Roach Tr. __ "** refers to the transcript of Robin Roach's deposition, excerpts of and exhibits to ("**Roach Tr. Exh.__**") taken in this action on June 13, 2013, which are attached as **Exhibit 6** to Eke-Nweke Decl. submitted herewith.

- **"Pepper Tr. __ "** refers to the transcript of Renee Pepper's deposition, excerpts of and exhibits to ("**Pepper Tr. Exh.__**") taken in this action on June 14, 2013 and August 26, 2013, which are attached as **Exhibit 7** to Eke-Nweke Decl. submitted herewith.

2. Plaintiff admits the allegations contained in paragraph **"2"** of the Defendants' Statement that she began working at PS 295 as a School Aide in September 2007, disputes that she was "interviewed" by Principal Angela Thompson, deceased, and further states that she was hired by DOE in December 1994. (Bacchus Tr. 14:13-18; Bacchus Aff. ¶ 4)

3. Admitted.

4. Plaintiff admits the allegations contained in paragraph **"3"** of the Defendants' Statement that Thompson was black but states that Thompson was a non-West Indian.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Plaintiff disputes as unsupported, the allegations contained in paragraph **"10"** of the Defendants' Statement that plaintiff's work hours were reduced "as a result of budget cuts." Rather, plaintiff states that upon Katarzyna Lopez ("Lopez") lay-off, the work hours of plaintiff and the remaining School Aides were cut and given to Lopez who continued to work at PS 295 on part-time

---

- **"O'Connell Tr. __ "** refers to the transcript of Colleen O'Connell's deposition, excerpts of and exhibits to (**"O'Connell Tr. Exh.__"**) taken in this action on June 17 and September 3, 2013, which are attached as **Exhibit 8** to Eke-Nweke Decl. submitted herewith.

- **"Eke-Nweke Decl. Exh__"** refers to any of the other documents attached as **"Exhibit _"** to Declaration of Vincent I. Eke-Nweke submitted herewith.

basis in the guise of Substitute Aide, even though she had been laid-off. Plaintiff's work hours were cut in order to give such hours to Lopez not because of budget constraints. (Bacchus Tr. 42-43, 98-99; Lopez Tr. Exh. 4; Pepper Tr. 74-76 Exhs. 10 and 27 at D 000087 ¶2)

11.    Plaintiff concedes in part the allegations contained in paragraph **"11"** of the Defendants' Statement that after Lopez's lay-off, Lopez worked on a part time basis in the guise of Substitute School Aide at PS 295 even though she was not substituting for any School Aide, and further states that after Lopez was laid-off, she continued to work at PS 295 from November 16, 2009 through January 20, 2010. (Martin Decl. Exh. G; Lopez Tr. Exh. 4)

12.    Admitted.

13.    Admitted solely for the purposes of this motion.

14.    Admitted.

15.    Admitted.

16.    Admitted solely for the purposes of this motion.

17.    Plaintiff admits in part, the allegation contained in paragraph 17 of Defendants' Statement, that Thompson frequently stated she did not like West Indian women and that they could not speak English. Plaintiff further testified as follows:

a.    That Thompson regularly shouted at plaintiff and mocked her by stating to her "I can't understand a word you're saying, blah, blah blah. Answer the fricking phone. Excuse my French." (Bacchus Tr. 70:19-22);

b.    That Thompson, Pepper and Levy regularly mimicked plaintiff and laughed at her when she spoke, and imitated or attempted to speak how plaintiff spoke. (Bacchus Tr. 72:2-10); and

c.    That Thompson said she did not like West Indian women and that she had a problem with them. (Bacchus Tr. 222:1-8).

4

d.    In addition, on several occasions in the Spring and fall of 2010, Thompson repeatedly cut-off Bacchus while she spoke and made various remarks like: "Merlene, what are you saying? You sound like you're saying blah blah blah. Why can't you West Indian women learn to speak the English language properly? Learn to speak the English language." Thompson frequently corrected Bacchus' pronunciation of certain words, such as "schedule", "preference" or "advertisement", in front of staff members and visitors. (Bacchus Opp. Aff.¶¶ 15-17)

18.    Plaintiff admits the allegations contained in paragraph 18 of Defendants' Statement, but further states that no other School Aide was instructed to lift heavy boxes onto a flatbed and distribute same. (Bacchus Tr. 19:18-20, Exh. F; Lopez Tr. 63:24, 64:1-10)

19.    Plaintiff admits in part, the allegation contained in paragraph 19 of Defendants' Statement that the custodian lifted the heavy boxes for plaintiff on the date in question but further states that on several other occasions from early September 2009 through end of September 2009, Thompson and Pepper "forced" plaintiff to lift heavy boxes onto a flatbed cart and push the cart to various floors of the school building. (Bacchus Tr. 17: 14-25, 19:18-20, 36:9-13, 44:15-24, 48:19, Exh. F; Bacchus Opp. Aff. ¶5(a))

20.    Plaintiff disputes the allegation contained in paragraph 20 of Defendants' Statement except admit that after being forced to lift heavy boxes and push flatbed carts, plaintiff hurt her back, was diagnosed with lumbago and issued with "a doctor's note stating that she [could not] lift heavy objects. Thompson caused plaintiff undergo medical examination based upon the false allegation that plaintiff refused to lift two reams of paper. Plaintiff never refused to lift two reams of paper. (Bacchus Tr. 49:14-23, 50:1-23, 55:10-14).

21.    Admitted.

5

22.     Admitted.

23.     Plaintiff disputes the allegation contained in paragraph 23 of Defendants' Statement as irrelevant, immaterial and not comparable to the circumstances of plaintiff's medical examination because unlike Trina Mixon, plaintiff never refused to lift two reams of paper.(Bacchus Tr. 50:1-23, 55:10-14)

24.     Plaintiff disputes the allegation contained in paragraph 24 of Defendants' Statement as irrelevant and immaterial to the circumstances of this case because unlike Trina Mixon, plaintiff never refused to lift two reams of paper.(Bacchus Tr. 50:1-23, 55:10-14).

25.     Plaintiff disputes as misleading, the allegations contained in paragraph 25 of Defendants' Statement that she did not line-up the students but admits that Pepper shouted at plaintiff for no just cause. Plaintiff lined-up the children as she was supposed to but was not given any other instruction to line-up the children again. (Bacchus Tr. 52:11-18; Pepper Tr. Exh. 27 @000087 ¶3)

26.     Plaintiff disputes the allegations contained in paragraph 26 of Defendants' Statement that she "brought a 4th grade class from the auditorium to their classroom without instruction to do so from a supervisor." Barbara Levy (White female, then PS 295 Secretary/Office Manager) gave the instruction for every class in the auditorium to be taken to their respective classrooms for dismissal. (Bacchus Tr. 28-31; Pepper Tr. 57-67, Exhs. 4, 5 & 6)

6

27.     Plaintiff admits the allegation contained in paragraph 27 of Defendants' Statement that Pepper gave plaintiff a letter of instruction but disputes that the letter of instruction was justified. Plaintiff further states:

a.      Plaintiff is the only person who was given a Letter of Instruction even though other non-West Indian School Aides and Para-professionals also removed their respective classes from the auditorium. (Pepper Tr. 65:1-13; Bacchus Tr. 28-29)

b.      The Letter of Instruction was not a disciplinary letter. (Pepper Tr. 45:16-21)

28.     Plaintiff disputes the allegations contained in paragraph 28 of Defendants' Statement that Mixon received a Letter of Instruction in connection with the same May 19, 2009 incident. The alleged Letter of Instruction to Mixon appears to be an "after thought" given the lack of explanation as to why it was not signed by Pepper or why Mixon allegedly received it on June 10, 2009, when plaintiff received hers on June 2, 2009. (Pepper Tr. 60-66, Exhs. 5 and 6)

29.     Plaintiff disputes as a fabrication procured by O'Connell, Pepper and/or PS 295 Administration, the allegations contained in paragraph 29 of Defendants' Statement that plaintiff grabbed a fourth grade student, MP by her shoulders. (Cabranes Tr. Exh. 2; Roach Tr. Exh. 8; Bacchus. Aff. ¶¶ 43, 62(a-c); O'Connell Tr. 90-104, Exh. 8; Pepper Tr. Exhs. 25 and 65) Plaintiff further states as follows with respect to the allegations contained in paragraph 29 of Defendants' Statement:

a.      That the DOE Office of Special Investigations ("OSI") Complaint Reporting Form #09-4913 (Bates-stamped Union 189) completed by O'Connell indicates that O'Connell reported said allegation to OSI on December 7, 2009 at 10:53 a.m. stating the incident took place on **12/22/09** at 12:00 p.m., even though O'Connell never

7

asked MP the date nor time of the alleged incident nor what the class was doing at the time. (Roach Tr. Exh. 8; O'Connell Tr. 92:14-21, 97:10-20, Exh. 8)

b.      That although MP's alleged statement states the alleged incident happened on "the Monday before Thanksgiving" (November 23), MP never reported the alleged incident until **December 4, 2009** when O'Connell allegedly pulled MP from her classroom. (Roach Tr. Exh. 8; O'Connell Tr. Exh 1; Pepper Tr. Exhs. 25 and 65)

c.      That although MP's alleged statement states the alleged incident "happened outside," Thompson, Pepper and/or O'Connell could not provide an eyewitness to support the allegation. (O'Connell Tr. 91:19-21, 100:24-101:3-11; Pepper Tr. Exhs. 25 and 65)

d.      That MP's alleged statement (Union 188) appears to have been written by at least two different persons as the most important sentences of the statement (the last two sentences which attempt to state date and place of the alleged incident) were written in a handwriting that appears visibly different from the handwriting used to write upper parts of the statement. (Pepper Tr. Exhs. 25 and 65)

e.      That after the initial depositions of Pepper and O'Connell, another version of MP's alleged statement was produced (bates # D 001250) but the last sentence ("This happened outside **and it was starting to rain.**") in the earlier statement (Union 188) was missing from the statement previously withheld from discovery. (O'Connell Tr. 211-212; Pepper Tr. 289, Exhs. 25 and 65)

f.      **Contrary to MP's alleged statement, it did not rain at PS 295 on November 23, 2009, at any time during school hours.** (Eke-Nweke Opp. Decl. Exh. 10)

g.  That O'Connell's summary of the alleged incident to OSI ("Student reported to her Guidance Counselor that while lining up in the yard, Ms. Bacchus forcibly grabbed her by the shoulders causing the student pain") as contained in the OSI Complaint Reporting Form (O'Connell Tr. 99–100, Exh. 8) is inconsistent with and contradicts MP's alleged statement and the disciplinary letter issued to Bacchus. (Roach Tr. Exhs. 7 & 8; Martin Decl. Exh. T; Bacchus Tr. Exh. L)

h.  That the School Yard at PS 295 was equipped with surveillance cameras. However, Thompson failed to give plaintiff access to the surveillance video footage for the date and time in question nor rely on such video in her purported investigation nor obtain any witness statement from any of the other School Aides who would have been present at the School Yard on the date and time in question. (Bacchus Opp. Aff. ¶5). Nor was the allegation reported to MP's parents. (O'Connell Tr. 92:5-7).

i.  That the Administration's Report of Investigation to OSI (Pepper Exhibit 24) indicates that MP's alleged allegation was the **sixth allegation** of corporal punishment or verbal abuse brought against plaintiff in the first week of December 2009. (McLaren Tr. 42:25-44:21; Pepper Tr. Exh. 12)

30.  Plaintiff disputes the allegation contained in paragraph 30 of the Defendants' Statement that the alleged allegation by MP was properly substantiated. But admits that plaintiff and Wambser met with Thompson and other Administration staff on December 9, 2009 to discuss MP's alleged allegation and five (5) other false allegations of corporal punishment or verbal abuse. (Plaintiff's Disputed Statement ¶ 29(a)-(i); Bacchus Aff. ¶ 62(a-c))

9

31.     With respect to the allegations contained in paragraph 31 of Defendants' Statement, plaintiff admits that she received the letter to file dated February 8, 2009 (which was the **sixth** disciplinary letter to file issued to her), But Disputes that the allegations were properly substantiated and further Disputes the suggestion that Unions had a Personal Service Unit. As plaintiff testified at her deposition, "there is no [Personal Service U]nit in the union for [school] aides, for proper business training ...." Bacchus Tr. 69:3-6. (Bacchus Opp. Aff. ¶ 18; Plaintiff's Disputed Statement ¶ 29(a)-(i); Martin Decl. Exh. T)

32.     Plaintiff disputes as a fabrication procured by O'Connell, Pepper and/or PS 295 Administration, the allegations contained in paragraph 32 of Defendants' Statement that on November 25, 2009, plaintiff grabbed two fourth grade students, MS and PH by their collars and yelled "you are in trouble." (Bacchus Aff. ¶¶ 43, 58(a)-(d), 59 (a)-(d); O'Connell Tr. 59-63, 86-89, Exhs. 2, 3 and7; Pepper Tr. Exh. 16; Cabranes Tr. Exh 2). Also:

    a.    Although the Administration claims both incidents happened at the same time on November 25, 2009, they reported to OSI that one incident happened at 11:30 a.m. and the other 12:00 noon. Also, the incidents were reported to OSI on separate dates: December 3, 2009 at 10:02 a.m and December 4, 2009 at 2:00 p.m, respectively. (O'Connell Tr. 88:14-89:1-8, Exhs. 3 and 7)

33.     Plaintiff disputes as a fabrication procured by O'Connell, Pepper and/or PS 295 Administration, the allegations contained in paragraph 33 of Defendants' Statement that on November 25, 2009, plaintiff grabbed MA, a fourth grade student by the wrist. The material parts of the alleged statement by MA were supplied by O'Connell. (Cabranes Tr. Exh 2; Bacchus Aff. ¶¶ 43, 57(b), 60(a-h); O'Connell Tr. 64:7-74:23, Exhs 4 and 5, Roach Tr. Exh. 9; Pepper Tr. 21; Bacchus Tr. 118-122, Exh. T)

34.     Plaintiff disputes the allegations contained in paragraph 34 of Defendants' Statement, States that PS 295 Administration through O'Connell falsely procured the alleged statements by manipulation of KZ and TW, and that O'Connell admittedly wrote or supplied the following significant information in MA's alleged statement which information was not contained in the Spanish or translated version of MA's alleged statement "11/25/09", "Bacchus" "wrist" "gym." (Cabranes Tr. Exh. 2; Roach Tr. Exh. 9, O'Connell Tr. 64-74, Bacchus Aff. ¶¶ 43, 60 (a-h); Bacchus Tr. 118-122 Exh. T). Plaintiff further states as follows with respect to the statements allegedly provided by KZ and TW as alleged in paragraph 34 of Defendants' Statement:

a.     That it is visibly obvious that TW's alleged statement was written in at least two different handwritings. Specifically, the last sentence, "[t]his happened Wednesday before Thanksgiving and it was in the gym" was written in a different handwriting from the rest of the statement and has the same sentence structure or construct as the last two sentences of MP's alleged statement referred to in paragraph 29 (d) above, "[t]his happened the Monday befor Thanksgiving. This happened outside and it was starting to rain." (Pepper Tr. Exhs. 21, 25 and 65)

b.     That similar to TW's alleged statement, the statement attributed to KZ was also written in multiple handwritings. Specifically, the first fourteen (14) words of KZ's alleged statement, "[o]n Wednesday The day before thanksgiving Ms. Backes said we weren't going to play outside", appears to be in different handwriting from the rest of the statement and appears to have the same sentence structure or construct as set forth above in 34(a). (Bacchus Tr. 120:13-25, Exh. T)

11

c.   That neither of the alleged statements by KZ, TW or MA states that plaintiff grabbed MA "by the wrist with force" as was reported to OSI on December 4, 2009. (O'Connell Tr. 75, Exh. 5; Pepper Tr. Exhs. 21, 25 and 65; Roach Tr. Exh. 9)

d.   That the alleged incidents involving MS (OSI #09-4881) and MA (OSI #09-4887) were reported to OSI as having occurred on the same date and time – November 25, 2009 at 12:00 p.m. (O'Connell Tr. 75-76, Exhs. 3 and 5)

35.   Plaintiff disputes as a fabrication procured by O'Connell, Pepper and/or PS 295 Administration the allegations contained in paragraph 35 of the Defendants' Statement. (Cabranes Tr. Exh. 2; Bacchus Aff. ¶¶ 43, 57 (a)-(e); Pepper Tr. 87-89, 281, Exhs. 14, 15, 19 and 55; O'Connell Tr. 34, 42-59, 181-192) Plaintiff further states that at O'Connell's June 17, 2013 deposition she testified relative to her letter or statement dated December 8, 2009 (O'Connell Tr. 34:13-22, Exh. 1) that ID's grandmother left a message on her voice mail stating that ID had come home stating he was called a "jerk". However, following the belated production of a copy of an apparent telephone message which bore the following handwritten note admittedly written by O'Connell: "where is [ID's grandmother's] statement?", O'Connell changed her testimony back and forth as follows at her September 3, 2013 deposition:

Q   Did [ID's grandmother] tell you directly that [ID] reported that Ms. Bacchus yelled at him?

**A.   No. She reported that to Ms. Thompson, Ms. Thompson told me.**

Q.   Did you ever get a telephone message from ID's grandmother wherein she indicated to you that ID came off the bus and was crying and said that Ms. Bacchus yelled at him?

**A.   I don't remember if it was to me.**

Q.   What do you mean you don't remember if it was to you?

**A.   I know she made a call to the school, but I don't know if it was to me or not. I think it was to Ms. Thompson.**

Q. Who told you that the call was to Ms. Thompson?

**A. Ms. Thompson did.**

Q. Are you saying that ID's grandmother did not leave you a voicemail message wherein she indicated that Ms. Bacchus yelled at ID and their class for no reason?

**A. I don't recall. I don't know if she left me a message. I just don't remember?**

(O'Connell Tr. 184:12-185:2-12)

36. Plaintiff admits as alleged in paragraph 36 of the Defendants' Statement that plaintiff and Wambser met with Thompson on December 9, 2009, to discuss alleged allegations by ID, M.S., PH, MA and MP. But states that the allegations were falsely procured and that the students in question were manipulated to make the allegations. Plaintiff further states that the alleged letter from Thompson (Martin Decl. Exh. DD) improperly refers to OSI charge # 09-4912 which was not related to the allegations involving ID, M.S., P.H. or MA. However, the letter fails to make any reference to OSI Charge #09-4824 -- PH's alleged allegation. (Cabranes Tr. Exhs 1-2, Roach tr. Exh. 5)

37. Plaintiff disputes the allegations contained in paragraph 37 of Defendants' Statement and further states that the allegations in question were falsely substantiated. (Cabranes Tr. Exh. 2; Bacchus Aff. ¶¶ 43, 57-62)

38. With respect to the allegations contained in paragraph 38 of Defendants' Statement, plaintiff admits that the letter in question so recommended, But Disputes as misleading the suggestion that the Unions had a Personal Service Unit. As plaintiff testified at her deposition, "there is no [Personal Service U]nit in the union for [school] aides, for proper business training ...." Bacchus Tr. 69:3-6. (Bacchus Opp. Aff. ¶ 18)

39.     Plaintiff admits in part, the allegation contained in paragraph 39 of the Defendants' Statement and further states that the allegation is misleading because, although one letter was issued for the four incidents alleged, in reality each of the alleged four incidents was deemed a separate incident for which a "letter to file" was separately issued. In fact, Thompson was recorded at the January 15, 2010 Disciplinary Conference stating that she "submitted and reported" each incident as separate incident. Eke-Nweke Decl. Exh. 9(a) p. 16:18-19. (Pepper Tr. Exhs. 12, 17, 18, 20, 22 each at p. 4; McLaren Tr. Exhs. 7 and 8).

40.     Plaintiff disputes as a fabrication procured by O'Connell, Pepper and/or PS 295 Administration, the allegations contained in paragraph 40 of the Defendants' Statement that plaintiff called JT, a fourth grade student "stupid." (Bacchus Tr. 87-89; Roach Tr. Exh. 6; Bacchus Aff. ¶¶ 43, 60(a)-(c); O'Connell Tr. 77-85, Exh. 6; Pepper Tr. Exh. 23)

41.     Plaintiff disputes as a fabrication procured by O'Connell, Pepper, Thompson and/or PS 295 Administration, the allegations contained in paragraph 41 of the Defendants' Statement that JT's mother reported the allegation in question to Thompson on December 3, 2009. JT's mother did not speak English and could not have communicated "stupid" to Thompson. (Bacchus Tr. 87-89; Bacchus Aff. ¶¶ 43, 60(a)-(c); O'Connell Tr. 77-85, Exh. 6; Pepper Tr. Exh. 23)

42.     With respect to the allegations contained in paragraph 42 of Defendants' Statement, plaintiff Disputes that said allegation was properly substantiated, admits that the letter in question so recommended But further Disputes as misleading the suggestion that the Unions had a Personal Service Unit. As plaintiff testified at her deposition, "there is no [Personal Service U]nit in the union for [school] aides, for proper business training ...." Bacchus Tr. 69:3-6. (Bacchus Opp. Aff. ¶ 18)

43.     Admitted.

44.     Plaintiff disputes as a fabrication procured by O'Connell, Thompson, Pepper and/or PS 295 Administration, the allegations contained in paragraph 44 of the Defendants' Statement that plaintiff pulled ES' hair.  (Bacchus. Aff. ¶¶ 45-54; Roach Tr. Exh 2-4; Cabranes Tr. Exh. 4; O'Connell Tr. 106-124, Exh. 9; Bacchus Tr. 60:2-12).  Plaintiff further states as follows regarding the allegations contained in paragraph 44 of Defendants' Statement:

a.     O'Connell testified that she and Thompson viewed the surveillance video footage of the alleged hair pulling incident but did not disclose the existence of such video footage to either plaintiff nor Wambser nor the arbitrator who presided over the arbitration in the matter. (O'Connell Tr. 107-117)

b.     Thompson was recorded at the January 15, 2010 Disciplinary Conference when she stated that she specifically asked ES where the lineup was and that ES said beyond the double doors because plaintiff was taking the students upstairs. (Eke-Nweke Decl. Exh. 9(a) pg. 8:2-5)

c      However, contrary to Thompson's recorded statement that the lineup was beyond the double doors, ES' alleged statement as well as alleged witness statements by RR and BB each states that the lineup was in the lunch room. (Roach Tr. Exh. 2-4).

d.     The Opinion and Award regarding the arbitration of the alleged incident states at page 3 (Union 160), "Principal testified that she did not interview other lunchroom staff nor security officers because [they] were not in the hall but remained in the lunch room and did not witness the incident." Cabranes Tr. Exh. 13 at p. 3

e.     Also, contrary to ES' statement that "[a]s [she] was walking forward, [she] felt a really sharp tug from the back of [her] head." RR's alleged statement states in part, "Tuesday Dec 1, 09 I saw Mrs. Bacchus pulling [ES'] hair when [ES] was going to the back of the line in the lunch room at lunch time ...." (Roach Tr. Exh. 2-3)

f.     Further, BB's alleged statement that "during lunch [she] was in the back of the line and [ES] was walking to the back of the line too. Then Ms. Bacchus pulled her by the neck area and [ES] jerked back" also contradicts ES' alleged statement that she was walking forward when she felt a sharp tug from the back of the head. (Roach Tr. 2-4)

g.     Thompson's letter to plaintiff dated February 22, 2010 (Cabranes Exh. 3) states in part, that: ES reported the alleged hair pulling incident to her teacher, Ms. Chiauzzi on December 10, 2009. However, at the January 15, 2010 Disciplinary Conference -- in order to avoid having to explain to Wambser how the allegation was reported to OSI on **December 10, 2009 at 2:53 p.m., if indeed ES first reported the allegation on December 10, at 3:00 p.m.** -- O'Connell "deftly" stated that the allegation was reported to Ms. Chiauzzi on **December 9**[2] **-- not 10 -- at approximately 3:00 p.m.** (Eke-Nweke Decl. Exh. 9(a) pgs. 10:20-25,11:6-7; Martins Decl. Exh JJ). Also, OSI report confirmation form #09-5027 for the allegation (O'Connell Tr. Exh 9), indicates the allegation was reported to the OSI on **December 10, 2009 at 2:53 p.m.**

h.     However, at the suspension arbitration hearing held in connection with the hair pulling allegation, O'Connell and Thompson also testified that ES reported the incident to her teacher on **December 10, 2009.** (Cabranes Tr. Exh. 13 at p. 2).

---

[2] Unbeknown to O'Connell, the conference was being recorded.

45.     Admitted. However, plaintiff states that ES was manipulated by Ms. Chiauzzi, O'Connell, Thompson, Pepper and/or other PS 295 Administration staff to fabricate and report the alleged incident to Ms. Chiauzzi on **December 10, 2009 at 3:00 p.m.**, after the alleged incident had already been reported to OSI. (Eke-Nweke Decl. Exh. 9(a) pgs. 10:20-25, 11:6-7; Plaintiff's Disputed Statement ¶ 44(a)-(h)).

46.     Admitted. However, plaintiff states that BB and RR were both manipulated by Ms. Chiauzzi, O'Connell, Thompson, Pepper and/or other PS 295 Administration staff to fabricate and provide the alleged witness statements. (Eke-Nweke Decl. Exh. 9(a) pgs. 10:20-25, 11:6-7; Plaintiff's Disputed Statement ¶ 44(a)-(h)).

47.     Plaintiff admits the allegations contained in paragraph 47 of the Defendants' Statement that after the January 15, 2010 meeting, plaintiff was suspended without pay for two weeks but **states** that Thompson falsely substantiated ES' and the other six allegations. At said January 15 meeting, when Thompson stated that so far plaintiff had been **charged with a total seven (7) allegations** of corporal punishment or verbal abuse of children, plaintiff then inquired as follows whether the parents of the children had knowledge of the allegations:

Bacchus:     **Do these parents have any knowledge of all allegations made against me, the kids parents?**
Wambser:     Parents are not required unless they are the ones reporting.

Thompson:    Reporting.
Wambser:     Nor should you. I will caution you again Ms. Bacchus, we have signed the paperwork that we are taking copies, okay of all of this and we will need to sign a new one for this one that we will have no conversation whatsoever with any of these.
             What you need to know Ms. Bacchus, okay, is that if any severe disciplinary comes from this and you, okay end up where you're in an arbitration, these children have to come forth and testify.

| Bacchus: | **And their parents would be subpoenaed to come to court.** |
|---|---|
| Wambser: | Parents have nothing to do with this. |
| Bacchus: | **Okay but they're minors.** |
| Wambser: | The children still get subpoenaed. The children still have to come forth and testify, okay? |
| Bacchus: | Okay. |
| Wambser: | I caution you and advise you clearly, do not have any conversation with any parent of any student in this -- .... |
| **Thompson:** | **Please, also remind her about conversations about these issues and people that work in the building[3].** |
| Wambser: | You're being very -- you're putting yourself in a lot, a lot of harms way with anyone in this building about what goes on –. |

(Eke-Nweke Decl. Exh. 9(a) pp. 16-18:19)

48.   Admitted.

49.   Plaintiff admits as contained in paragraph 49 of the Defendants' Statement that ES testified at the arbitration hearing, Disputes that ES was truthful or credible at said hearing, and as stated in the arbitration Opinion and Award, the reasons for improperly finding ES to be truthful or credible were because the arbitrator also found as follows:

a.   "[T]hat the general denial of [plaintiff] stating that she did not do this to [ES]... without more [was] not [enough to] negate the testimony of ES nor the other credible evidence presented at the hearing by the DOE".   (Martin Decl. Exh. LL at p. 7; Cabranes Tr. Exh. 13 at p. 5).

---

[3]Thompson made sure that witness statements were not obtained from plaintiff's co-workers, SSAs and other adults in all her investigations involving plaintiff. She relied solely upon alleged victim/witness statements of the children the Administration was able to manipulate. However, at the arbitration hearing on the hair pulling allegation, "[Thompson] testified that she did not interview other lunchroom staff nor security officers because [they] were not in the hall but remained in the lunch room and did not witness the incident." Opinion and Award (Union 160), Cabranes Tr. Exh. 13 at p. 3.

b. That "[t]he general denial by [plaintiff] was not persuasive enough without more to outweigh the testimony of [ES] and the credible evidence presented by Counsel for the DOE that an act of corporal punishment had in fact been committed." . (Martin Decl. Exh. LL at p. 7; Cabranes Tr. Exh. 13 at p. 5).

c. That "the general denial of [plaintiff] in this case, and all others, without supporting her position other than to say 'I didn't do it' is not helpful to [plaintiff] given the student statements and the testimony of [ES]." (Martin Decl. Exh. LL at p. 7; Cabranes Tr. Exh. 13 at p. 6)

d. That "the testimony of the Principal, the Guidance Counselor and particularly [ES] along with written statements of the students [] in [the arbitrator's] mind outweighed the testimony and general denial of [plaintiff]....". (Martin Decl. Exh. LL at p. 7; Cabranes Tr. Exh. 13 at p. 7).

50. Plaintiff disputes as misleading the allegations contained in paragraph 50 of Defendants' Statement and states that the arbitrator did not have the opportunity to review the relevant surveillance video footage nor was it disclosed to the arbitrator that the alleged incident was captured by the surveillance cameras, nor did the arbitrator observe BB, RR or the parents of all involved children testify. (O'Connell Tr. 107-117)

Furthermore, Thompson misled the arbitrator by her testimony "that she did not interview other lunchroom staff nor security officers because [they] were not in the hall but remained in the lunch room and did not witness the incident." When in actual fact, Thompson and Wambser forbade plaintiff from discussing the allegations with any of her co-workers (Cabranes Tr. Exh. 13 at p. 3; (Eke-Nweke Decl. Exh. 9(a) p. 18:12-19)

51.     Plaintiff disputes as misleading and out of context the allegations contained in paragraph 51 of Defendants' Statement. The arbitrator stated that "the testimony of the Principal, the Guidance Counselor and particularly [ES] along with written statements of the students [] in [the arbitrator's] mind outweighed the testimony and general denial of [plaintiff]....". (Martin Decl. Exh. LL at p. 7; Cabranes Tr. Exh. 13 at p. 7)

52.     Admitted but states that only one DOE appointed panelist denied the grievance. DC 37 grievance panelist dissented. (Martin Decl. Exh. LL at p. 8)

53.     Admitted. However, plaintiff disputes the accuracy of the track changes or any alterations made by the DOE defendants to the transcript or CD. (Eke-Nweke Decl. Exh. 9(a)).

54.     Plaintiff disputes the allegations referred to in paragraph 54 of Defendants' Statement, as a mis-characterization of the contents of plaintiff's January 28, 2010, letter to Pepper and refers to a copy of the aforesaid letter for a correct recitation of its contents. (Pepper Tr. Exh. 30; Martin Decl. Exh. OO)

55.     Plaintiff disputes the allegations contained in paragraph 55 of the Defendants' Statement that she said "wipe my butt." ( Bacchus Tr. 82:2-16, 103:12-22; Pepper Tr. 118-137, Exhs.28-31 at pp. D000334-35 and D 000183)

56.     Plaintiff disputes the allegations contained in paragraph 56 of the Defendants' Statement that she said "Are you going to wipe my butt too"? And further Disputes that O'Connell was a witness to the alleged incident. Pepper's alleged statement of the incident dated January 6, 2010 does not even state that O'Connell witnessed the incident or that she was present. ( Bala Tr. 13:22-14:2-23, 36:4-16; Bacchus Tr. 82:2-16, 103:12-22; Pepper Tr. Exhs. 28, 30 and 31 at pp. D000334-35 and D 000183)

57.     Admitted.

58.     Plaintiff admits the allegation contained in paragraph 58 of Defendants' Statement that Wambser made such comment to plaintiff but states that Wambser breached the duty of fair representation, loyalty and utmost good faith the Unions owed to plaintiff, that Wambser repeatedly sided with the Administration at the expense of plaintiff's position, and undermined plaintiff's defense. (Eke-Nweke Decl. Exhs. 9(a) pp. 16-17, 28-29, 32:18-23, 36-37, 40, 43, 45;; 9(b) pp. 7:25-9:25, 11:12-20, 28:12-25, 29:15-25, 32, 38-39)

59.     Plaintiff admits the allegation contained in paragraph 59 of defendants' Statement that Wambser made such comment but states that Wambser breached the duty of fair representation, loyalty and utmost good faith the Unions owed to plaintiff, that Wambser repeatedly antagonized plaintiff's position and undermined plaintiff's defense. (Eke-Nweke Decl. Exhs. 9(a) pp. 16-17, 28-29, 32:18-23, 36-37, 40, 43, 45; 9(b) pp. 7:25-9:25, 11:12-20, 28:12-25, 29:15-25, 32, 38-39)

60.     Plaintiff admits the allegation contained in paragraph 60 of Defendants' Statement that Wambser made such comment to plaintiff but states that Wambser breached the duty of fair representation, loyalty and utmost good faith the Unions owed to plaintiff, that Wambser repeatedly sided with the Administration at the expense of plaintiff's position, and undermined plaintiff's defense. (Eke-Nweke Decl. Exhs. 9(a) pp. 16-17, 28-29, 32:18-23, 36-37, 40, 43, 45; 9(b) pp. 7:25-9:25, 11:12-20, 28:12-25, 29:15-25, 32, 38-39)

61.     With respect to the allegations contained in paragraph 61 of Defendants' Statement, plaintiff Disputes as misleading, the suggestion that Unions had a Personal Service Unit. As plaintiff testified at her deposition, "there is no [Personal Service U]nit in the union for [school] aides, for proper business training ...." Bacchus Tr. 69:3-6. (Bacchus Opp. Aff. ¶ 18)

62.     With respect to the allegations contained in paragraph 62 of Defendants' Statement, plaintiff admits that she so testified but Disputes as misleading the suggestion that Unions had a Personal Service Unit.  As plaintiff testified at her deposition, "there is no [Personal Service U]nit in the union for [school] aides, for proper business training ...." Bacchus Tr. 69:3-6. (Bacchus Opp. Aff. ¶ 18)

63.     With respect to the allegations contained in paragraph 63 of Defendants' Statement, plaintiff admits that Wambser so stated but plaintiff states that her comments to Thompson: "Ms. Thompson, you're not there. I am in there. I know–", were justified not only because the comments were true but also because the comments were made when Thompson had just presented plaintiff with yet another (**seventh**) false or fabricated allegation of corporal punishment or verbal abuse of a child. (Eke-Nweke Decl. Exh. 9(a) p. 6:18-19)

Also, plaintiff immediately rejected Wambser's comment that she (plaintiff) was disrespectful to Thompson by stating to Wambser: "I didn't say nothing disrespectful."  Further, Wambser repeatedly sided with the Administration at the expense of plaintiff's position, and undermined plaintiff's defense or position in the presence of Administration staff. (Eke-Nweke Decl. Exhs. 9(a) p. 21:19-20; 9(b) pp. 7:25-9:25, 11:12-20, 28:12-25, 29:15-25, 32, 38-39)

64.     With respect to the allegations contained in paragraph 64 of Defendants' Statement, plaintiff admits that Pepper issued her with a disciplinary letter dated January 19, 2010, but Disputes that the letter was justified and also states that she submitted a rebuttal dated January 28, 2010 to Pepper's disciplinary letter.(Pepper Tr.118-137, Exh. 30)

65. With respect to the allegations contained in paragraph 65 of Defendants' Statement, plaintiff Admits that Pepper met with plaintiff and Wambser on April 15, 2010 in connection with alleged use of umbrella or handbag while supervising children, Disputes that Pepper properly determined that plaintiff's conduct was unprofessional and impeded her ability to perform her duties, Disputes that the warning letter issued to plaintiff was justified and further states as follows:

a. All other School Aides carried their handbags and sometimes opened their umbrellas while supervising children but were never written-up for such conduct. (Bacchus Tr. 91-93; Pepper 139-143 Exhs. 34,35; Bacchus Opp. Tr. 12(a))

b. At the April 15, 2010 conference, plaintiff stated that she "was not the only school aide that carries a pocketbook around" (Eke-Nweke Decl Exh. 9(b) 32:24-25), that "[o]ther aides have, their purses and [Pepper] says nothing to them." (Eke-Nweke Decl. Exh. 9(b) p. 37:6-7) and told Wambser to go to the school yard at that time and see other school aides with their pocketbooks. (Eke-Nweke Decl. P. 37:15-19)

c. That Thompson had previously discussed with plaintiff and resolved without any discipline, all questions regarding the alleged improper use of umbrella. (Pepper Tr. 144:2-10, Exh. 35)

66. Admitted.

67. Plaintiff admits the allegation contained in paragraph 67 of Defendants' Statement that Wambser made such statement at the April 15, 2010, meeting but states that Wambser: did not object to the fact that plaintiff was the only School Aide who was written-up for carrying a handbag or umbrella even though other School Aides did the same thing but were not written-up, breached the duty of fair representation, loyalty and utmost good faith the Unions owed to plaintiff, repeatedly

23

sided with the Administration at the expense of plaintiff's position, and undermined plaintiff's defense or position. (Eke-Nweke Decl. Exhs. 9(a) pp. 16-17, 28-29, 32:18-23, 36-37, 40, 43, 45; 9(b) pp. 3,7:25-10, 11:12-20, 23:2-25, 28:12-25, 29:15-25, 32, 38-39; Bacchus Tr. 91-93)

68. With respect to the allegations contained in paragraph 68 of Defendants' Statement, plaintiff Admits that during the same April 15, 2010 meeting they discussed an alleged incident reported by a fifth grade female student to plaintiff and an SSA, But Disputes that Pepper properly determined that plaintiff did not use good professional judgment in allegedly not reporting the incident immediately to Administration. (Bacchus Tr. 94-98, Exhs. O and P; Pepper Tr. 144-147 Exhs. 36 and 37) Plaintiff further states as follows:

    a.    At the meeting, Pepper, Wambser and plaintiff were in all agreement that plaintiff complied with the School policy or protocol in reporting the alleged incident to Pepper, (Eke-Nweke-Nweke Decl. Exh. 9(b) p. 4:11-20)

    b.    Wambser stated that the policy in question does not require that incidents be reported "immediately", and that plaintiff complied with the applicable policy. To which Pepper replied: that the policy "will be reworded for next year."(Eke-Nweke-Nweke Decl. Exh. 9(b) p. 6:2-25, 23:3-7; Bacchus Tr. 144-147 Exhs. P )

    c.    An SSA was present when the incident was allegedly reported to plaintiff. (Eke-Nweke Decl. Exh. 9(b) pp. 11:12-20, 21:15-16)

    d.    That the fifth grade student who reported the alleged incident was laughing, wasn't bleeding and declined to go to the nurse. (Bacchus Tr. 94:2-25) The student "wasn't crying. There was no blood. [Plaintiff and the SSA] looked at [the student]. She was playing with the boys, that's what it was." (Eke-Nweke-Nweke Decl. Exh. 9(b) p.

20:19-21; Bacchus Tr. 94-98)

e. In about 2009 a parent of a female student who used to wear a back brace for a medical condition relating to her spine came to the school and lodged a complaint with Pepper against Lopez for Lopez's alleged failure to properly supervise students during a lunch period. Specifically, the parent complained to Pepper that another student pulled her daughter on her back brace and that Lopez did not handle the incident properly. (Lopez Tr. 50-58)

f. Pepper did not counsel Lopez, write her up, discipline her nor reprimand her in any way even though Lopez never documented the incident in question and did not report the incident to school Administration. (Lopez Tr. 56:20-57:1-7)

g. In plaintiff's then fifteen years of experience as a School Aide, "whenever fights happen[ed] and anything concerning the children's safety, the school safety officers and the aides work together." (Eke-Nweke-Nweke Decl. Exh. 9(b) p. 17:10-17)

69. Plaintiff admits the allegation contained in paragraph 69 of Defendants' Statement that Wambser told plaintiff that she used "poor judgment by not reporting the incident immediately ..." but states that Wambser's conclusion was wrong given that the incident was not an emergency situation. Also, Wambser breached the duty of fair representation, loyalty and utmost good faith the Unions owed to plaintiff, repeatedly sided with the Administration at the expense of plaintiff's position, and undermined plaintiff's defense or position. (Plaintiff's Disputed Statement ¶¶ 60, 63 and 67)

70.     Plaintiff admits the allegation contained in paragraph 70 of Defendants' Statement that she was given the warning letter in question, But states on the basis of the facts set forth in above in paragraphs 64, 65 and 68, that the warning letter was unjustified and discriminatory. Plaintiff further states that the warning letter was discriminatory because:

a.      In about 2009 a parent of a female student who used to wear a back brace for a medical condition relating to her spine came to the school and lodged a complaint with Pepper against Lopez for Lopez's alleged failure to properly supervise students during a lunch period. Specifically, the parent complained to Pepper that another student pulled her daughter on her back brace and that Lopez did not handle the incident properly. (Lopez Tr. 50-58)

b.      Lopez never documented the incident and did report the incident to school Administration. However, Pepper did not counsel Lopez, write her up, discipline her nor reprimand her even after the parent's complaint. (Lopez Tr. 56:20-57:1-7)

c       The parent of another student came to PS 295 and lodged a complaint with O'Connell that Lopez was then subjecting her child to verbal abuse. The parent's complaint of verbal abuse was not documented nor investigated nor reported to OSI nor was Lopez written-up or counseled on account of the parent's complaint. (Lopez Tr. 50-58; O'Connell Tr. 15-17)

71.     Plaintiff disputes as misleading, the suggestion contained in paragraph 71 of Defendants' Statement that on February 2, 2011, the two sixth grade students went to Pepper's office on their own volition without any manipulation by Pepper. Admits that Pepper directed the students to write the letter and that the letter was written in the presence of Pepper and at Pepper's direction.

(Plaintiff's Statement [4] ¶ 19; Pepper Tr. Exhs. 40 and 45), and further states that Pepper also manipulated other sixth grade students to write the following letters dated **February 2, 2011,** which letters accused plaintiff of other misconduct that allegedly occurred at the lunchroom but such letters do not **state or suggest that plaintiff called AA "fat boy"**:

    a.    Pepper Tr. Exh. 43 (D 001386) – alleging among other things, that plaintiff pulled student by the arm and **spit on the face of another student for no reason**;

    b.    Pepper Tr. Exh. 44 (D 001390) – alleging among other things, that plaintiff has been disrespectful to classes 601 and 602 and that plaintiff stuck out her middle finger to tell students to sit down;

    c.    Pepper Tr. Exh. 56 (D 001385) – alleging among other things, that plaintiff came up to student and asked student to throw away her food.

72.    Plaintiff disputes as misleading, the suggestion contained in paragraph 72 of Defendants' Statement that the students known as J.M, KR and SP described in the respective letters (without any manipulation or instigation by Pepper), that plaintiff called AA "fat boy."

Plaintiff further states that the "fat boy" allegation as contained in the alleged letters by JM, KR and SP respectively, is bare and without any context, was written in Pepper's presence and at Pepper's direction, and was added at the very end of each of the letters in question. (Peppers Tr. 242:8-245, Exhs. 40, 45, 47; Plaintiff's Statement ¶¶19-20) In addition:

    a.    Pepper admittedly initialed and timed at 3:00 p.m. -- five minutes after school dismissal time -- the alleged statement by SP (Pepper Tr. Exh. 47– D 001384), and

[4]Reference to "Plaintiff's Statement ¶__ " refers to Plaintiff's Statement of Undisputed Material Facts submitted by plaintiff in support of her motion for partial summary judgment against the Unions.

submitted SP's name as a witness to the "fat boy" allegation she reported to the OSI on February 3, 2011, **under Confirmation # 11-0685** (Plaintiff's Disputed Statement ¶ 74(e)), However, Pepper did not provide a copy of SP's statement to plaintiff or Wambser at the February 16, 2011, Disciplinary Conference nor at any time during the course of the underlying grievance proceedings and did not disclose to plaintiff or Wambser that SP was a witness to the alleged incident until July 1, 2013, when SP's alleged statement was produced in this litigation -- after the initial depositions of Pepper and O'Connell. (Pepper Tr. Exh. 242-245, Exh. 47; Bacchus Aff. ¶¶ 22, 32-36; Plaintiff's Statement ¶27)

73. Plaintiff disputes as misleading, the allegations contained in paragraph 73 of Defendants' Statement and states that AA never reported any allegation against plaintiff until Pepper sought out A.A. at 2:50 p.m. -- five (5) minutes before dismissal time -- and manipulated AA to write the alleged statement that plaintiff called him "fat boy." (Plaintiff's Statement ¶¶21, 23; Pepper Tr. 186-188, 192).

74. Plaintiff disputes as false and misleading, the allegation contained in paragraph 74 of Defendants' Statement that Pepper informed Thompson of the "fat boy" allegation, Disputes the suggestion that Pepper obtained Thompson's authorization or consent prior to the time Pepper reported the allegation to OSI or began her alleged investigation of the allegation, and further states that the following facts establish that Pepper, not Thompson, was solely responsible for the procurement, report to OSI and alleged investigation of the "fat boy":

    a.    O'Connell testified she has no recollection that Thompson asked her to obtain any witness statement concerning the "fat boy" allegation and that she (O'Connell) does

not remember participating in obtaining any of the alleged witness statements or in the investigation of the "fat boy" allegation. (O'Connell Tr. 165:16-23, 167:13-16)

b.  However, O'Connell remembers that Pepper brought the "fat boy" allegation to O'Connell's attention and showed her JM's alleged letter. (O'Connell Tr. 134:2, 17-19, 135:5-15)

c.  Thompson died in 2012. Prior to her death, she was very sick with cancer and did not come to work at PS 295 in February 2011, due to her sickness. (Bala Tr. 7:12-22; Bacchus Aff.¶ 40; Bacchus Opp. Aff. ¶21)

d.  On February 3, 2011, at 1:58 p.m. Pepper, as complainant, reported the "fat boy" allegation to the OSI and OSI Report Confirmation # 11-0677 was assigned to the complaint and OSI acknowledged receipt of the complaint #11-0677 by email to Pepper dated February 3, 2011 at 1:58 p.m. (Eke-Nweke Opp. Decl. Exh. 9(a); Pepper Tr. 279, Exh 54 (D 000746)).

e.  On February 3, 2011, at 2:57 p.m. Pepper for the second time as complainant, reported the "fat boy" allegation to the OSI and OSI Report Confirmation # 11-0685 was assigned to the second complaint and OSI acknowledged receipt of the complaint #11-0685 by email to Pepper of February 3, 2011 at 4:00 p.m. (Eke-Nweke Opp. Decl. Exh. 9(b); Pepper Tr. 200-211, Exhs. 38 and 53; McLaren Tr. Exh.10)

f.  By letter dated February 10, 2011 from Pepper to plaintiff, Pepper scheduled an appointment to meet with plaintiff on February 16, 2011, concerning OSI complaint # 11-0677 – the first complaint to OSI that plaintiff called AA "fat boy." (Pepper Tr. 172:6-8, 173:16-22, Exh. 41)

g.  On February 16, 2011, Pepper held a Disciplinary Conference with the plaintiff and Wambser concerning the "fat boy" allegation and Pepper prepared or "put together at the meeting" a letter date March 11, 2011, entitled Report of Investigation Summary Letter (Roach Exh. 12) by which plaintiff was later notified about the termination of her employment with DOE. (Pepper Tr. 172:9-23; Roach Exh 12; Bacchus Tr. 105:22-106:1-17)

h.  Also, Pepper prepared and signed a document entitled Alleged Corporal Punishment And/Or Verbal Abuse Report of Investigation Bates numbered D 000070-D 000074. (Pepper Tr. 149:14-150:2-5, Exh. 39)

75. Plaintiff admits as alleged in paragraph 75 of Defendants' Statement that additional student statements were gathered regarding the "fat boy" allegation and that most of such statements were exculpatory and made no mention that plaintiff called AA "fat boy." (Plaintiff's Statement ¶¶ 24-29; Pepper Tr. 227-282, Exhs. 43, 44, 49, 51, 52, 56; O'Connell Tr. 143-5; Bacchus Aff. ¶¶ 22, 32-36) Plaintiff further states as follows with respect to such exculpatory statements:

a.  The DOE Defendants produced copies of such exculpatory statements for the first time in this litigation only on July 1, 2013 (after the initial depositions of Pepper and O'Connell in June 2013), But never provided copies of such statements to plaintiff or to Wambser at the February 16, 2011, disciplinary conference nor were the exculpatory statements produced or used for the underlying contract grievance proceedings. (Pepper Tr. 248-249; Bacchus Aff. ¶¶ 22, 32-36)

b.     That one of such exculpatory statements dated February 3, 2011, was submitted by CT, a sixth grade male student who was allegedly having a verbal altercation with AA when he was allegedly called AA "fat boy", and partly states, "all [Bacchus] said was set down and then she told A[A] to move but he didn't so she turned her head and didn't do nothing." (Pepper Tr. 248-251, Exh.49; O'Connell Tr. 155, 164-176).

c.     That another of the exculpatory statements by EA, another sixth grade male student, evidences that SSA Parker was present at the immediate vicinity of the place of occurrence of the verbal altercation between AA and CT and as such was a witness to the "fat boy" allegation. (Pepper Tr. 204, 260-261, Exh. 52; Bacchus Aff. ¶. 12)

76.     Plaintiff admits as alleged in paragraph 76 of Defendants' Statement that a conference regarding the "fat boy" allegation took place on February 16, 2011, and that during the conference plaintiff denied the allegation. It is further set forth that at the conference plaintiff wrote and submitted a handwritten statement dated February 16, 2011 and subsequently submitted another statement dated May 1, 2011 concerning allegations brought up at said conference. (Bacchus Aff. ¶¶32-34; Roach Tr. Exhs. 13 and 14)

77.     Plaintiff disputes the suggestion in paragraph 77 of Defendants' Statement that plaintiff's log book was reviewed in connection with the alleged investigation of the "fat boy" allegation. Rather, it is set forth that Pepper reviewed plaintiff's log book prior to the February 16, 2011, conference in order to punish plaintiff because JM -- the same JM Pepper manipulated to initiate the "fat boy" allegation -- made a complaint to Pepper (see alleged statement by JM dated February 8, 2011, Pepper Exh 42) that plaintiff telephoned JM's mother about JM's behavior. (Pepper Tr. Exh. 42; Bacchus Aff. ¶¶ 26-33)

78.     Plaintiff admits in part, the allegations contained in paragraph 78 of Defendants' Statement. But states that "incidents" as used in the Lunch Schedule Memorandum refers to serious incidents, such as an allegation of a fight or other incident of physical nature which was being investigated or would be investigated by the School Administration, the DOE or law enforcement agency. (Bacchus Aff. ¶¶26-30; Bacchus Tr. 103:23-104:1-25)

79.     Plaintiff admits in part, the allegations contained in paragraph 79 of Defendants' Statement, Disputes the suggestion that she was required to make an entry in the log book for February 2 and 4, 2011, and further states that "another student's parent" whose home was telephoned, was JM's mother. (Plaintiff's Disputed Statement ¶¶ 77-78)

80.     Plaintiff Disputes as alleged in paragraph 80 of Defendants' Statement that she failed to report the phone call to JM's mother as required by school policy. (Bacchus Tr. 103:23-104:1-25; Bacchus Aff. ¶¶26-30; Plaintiff's Disputed Statement ¶¶ 77-79 )

81.     Plaintiff Disputes the allegations contained in paragraph 81 of Defendants' Statement and further states that the "fat boy" allegation was falsely substantiated by Pepper -- not by Thompson -- as Thompson had been diagnosed with terminal cancer, was regularly out sick and did not participate in the procurement and investigation of the "fat boy" allegation. (Plaintiff's Disputed Statement ¶¶ 71-80; Plaintiff's Statement ¶¶14-32)

82.     Plaintiff Disputes as argument, the allegations contained in paragraph 82 of Defendants' Statement. (Plaintiff's Disputed Statement ¶¶ 71-80; Plaintiff's Statement ¶¶14-32)

83.     Admitted.

84.     Admitted.

85.     Plaintiff admits as alleged in paragraph 85 of Defendants' Statement that plaintiff made a complaint of discrimination on December 16, 2009, with the DOE's Office of Equal Opportunity ("OEO") and also states that on December 14, 2009, plaintiff made a verbal complaint of discrimination to Superintendent Lennon Maurray, then Superintendent of DOE's School District 29 which encompasses PS 295. (Bacchus Opp. Aff. ¶¶ 6-8; Bacchus Tr. 79:11-81:1-19, 85:8-25)

86.     Admitted and refers to the OEO complaint for a full recitation of its allegations.

87.     Admitted and refers to the OEO complaint for a full recitation of its allegations.

88.     Admitted and refers to the OEO complaint for a full recitation of its allegations.

89.     Plaintiff Disputes the allegations contained in paragraph 89 of Defendants' Statement and further states that she was the only School Aide "forced" to do heavy lifting and move teachers belongings. (Bacchus Tr. 77:13-78:1-5)

90.     Plaintiff admits the allegations contained in paragraph 90 of Defendants' Statement and states that the first paragraph of plaintiff's Rebuttal 1 (Bates stamped Union 170) dated February 25 [2010] states as follows in relevant parts:

> "Ms. Thompson, you have been heard saying that you have a problem with West Indian women. And as everyone knows I am from the West Indies. Ms. Pepper, Ms. Levy and Ms. O'Connell are motivated by hatred and racism."

(Cabranes Tr. Exh 2 Union 170)

Plaintiff further states that the last paragraph of plaintiff's Rebuttal 4 (Bates-stamped Union 235) dated February 24 [2010] states as follows in relevant parts:

> You were overheard saying that you have a problem with West Indian women and these allegations are an integral part of your plot to discredit my reputation so you can have just cause to suspend me.

Cabranes Tr. Exh. 4 (Union 235)

91. Admitted.

92. Admitted.

93. Plaintiff admits the allegations contained in paragraph 93 of Defendants' Statement and further refers to the complaint of retaliation in question for a complete recitation of the claims asserted therein.

94. Admitted.

Dated:     New York, New York
              August 22, 2014

Respectfully submitted,

LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C.

By:_____

Vincent I. Eke-Nweke (VE 5282)
Attorney for Plaintiff MERLENE BACCHUS
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300