UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MERLENE BACCHUS,

        Plaintiff,

-against-

THE CITY OF NEW YORK, RENÉE PEPPER and BOARD OF EDUCATION EMPLOYEES LOCAL 372, DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO,

        Defendants.

Case No.: 12-cv- 1663 (PKC)(MDG)

**_SERVED ON APRIL 25, 2014_**

---

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT AS AGAINST THE UNIONS

---

Vincent I. Eke-Nweke, Esq.
Law Office of Vincent I. Eke-Nweke, P.C.
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300

## **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS..................................................................................................i

PRELIMINARY STATEMENT......................................................................................1

STATEMENT OF FACTS...............................................................................................2

ARGUMENT....................................................................................................................6

APPLICABLE LEGAL STANDARD..............................................................................6

I. THE UNIONS BREACHED THE DFR THEY OWED TO BACCHUS.............7

    A. Public Sector Unions Are Bound By The DFR..........................................8

    B. Standard For Establishing Breach of DFR.................................................8

        1. Unions Bad Faith Is Not A Necessary Element Of A DFR Claim..................................................................................9

        2. The Unions' Failure To Investigate Whether Bacchus Called AA "Fat Boy" Was Arbitrary And The Decision Not To Arbitrate Based Upon Pepper's Investigation Constitute Evidence Of Irrational Decision........................................................9

    C. DOE Breached The CBA Because Bacchus' Discharge Was Not Based On Good And Sufficient Reason......................................12

CONCLUSION................................................................................................................12

Plaintiff Marlene Bacchus ("Plaintiff" or "Bacchus") respectfully submits this memorandum of law in support of her motion for an Order, pursuant to Fed. R. Civ. P. 56 granting partial summary judgment in her favor of as against defendants Board of Education Employees Local 372, District Council 37 and American Federation of State, County and Municipal Employees, AFL-CIO ("Unions")

## PRELIMINARY STATEMENT

This action was commenced on April 4, 2012, against Defendants the City of New York[1] (the "City"), Renée Pepper ("Pepper") (together DOE defendants") and the Unions. The Second Amended Complaint alleges discrimination, hostile work environment and retaliation claims pursuant to the Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law, Executive Law § 269 *et seq.* ("Human Rights Law") and the New York City Civil Rights Law ("City Law") against the DOE defendants as well as claims against the DOE and the Unions pursuant to the New York Civil Service Law Article 14 - Public Employees' Fair Employment Act, § 209-a (2) (c) ("Taylor Law") and the New York City Collective Bargaining Law (Administrative Code of the City of New York) § 12-306 (b) (1) and (3) ("NYCCBL") for breach of Collective Bargaining Agreement ("CBA") and the Unions' duty of fair representation (DFR"), respectively.

Bacchus is entitled to partial summary judgment on the breach of DFR claim against the Unions because it is undisputed that the Unions (i) did not conduct any investigation of the discharge

---

[1]Pursuant to the So Ordered Stipulation of the parties dated July 20, 2012 (Dkt. # 16), the City was dismissed as a party to this action and plaintiff granted leave to further amend complaint to, *inter alia,* add the New York City Department of Education ("DOE") as a Defendant to this action. On August 27, 2012, plaintiff filed a Second Amended Complaint (Dkt. # 20) naming the DOE a defendant in the action. The caption to the action has not been formally amended to reflect DOE as a party defendant.

grievance the Unions filed on behalf of Bacchus (ii) ignored Bacchus' discrimination complaint, (iii) relied upon the alleged investigation conducted by Pepper to process said grievance at steps 2 and 3, and (iv) based their decision not to appeal the grievance to a step 4 grievance panel or arbitration[2] on the alleged outcome of Pepper's investigation. Bacchus expects to establish at the trial of this action, that the DOE breached the CBA by the termination of her employment and that the Unions further breached their DFR by processing the grievance capriciously and/or in bad faith, and by abandoning the grievance and misleading Bacchus to believe that her grievance was submitted to arbitration.

## STATEMENT OF FACTS

Bacchus respectfully refers the Court to her accompanying Affidavit in Support of the instant motion and Plaintiff's Statement of Undisputed Material Facts pursuant to Local Rule 56.1. ("Plaintiff's Statement") (both of which are hereby repeated and incorporated herein by reference), for a complete recitation of the material undisputed facts.

Suffice it to state that Bacchus was employed by the DOE as a School Aide from December 1994 until March 11, 2011, when DOE wrongfully terminated her employment on the basis of trumped-up charges in clear violation of the CBA. Prior to the orchestration of the events that lead to the discharge of Bacchus, the DOE had employed Bacchus for approximately fifteen (15) consecutive years without issuing Bacchus with a single disciplinary charge, write-up or warning letter. Nor was any allegation or complaint of misconduct, adverse rating or allegations of corporal punishment or verbal abuse levied against Bacchus during said period. (Plaintiff's Statement ¶ 74)

---

[2]Grievance Panel means arbitration. (Cabranes Tr. 67:18-24; CBA; Eke-Nweke Decl. Exh. 12 p. 35)

However, "all hell broke loose" with respect to Bacchus' conditions of employment from approximately September 2009, when Katarzyna Lopez ("Lopez") (a Caucasian female of Polish national origin) -- who was also employed by the DOE as a School Aide at the public school known as PS/IS 295Q, District 29 ("PS 295") -- was notified by the DOE that she was scheduled be laid-off from her employment. During the last seventeen (17) months (much less than 17 months when vacation and holiday periods are factored in) of Bacchus' employment, Pepper and other members of PS 295 Administration procured approximately **thirteen** (13) false allegations of corporal punishment or verbal abuse of minor students or other misconduct against Bacchus. (Plaintiff's Statement ¶ 75; Bacchus Aff. 57-69))

Pepper and the school's Guidance Councillor, Colleen O'Connell and other members of the Administration fabricated and/or manipulated several students to fabricate most of the thirteen allegations, performed false or sham investigations into such allegations, falsely substantiated allegations and then subjected Bacchus to various disciplinary actions based upon the false substantiations of the allegations. The only of such allegations found to be unsubstantiated was the eleventh allegation, which was investigated directly by the DOE Office of Special Investigations ("OSI"). (Bachus Aff. ¶67; McLaren Tr. 27, Exh. 6, Roach Tr. Exh. 93, Exh.15.)

Evidently, the OSI Confidential Investigator, Doris Moreno, responsible for the investigation of the eleventh allegation resisted pressure to substantiate the allegation. Following an apparent inappropriate inquiry by Kathleen Hoskins, Esq., one of DOE's field counsel covering PS 295, on or about February 18, 2010, Investigator Moreno sent an email to her boss, Candace McLaren, Esq., stating in relevant parts:

> Ms. Hoskins wanted to know if I'm going to sub or unsub my case. I did not feel comfortable telling her the outcome of the investigation because the report has not been submitted for approval.
>
> **The issue is that Angela Thompson [deceased], Principal, at Q295, wants to terminate Merlene Bacchus, school aide.** Apparently, there are other allegations against the [Bacchus], and the **Principal is hoping that my case will help her with the termination process.**

(Eke-Nweke Decl. Exh. 11(f)).

Bacchus' employment was eventually terminated on March 11, 2011, on the pretextual ground that Bacchus called a sixth grade student named AA[3] "fat boy." Pepper claimed that Bacchus called AA "fat boy" while AA and CT, another sixth grader were having a verbal altercation in the auditorium. It is undisputed that Bacchus and a co-worker named Donna Arjoon were together during the period when AA was supposedly called "fat boy", that School Safety Agent ("SSA") Parker was standing behind AA at the time, that the auditorium was equipped with surveillance cameras, and that AA and CT were sitting close to each other together with other sixth grade <u>male</u> students the time AA was allegedly called "fat boy" (Plaintiff's Statement ¶¶16-18, 25-33).

At the disciplinary conference held on February 16, 2011, Bacchus unequivocally asserted that she did not call AA "fat boy." Despite the denial by Bacchus and the availability of potential eye and ear witnesses who could have offered probative statement or testimony, the Unions failed to conduct any investigation of the "fat boy" allegation and represented Bacchus during the ensuing contractual grievance proceedings without conducting their own investigation.

---

[3]Pursuant to Fed. R. Civ. P. 5.2(a)(3), the students mentioned in this memorandum, and accompanying affidavit and Plaintiff's Statement are identified by their initials.

Thus, throughout the grievance process, the Unions did not present any evidence on behalf of Bacchus at any of the grievance hearings, nor submit any written material or witness statement or evidence to corroborate Bacchus' version of events. Rather, the Unions' representation of Bacchus was based solely upon the alleged outcome of the investigation conducted by Pepper. The allegation was supported only by statements allegedly obtained by Pepper from AA and two alleged female witnesses named JM and KR, both of whom were supposedly segregated from boys at the time of the alleged incident. (Plaintiff's Statement ¶¶ 38-68)

Similarly, as confirmed by the Unions' memorandum dated November 4, 2011, authored by Robin Roach, Esq., ("Roach") the Unions' Associate General Counsel and Roach's deposition testimony, the Unions decided not to arbitrate Bacchus' discharge grievance "[b]ased on the employer's investigation of the incident,..." Cabranes Tr. Exhibit 23. Not only did the Unions not conduct any investigation into the alleged "fat boy" incident and other allegations of misconduct brought against Bacchus, the Unions by and through their representative, Phyllis Wambser ("Wambser"), forbade Bacchus from conducting her own investigation into the allegations and repeatedly cautioned Bacchus not to seek to obtain witness statements from adults. (Bacchus Tr. 66:9-16; Bacchus Aff. Eke-Nweke Decl. Exh. 9(a) pp. 16-19:25-17:24) For instance, at a disciplinary conference held on January 15, 2010, Wambser was recorded cautioning[4] Bacchus not

---

[4] The conference participants were partly recorded follows:

| Bacchus: | **Do these parents have any knowledge of all allegations made against me, the kids parents?** |
|---|---|
| Wambser: | Parents are not required unless they are the ones reporting. |
| Thompson: | Reporting. |
| Wambser: | Nor should you. I will caution you again Ms. Bacchus, we have signed the paperwork that we are taking copies, okay of all of this and we will need to sign |

5

to contact students' parents nor her co-workers with respect to the allegations of misconduct.

Given the undisputed record, Bacchus is entitled to partial summary judgment on her DFR claim.

## ARGUMENT

## APPLICABLE LEGAL STANDARD

It is well established that a motion for summary judgment should be granted when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *see Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348 (1986). A genuine issue of fact exists only when a reasonable jury could find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

---

|  | a new one for this one that we will have no conversation whatsoever with any of these.<br>What you need to know Ms. Bacchus, okay, is that if any severe disciplinary comes from this and you, okay end up where you're in an arbitration, these children have to come forth and testify. |
|---|---|
| Bacchus: | **And their parents would be subpoenaed to come to court.** |
| Wambser: | Parents have nothing to do with this. |
| Bacchus: | **Okay but they're minors.** |
| Wambser: | The children still get subpoenaed. The children still have to forth and testify, okay? |
| Bacchus: | Okay. |
| Wambser: | I caution you and advise you clearly, do not have any conversation with any parent of any student in this -- .... |
| Thompson: | Please, also remind her about conversations about these issues and people that work in the building. |
| Wambser: | You're being very -- you're putting yourself in a lot, a lot of harms way with anyone in this building about what goes on –. |

(Eke-Nweke Decl. Exh. 9(a) pp. 16-18:19)

6

106 S.Ct. 2505. (1986). In order to demonstrate the existence of a genuine issue of fact, the non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York,* 132 F.3d 145, 149 (2nd Cir. 1998); *see also, Anderson,* 477 U.S. at 248-9.

In the context of cross-motions for summary judgment, "the standard is the same as that for individual motions for summary judgment and the court must consider each motion independent of the other." *Aviall, Inc., v. Ryder System, Inc.,* 913 F. Supp. 826, 828 (S.D.N.Y. 1996) *(citing Heublein, Inc. v. United States,* 996 F. 2d 1455 (2nd Cir. 1993)). "Simply because the parties have cross-moved and therefore have implicitly agreed that no material issues of fact exist, does not mean that the court must join in the agreement and grant judgment as a matter of law for one side or the other." *Id.*

Applying these standards to the facts and circumstances of this case, Bacchus' motion for partial summary judgment should be granted.

I

## THE UNIONS BREACHED THE DFR THEY OWED TO BACCHUS

A union owes its members a DFR, which includes the obligation to enforce collective bargaining agreements and to prosecute members' grievances arising under them non-arbitrarily and in good faith. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "The duty of fair representation plays a central role in the nation's labor policy and has long stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Moore v. Roadway Express, Inc.,* 07-cv-977, 2008 U.S. Dist. LEXIS 64886 at *10 (E.D.N.Y. 2008)(quoting *Vaca, Id.* at 182). The union has a duty of "complete

loyalty to the interests of those whom it represents". *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S. Ct. 681, 97 L. Ed. 1048 (1953).

**A.     Public Sector Unions Are Bound By The DFR**

It is well settled that although the States and their "political subdivisions are excluded from the definition of "employer" contained in subdivision (2) of section 2 of the National Labor Relations Act *29 U.S.C. § 152 [2],* the courts in New York have recognized a similar duty of fair representation on the part of public sector unions predicated on their role as exclusive bargaining representatives." *Matter of Civil Serv. Bar Assn. v. City of New York,* 64 N.Y. 2d 188, 196, 474 N.E. 2d 587, 485 N.Y.S. 2d 227 (1984)(citing cases). *See also Straker v. Metro. Transit Auth.,* 333 F. Supp. 2d 91, 104 (E.D.N.Y. 2004)(holding that "a labor organization representing public sector employees in New York State has a duty of fair representation under the New York Public Employees' Fair Employment Act, § 209-a(2)(c)").

In this case, following the Unions' pre-answer motion to dismiss Bacchus' claim as against the Unions, by Decision and Order dated March 29, 2013 (Dkt. # 27), Honorable William F. Kuntz of this Court, denied the Unions' motion. In so doing, the Court found that "[u]nder New York law, public sector unions owe a duty of fair representation to their members." 2013 U.S. Dist. LEXIS 47628 *6 (E.D.N.Y. Mar. 29, 2013).

**B.     Standard For Establishing Breach of DFR**

In order to establish a breach of DFR against a union, a plaintiff must prove two elements, firstly, that the union's conduct was "arbitrary, discriminatory or in bad faith." *Barr v. United Parcel Service, Inc.,* 868 F.2d 36, 43 (2nd Cir. 1989) *cert. denied,* 493 U.S. 975 (1989), (quoting *Vaca,* 386 U.S. at 190). Secondly, the unions conduct must in fact have "seriously undermine[d] the arbitral

process." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567, 96 S.Ct. 1048,(1976); *Barr*, 868 F.2d at 43. The DFR mandates that a union "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Vaca*, 386 U.S. at 191; *See, also, Gold v. Local Union No. 888*, 758 F. Supp. 205, 207 (S.D,N.Y. 1991).

### *1.     Union's Bad Faith Is Not A Necessary Element Of A DFR Claim*

A plaintiff need not establish bad faith on the part of a Union to prove breach of DFR. Therefore, "even in the absence of evidence of bad faith, union decisions made without a rational basis may still be attacked as arbitrary." *Lapir v. Maimonides Medical Center*, 750 F. Supp. 1171 at 1177 (E.D.N.Y 1990) (*citing, Jones v. Trans World Airlines, Inc.*, 495 F.2d 790 (2d Cir. 1974)). "Bad faith or hostile discrimination is certainly a sufficient condition to evidence an irrational decision, but it is not a necessary condition." *Id.* at 798; *National Labor Relations Bd., v. Katsaros*, 740 F. 2d 141, 148 at n. 13 (2nd Cir. 1984)(noting that bad faith "is not a necessary [condition] for establishing breach of DFR.)

### *2.     The Unions' Failure To Investigate Whether Bacchus Called AA "Fat Boy" Was Arbitrary And The Decision Not To Arbitrate Based Upon Pepper's Investigation Constitute Evidence Of Irrational Decision*

It is well established that "[w]hen a union ignores or perfunctorily presses a meritorious claim, it is held to have acted arbitrarily." *Samuels v. Air Transport Local* 504 992 F. 2d 12 at 16 (2nd Cir. 1993). "[E]xamples of arbitrary behavior include the union's ignoring or perfunctorily pressing a meritorious claim." *Gorwin v. Local 282*, 1997 U.S. Dist. LEXIS 3822 * 17 (S.D.N.Y. April 1, 1997). It is well recognized that a union's failure to fairly and adequately pursue an investigation of a grievance constitutes a breach of DFR because such failure may undermine the integrity of the arbitral process. *See, Hines* 424 U.S. at 567. *See also, Gorwin*, 1997 U.S. Dist.

9

LEXIS 3822 *25 (recognizing that if a union's failure to investigate is grossly inadequate as to transcend negligence and poor judgment, the union has breached its duty.)(collecting cases); *Tenorio v. N.L.R.B.,* 680 F.2d 598, 601, (9th Cir. 1982) (to comply with its DFR, a union must conduct some minimal investigation of grievances brought to its attention); *Lapir v. Maimonides Medical Center,* 750 F. Supp. 1171 (E.D.N.Y. 1990) (a union's handling of an employee's grievance must meet certain minimum standards of competence and fairness); *Moore v. Roadway Express, Inc.,* 07-cv-977, 2008 U.S. Dist. LEXIS 64886 at *16 (concluding that plaintiff's allegation that the Union failed to investigate plaintiff's grievances stated a claim for breach of DFR); *Thomas v. Little Flower for Rehab. & Nursing,* 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011)(holding that an allegation of a failure to perform any investigation after notice of a grievance plausibly alleges a breach of the DFR).

In the case at bar, Bacchus has demonstrated her entitlement to partial summary judgment because it is undisputed that the Unions did not: investigate whether Bacchus called AA "fat boy", represented Bacchus at the steps 2 and 3 hearings without conducting any investigation of the grievance, relied upon the outcome of the alleged investigation conducted by Pepper to process said grievance, based the Unions' decision not to appeal the grievance to arbitration on the alleged outcome of Pepper's investigation and ignored Bacchus' discrimination complaint. Clearly the Unions' conduct constitutes a breach of the DFR they owed to Bacchus. In *Tenorio,* the court recognized that a union's responsibilities often require it to assess the relative merit of the grievances presented by its members, but stated:

> However, the duty of fair representation requires that, before assessing the merits of a grievance, a union must have an ample basis upon which to make such an assessment. The union in the instant case

>    lacked such a basis.

*Tenorio,* 680 F2d. at 602.

The perfunctory nature of the Unions' conduct is further exemplified by the inaccuracies contained in the memorandum of November 4, 2011. (Cabranes Exhibit 23). Because Bacchus' grievance was a discharge grievance, the Unions were required to exercise special care in handling the grievance since discharge was the most serious sanction DOE could impose. *Id.* However, that is not the case here as the Union's memorandum clearly shows the Unions did not exercise any care, talkless of special care, in handling Bacchus' grievance. For instance, the memorandum incorrectly states that Bacchus was discharged for corporal punishment, that Bacchus had previously been suspended for <u>striking</u> another student and that Bacchus violated her "employer's rules by calling a student's parent without informing or obtaining the approval of the school administration. Firstly, Bacchus was discharged for allegedly calling a student "fat boy" not for any corporal punishment, Secondly, the school never alleged that Bacchus struck a student nor was she suspended for striking a student. Thirdly, the Administration never alleged that Bacchus was required prior to calling a student's parent to inform or obtain approval of the administration. Perhaps, more importantly, the provisions of school's Lunch Schedule Memorandum were not applicable under the circumstances and were not violated by Bacchus. Undoubtedly, the DFR "includes an obligation to ascertain the merits of employee grievances." *Gorwin,* 1997 U.S. Dist. LEXIS 3822 *26 (internal quotation marks and citation omitted).

11

### C. DOE Breached The CBA Because Bacchus' Discharge Was Not Based On Good And Sufficient Reason

At the trial of this action, Bacchus expects to prove that her discharge was not based on good and sufficient reason as the CBA provides. As fully, set forth in the Affidavit of Bacchus and Plaintiff's Statement, both submitted herewith, the DOE breached the CBA by discharging Bacchus based upon fabricated or false allegation of verbal abuse. Had the Unions conducted even the most basic investigation, they would have been able to uncover that CT and at least five other students provided written statements that tended to corroborate Bacchus' version of the events.

### CONCLUSION

In view of all the foregoing, Bacchus respectfully requests that her motion for partial summary judgment be granted in its entirety.

Dated: April 25, 2014
Brooklyn, New York

Respectfully submitted,

LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C.

By: _____
Vincent I. Eke-Nweke (VE 5282)
Attorney for Plaintiff MERLENE BACCHUS
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300