UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MERLENE BACCHUS,

        Plaintiff,

 -against-

THE CITY OF NEW YORK, RENE PEPPER,
and BOARD OF EDUCATION EMPLOYEES
LOCAL 372, DISTRICT COUNCIL 37,
AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO,

        Defendants.
-------------------------------------------------------------------X

**UNION DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

12 Civ. 1663 (PKC)(MDG)

Pursuant to Rule 56.1 of the Local Civil Rules for the United States District Court for the Eastern District of New York, Defendants District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO ("District Council 37") and its affiliated Board of Education Employees Local 372, (collectively "Union Defendants" or "Union"), by their attorney, Jesse Gribben, submit the following Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.

1. Plaintiff Merlene Bacchus filed her original Complaint in this action on April 4, 2012. See Exhibit A, Docket Sheet in *Bacchus v. City of New York et al.*, Docket No. 1.

2. Plaintiff subsequently amended her complaint on May 9, 2012 and again on August 27, 2012. See Exhibit A, Docket Sheet in *Bacchus v. City of New et al.*, Docket No. 9, 20.

3. Plaintiff was employed as a School Aide in IS/PS 295 from 2007 to March 2011. See Exhibit B, Pl.'s Second Am. Compl. at ¶ 32, 34.

4. As a school aide and a member of Local 372, an affiliate of District Council 37, Plaintiff was covered by the collective bargaining agreement between Local 372 and the Department of Education. See Exhibit C, School Aides and Health Service Aides Agreement, Def.'s Doc. Produc. Bates # Union 033-088.

5. Article XX of the collective bargaining agreement contains a four-step grievance procedure applicable to employees in the school aide title. See Exhibit C, School Aides and Health Service Aides Agreement, Def.'s Doc. Produc. Bates # Union 067-072.

6. In cases of suspensions and terminations, the discharge review procedures contained in Article XXI of the collective bargaining agreement apply and the Step grievance procedure under Article XX can be initiated at the Step II level. See Exhibit C, School Aides and Health Service Aides Agreement, Def.'s Doc. Produc. Bates # Union 072-073.

7. Pursuant to Article XX, if a grievance is denied at Step III, the Union alone can appeal such denial and request that the grievance be arbitrated before a Grievance Panel. See Exhibit C, School Aides and Health Service Aides Agreement, Def.'s Doc. Produc. Bates # Union 070-072.

8. To discharge the duties under the collective bargaining agreement for employees, Union Defendants' Schools Division and Legal Department have established internal practices to handle and process a grievance. See Exhibit D, Cabranes Dep. at 16:21-25; 17:2-25; 18:2-5; 19:22-25; 20:2-25; Exhibit E, Roach Dep. at 8:10-16; 9:2-9; 11:15- 25; 12:2-25; 13:2-25; 14:2-4.

9. At the Schools Division level when a grievance is denied at the Step III, the grievance representative submits an internal request for arbitration to one of two Assistant Directors. See Exhibit D, Cabranes Dep. at 17:24-25; 18:2-5; Exhibit F, Cabranes Dep. Exhibit 7; Exhibit G, Def.'s Doc. Produc. Bates # Union 267.

10. The Assistant Directors review that the request includes "all the details necessary to outline what the case is about, and all the documents that are needed" before signing off and forwarding the case to the Legal Department. See Exhibit D, Cabranes Dep. at 17:24-25; 18:2-5.

11. At the same time that this internal request is forwarded to the Legal Department, the Assistant Directors send a form letter to the Department of Education consistent with the time requisites of the collective bargaining agreement "to protect the rights of the member to apply for arbitration, or to petition the Legal Department to go to arbitration." See Exhibit D, Cabranes Dep. at 59:2-24; Exhibit H, Cabranes Dep. Exhibit 9; Exhibit I, Def.'s Doc. Produc. Bates # Union 268.

12. Other than approving that the internal request for arbitration be forwarded to the Legal Department, the Assistant Directors have no discretion to make any recommendations or decisions whether a grievance is actually taken to arbitration pursuant to the collective bargaining agreement. That authority lies solely with the Legal Department. See Exhibit D, Cabranes Dep. at 20:20- 25; 21:2-15; 61:3-14.

13. For the last eight years, Robin Roach, then District Council 37's Associate General Counsel and now current General Counsel, had been exclusively responsible for exercising the Union's exclusive right and power under the collective bargaining

        agreement to arbitrate a case before a Grievance Panel. See Exhibit D, Cabranes Dep. at 21:16-21; 56:2-9; 62:5-14; Exhibit E, Roach Dep. at 7:4-15; 8:10-16.

14. Ms. Roach discharged this duty by performing merit reviews of all Local 372's internal request for arbitration submitted by the Schools Division to the Legal Department. See Exhibit E, Roach Dep. at 7:8-15; 8:10-16.

15. When performing these merits reviews, Ms. Roach meets with the Local 372 union representative assigned to the member, reviews the member's file, the member's disciplinary history, the decisions in the prior Steps of the grievance, the collective bargaining agreement, and previous arbitration decisions on the matter at issue. See Exhibit E, Roach Dep. at 11:15-25; 12:1-25; 13:2-17; 99:17-20.

16. At the conclusion of the merit review, Ms. Roach issues the Legal Department's opinion setting forth the reasons a case is not suitable for arbitration before the Grievance Panel and sends the memorandum to the Schools Division. See Exhibit E, Roach Dep. at 13:25; 14:2-10; Exhibit J, Pl.'s Dep. Union Exhibit 1 (Bates # Union 293); Exhibit K, Cabranes Dep. Exhibit 23 (Bates # Union 090-091).

17. The Schools Division notifies the member of this decision and includes Ms. Roach's memorandum in the notice. See Exhibit C, Cabranes Dep. at 63:4-22; Exhibit J, Pl.'s Dep. Union Exhibit 1 (Bates # Union 314); Exhibit K, Cabranes Dep. Exhibit 23 (Bates # Union 092).

18. The notice also advises the member that if he or she disagrees with the Legal Department's opinion, the member has 20 days from the date on the letter to request a meeting with Ms. Roach. See Exhibit D, Cabranes Dep. at 63:5-15; Exhibit E, Roach Dep. at 14:21-25; 15:2-3, 17-21.

19. If the member requests a meeting with Ms. Roach, Ms. Roach will meet with the member and the union representative to review the member's file with all individuals present. See Exhibit E, Roach Dep. at 15:19-25.

20. During this meeting, Ms. Roach explains to the member her role with respect to determining a case's suitability for arbitration and will afford the member an opportunity to be heard and explain why the case should proceed to arbitration. See Exhibit E, Roach Dep. at 16:1-8.

21. In disciplinary cases, the Union and the Department of Education have established a Direct to Arbitration process whereby either party can make a written request that Steps I-III be waived for a particular case and that the case be processed directly to arbitration. See Exhibit E, Roach Dep. at 55:3-15; Exhibit L, Cabranes Dep. Exhibit 19.

22. For a case to be processed directly to arbitration under this agreement, both parties must consent to such request. See Exhibit E, Roach Dep. at 55:13-14; Exhibit M, Cabranes Dep. Exhibit 20.

23. At the Schools Division level, a union representative can make a request to Ms. Roach that a case be processed through the Direct to Arbitration process. See Exhibit D, Cabranes Dep. at 82:24-25; 83:3-17; Exhibit N, Cabranes Dep. Exhibit 17.

24. At the Legal Department level, when a member has a pending disciplinary case, the Legal Department can and has made the determination on this basis alone to request that any subsequent disciplinary cases against the same member be joined with the pending disciplinary case by requesting that the subsequent disciplinary case be

processed through the Direct to Arbitration process. See Exhibit E, Roach Dep. at 55:16-25; 56:2-5.

25. Plaintiff's union representative prior to, during and after her discharge was Phyllis Wambser. See Exhibit B, Pl.'s Dep. at 140:8-25; 141:1-4; Exhibit O, Def.'s Doc. Produc. Bates # Union 216-217; Exhibit P, Cabranes Dep. Exhibit 1; Exhibit Q, Def.'s Doc. Produc. Bates # Union 244-245; Exhibit R, Def.'s Doc. Produc. Bates # Union185-186; Exhibit S, Def.'s Doc. Produc. Bates # Union 097-102; Exhibit T, Cabranes Dep. Exhibit 21.

26. At the time of Plaintiff's discharge, Ms. Wambser was actively representing Plaintiff and challenging Plaintiff's suspension from work from February 23, 2010 through March 9, 2010 for grabbing and pulling a student by the hair in violation of Chancellor's Regulation A-420. See Exhibit U, Cabranes Dep. Exhibit 3; Exhibit V, Cabranes Dep. Exhibit 5; Exhibit W, Def.'s Doc. Produc. Bates # Union 207; Exhibit X, Cabranes Dep. Exhibit 6; Exhibit Y, Def.'s Doc. Produc. Bates # Union 318.

27. Consistent with both the collective bargaining agreement and Union Defendants' internal practices for handling and processing grievances, when Plaintiff was suspended Ms. Wambser initiated the four-step grievance procedure, submitted it for review to the Schools Division and the Legal Department. See Exhibit V, Cabranes Dep. Exhibit 5; Exhibit W, Def.'s Doc. Produc. Bates # Union 207; Exhibit Y, Def.'s Doc. Produc. Bates # Union 318; Exhibit F, Cabranes Dep. Exhibit 7; Exhibit J, Pl.'s Dep. Union Exhibit 1 (Bates # Union 314).

28. At the conclusion of her merits review, Ms. Roach declined to take the suspension grievance to arbitration before the Grievance Panel and issued a memorandum setting

forth the Legal Department's reasons. See Exhibit J, Pl.'s Dep. Union Exhibit 1 (Bates # Union 293).

29. This decision was conveyed to Plaintiff by the Schools Division via letter mailed to 146-47 106th Avenue, Jamaica, New York 11435, and a copy of Ms. Roach's memorandum was provided for her review. See Exhibit J, Pl.'s Dep. Union Exhibit 1 (Bates # Union 314).

30. Plaintiff exercised her right to request a meeting with Ms. Roach as per the written notice and met with Ms. Roach to explain why her case should proceed to arbitration before the Grievance Panel. See Exhibit Z, Pl.'s Dep. at 134:8-23; 135:5-11; 134:24-25; 137:1-13; Exhibit E, Roach Dep. at 44:8-25; 45:2-6.

31. Plaintiff does not deny that she met with Ms. Roach for several hours and that subsequent to that meeting the Legal Department took her suspension grievance to arbitration before the Grievance Panel. See Exhibit Z, Pl.'s Dep. at 134:8-23; 135:5-11; 134:24-25; 137:1-13; Exhibit E, Roach Dep. at 44:8-25; 45:2-6; Exhibit AA, Cabranes Dep. Exhibit 12; Exhibit BB, Cabranes Dep. Exhibit 11.

32. Plaintiff does not deny that at the arbitration hearing Meaghean Murphy, District Council 37's Assistant General Counsel, presented the grievance to the Grievance Panel, or that on September 1, 2011, Ms. Murphy notified her in writing that the suspension had been upheld and the grievance had been denied. See Exhibit Z, Pl.'s Dep. at 138:4-21; Exhibit CC, Cabranes Dep. Exhibit 13.

33. On March 11, 2011, while the arbitration for Plaintiff's suspension was pending, Plaintiff was discharged from her employment with the Department of Education for violating the Chancellor's Regulation A-421, which prohibits school staff from

7

verbally abusing school children. See Exhibit S, Def.'s Doc. Produc. Bates # Union 097-102.

34. Immediately upon Plaintiff's discharge Ms. Wambser made an internal request to Ms. Roach to process Plaintiff's discharge grievance through the Direct to Arbitration process. See Exhibit N, Cabranes Dep. Exhibit 17.

35. In the meantime, the Schools Division sent its form letter to the Department of Education requesting arbitration with respect to Plaintiff's discharge. See Exhibit I, Def.'s Doc. Produc. Bates # Union 268.

36. The Legal Department made the request to the Department of Education to process Plaintiff's discharge grievance through the Direct to Arbitration process. See Exhibit L, Cabranes Dep. Exhibit 19.

37. The Department of Education did not consent to process Plaintiff's grievance directly to arbitration. See Exhibit M, Cabranes Dep. Exhibit 20.

38. Ms. Wambser then processed Plaintiff's discharge through the steps procedure under Article XX and XXI of the collective bargaining agreement. See Exhibit DD, Cabranes Dep. Exhibit 18; Exhibit EE, Def.'s Doc. Produc. Bates # Union 126; Exhibit FF, Def.'s Doc. Produc. Bates # Union 128.

39. Plaintiff cannot deny that the process by which her discharge grievance was handled mirrored the process by which her suspension grievance was also handled. See Exhibit Z, Pl.'s Dep. at 133:9-25; 134:1-7; 141:9-25; 142:1; Exhibit F, Cabranes Dep. Exhibit 7; Exhibit G, Def.'s Doc. Produc. Bates # Union 267; Exhibit H, Cabranes Dep. Exhibit 9; Exhibit I, Def.'s Doc. Produc. Bates # Union 268; Exhibit J, Pl.'s Dep. Union Exhibit 1; Exhibit K, Cabranes Dep. Exhibit 23; Exhibit T, Cabranes

Dep. Exhibit 21; Exhibit V, Cabranes Dep. Exhibit 5; Exhibit W, Def.'s Doc. Produc. Bates # Union 207; Exhibit X, Cabranes Dep. Exhibit 6; Exhibit Y, Def.'s Doc. Produc. Bates # Union 318; Exhibit DD, Cabranes Dep. Exhibit 18; Exhibit EE, Def.'s Doc. Produc. Bates # Union 126; Exhibit FF, Def.'s Doc. Produc. Bates # Union 128.

40. Both grievances were reviewed by the Schools Division and Ms. Roach in the Legal Department, both grievances generated a legal opinion and a notice to Plaintiff setting forth the reasons why neither grievance was suitable for arbitration. See Exhibit F, Cabranes Dep. Exhibit 7; Exhibit G, Def.'s Doc. Produc. Bates # Union 267; Exhibit J, Pl.'s Dep. Union Exhibit 1 (Bates # Union 293); See Exhibit K, Cabranes Dep. Exhibit 23 (Bates # Union 090-091).

41. The Schools Division mailed the notice informing Plaintiff that her discharge grievance will not proceed to arbitration to 146-47 160th Avenue, 1st Floor, Jamaica, New York 11435.  See Exhibit K, Cabranes Dep. Exhibit 23.

42. In both instances, Plaintiff was notified about the Legal Department's decision and given an opportunity to meet with Ms. Roach to make her case to have the grievances arbitrated before a Grievance Panel.  See Exhibit J, Pl.'s Dep. Union Exhibit 1 (Bates # Union 314); Exhibit K, Cabranes Dep. Exhibit 23 (Bates # Union 092);

43. During deposition testimony, Plaintiff conceded that she was aware of the Legal Department's review procedure and Ms. Roach's authority to determine if a case should proceed to arbitration before a Grievance Panel.  See Exhibit Z, Pl.'s Dep. at 136:23-25; 137:1-22; 152:12-25; 153:5-7.

44. After finding out on or about March 8, 2012, that the Union would not be arbitrating her discharge grievance before a Grievance Panel, Plaintiff did not request a meeting with Ms. Roach or ask to speak to her or even attempt to call her to make her case to have her discharge grievance proceed to arbitration before the Grievance Panel. See Exhibit Z, Pl.'s Dep. at 155:7-22; 149:3-12; Exhibit GG, Def.'s Doc. Produc. Bates # Union 458.

45. Plaintiff now is suing Union Defendants because "the Union never did [anything] to help [her]." See Exhibit Z, Pl.'s Dep. at 110:1-2.

46. Plaintiff premises her breach of duty of representation claim against Union Defendants on events that occurred anywhere from 2010 through late 2011. See Exhibit O, Def.'s Doc. Produc. Bates # Union 216-217; Exhibit P, Cabranes Dep. Exhibit 1; Exhibit Q, Def.'s Doc. Produc. Bates # Union 244-245; Exhibit R, Def.'s Doc. Produc. Bates # Union 185-186; Exhibit S, Def.'s Doc. Produc. Bates # Union 097-102; Exhibit HH, Roach Dep. Exhibit 6; Exhibit II, Cabranes Dep. Exhibit 4; Exhibit JJ, Cabranes Dep. Exhibit 2; Exhibit KK, Roach Dep. Exhibit 8; Exhibit LL, Roach Dep. Exhibit 9; Exhibit MM; Roach Dep. Exhibit 2; Exhibit NN, Roach Dep. Exhibit 3; Exhibit OO, Roach Dep. Exhibit 4; Exhibit PP, Roach Dep. Exhibit 14.

47. For example, Plaintiff faults the Union for not interviewing "several adult individuals (including but not limited to Security Guards, and other School Aides)" that "were present at the time and places of occurrence of the alleged incidents underlying said disciplinary charges or allegations of misconduct." See Exhibit B, Pl.'s Second Am. Compl. ¶ 62; See Exhibit PP, Roach Dep. Exhibit 14 ¶ 4.

48. Plaintiff has not named any of these potential witnesses, nor has she called them to be deposed. See Exhibit Z, Pl.'s Dep. at 144:16-25; 145:1-8

49. Plaintiff also faults the Union for not interviewing school children or their parents. However, Plaintiff admits that she does not know whether Ms. Wambser or the Union have either the ability or authority to do so. See Exhibit Z, Pl.'s Dep. at 143:4-12.

50. Plaintiff also faults the Union for not gathering video footage. Yet, her understanding and belief as to why the Union may have either the ability or the authority to do this is because the Union was representing her. See Exhibit Z, Pl.'s Dep. at 142:11; 146:8-22.

51. Other than to say that the video footage may be used to "prove that these allegations did not occur," Plaintiff has not set forth the existence or substance of any video footage. See Exhibit Z, Pl.'s Dep. at 142:11; 146:8-22.

52. Plaintiff admits that she never made a written request to Ms. Wambser or anybody at the Union to gather statements from students, get video footage or interview parents. See Exhibit Z, Pl.'s Dep. at 147:21-24.

53. Plaintiff alleges that Union Defendants "unreasonably ignored [Plaintiff's] discrimination and retaliation claim." See Exhibit B, Pl.'s Second Am. Compl. ¶ 59.

54. There is nothing in the collective bargaining agreement that creates a contractual obligation for Union Defendants to address any employee allegations of workplace discrimination. See Exhibit C, Def.'s Doc. Produc. Bates # Union 033-088; Exhibit D, Cabranes Dep. at 50:2-19.

55. Plaintiff cannot deny that upon telling Ms. Wambser that she was being discriminated against, Ms. Wambser informed her and advised her, "I can't do [anything about]

11

discrimination. . . .You have to go to Human Rights or some other agency." See

Exhibit Z, Pl.'s Dep. at 157:2-8.

Dated: New York, New York
April 25, 2014

                ROBIN I. ROACH
                General Counsel
                District Council 37, AFSCME, AFL-CIO
                Attorney for Union Defendants
                125 Barclay Street, Room 510
                New York, New York 10007
                Tel.: (212) 815-1450
                Fax: (212) 815-1440
                E-mail: JGribben@dc37.net

                By: _____/s/_____
                    Jesse Gribben (JG 3799)
                    Assistant General Counsel