12 CV 1663(PKC)(MDG)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MERLENE BACCHUS

                              Plaintiff,

                -against-

THE CITY OF NEW YORK, RENÉE PEPPER
and BOARD OF EDUCATION EMPLOYEES
LOCAL 372, DISTRICT COUNCIL 37,
AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO,

                              Defendants.

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF CITY
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

### ZACHARY W. CARTER
*Corporation Counsel of the City of New York*
Attorney for City Defendants
100 Church Street, Room 2-102
New York, N.Y. 10007-2601

*Of Counsel: Kathryn E. Martin*
*Tel: (212) 356-2444*
*kmartin@law.nyc.gov*

## PRELIMINARY STATEMENT

There is overwhelming evidence that Plaintiff was disciplined and terminated because of repeated incidents of verbal abuse and corporal punishment of students, insubordination, and unsatisfactory work performance. There is no support for Plaintiff's contentions that the school administration supposedly "fabricated" complaints, "manipulated" students and parents into making false accusations, and made derogatory remarks about her national origin. In fact, Plaintiff is reduced to submitting an affidavit that contradicts her own deposition testimony in an effort to create some issue of fact. The fact remains that there is no evidence that race, national origin, or retaliation played any role in the decision to terminate Plaintiff's employment.

## ARGUMENT

### POINT I
### PLAINTIFF'S AFFIDAVIT SHOULD BE REJECTED

It is well settled that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). "[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

Plaintiff's July 29, 2014 affidavit submitted in opposition to Defendants' motion for summary judgment, makes the following allegations for the first time: 1) Thompson, Pepper, Levy, and LaBella made derogatory remarks or insulting comments about her national origin, *id.* ¶ 13; 2) Thompson stated that West Indian women were stupid, *id.* ¶15; 3) Thompson stated

"Merlene, what are you saying? You sound like you're saying blah blah blah. Why can't you West Indian women learn to speak the English language properly? Learn to speak the English language" and frequently corrected Plaintiff's pronunciation of words in front of staff and visitors, *id.* ¶ 16; and 4) LaBella called Plaintiff an "ugly monkey" while making animal noises, *id.* ¶ 17.

Plaintiff made no mention of any of these allegations in any of (a) her numerous "rebuttals," (b) her complaint of discrimination to DOE's OEO office, (c) her complaint of discrimination to the EEOC, (d) her Federal complaint of discrimination, which she amended twice, and (e) her two depositions, which were supplemented with pages of errata sheets. Plaintiff waited until opposing the motion for summary judgment to try to amplify her claims. The Court should reject this transparent tactic.

During Plaintiff's deposition, Plaintiff was specifically asked about any alleged "verbal abuse" by Pepper and other school administrators. *See* Martin Reply Decl., Deposition Transcript of Plaintiff, Ex. HHH, 70:3-7 (Q: "The fourth line down on paragraph 41 … It says, 'continually harassed Bacchus and subject her to verbal abuse,' what is the harassment you're referring to there?"); 71:3 ("Any other verbal abuse that you're alleging?"). At no time did Plaintiff allege that she was called an "ugly monkey" or was subjected to animal noises. Further, defense counsel repeatedly asked Plaintiff to provide the basis for her allegation that she was being discriminated against because of her national origin and at no time did Plaintiff ever testify that Thompson called West Indian women stupid or that Thompson corrected Plaintiff's pronunciation of words, much less that Thompson, Pepper, Levy, and LaBella made derogatory remarks about Plaintiff's national origin. *Id.* at 32:11-35:17, 38:15-18, 66:22-67:19, 221:19-222: 24. Moreover, although Plaintiff testified that Thompson said to her, "I can't understand a

word you're saying, blah blah blah. Answer the fricking phone," *id.* at 70:20-22, Plaintiff never said or implied that Thompson said anything about Plaintiff's accent. Plaintiff was also provided with three opportunities at the end of her first deposition to provide additional information regarding her claims, *see id.* at 130:6 (Q: "Is there anything else you'd like to add?"), 131:23 ("Anything else you want to add?"), and 132:10 ("Anything else?"). Plaintiff took those opportunities to provide additional details, but at no time mentioned any of the new allegations listed above.

Plaintiff should not be permitted to contradict her deposition testimony by adding new assertions for the first time in opposition to a motion for summary judgment after having been specifically questioned at her deposition. *See Cole v. Goord*, 04 Civ. 8906, 2009 U.S. Dist. LEXIS 37088, at *30-32 (S.D.N.Y. Apr. 29, 2009) (refusing to consider allegation made for the first time in plaintiff's affidavit opposing summary judgment because "[t]he defendants were entitled to conduct discovery, find out what evidence exists in support of the complaint, and then move for summary judgment without having to wonder whether [Plaintiff] planned to fill in any holes they had found in his story by swearing to extra facts in response to their motion").

### POINT II
### PLAINTIFF FAILED TO COMPLY WITH THE NOTICE OF CLAIM REQUIREMENT

Plaintiff's argument that grievance procedures in a collective bargaining agreement may act as a waiver of an individual's obligations under § 3813 to file a notice of claim for violations of the NYCHRL and NYSHRL is directly at odds with the New York Court of Appeals, which has strictly construed the notice of claim requirement and rejected "proposals to compromise the strict statutory notice of claim requirement, because to do so would lead to uncertainty and vexatious disputes." *See Varsity Transit Inc. v. Bd. of Educ. of the City of New York*, 5 N.Y.3d 532, 536 (2005). The cases cited by Plaintiff involve contractual issues

addressed by grievance procedures in a collective bargaining agreement or by statute, not claims of discrimination. *See Matter of Local 832 v. Dept. of Educ. of the City of New York*, 60 A.D.3d 567, 567 (1st Dept. 2009); *N. Picco & Sons Contracting v. Bd. of Educ. of Bronxville School*, 26 A.D.3d 317, 318 (2d Dept. 2006); *Matter of deMeurers v. New York State and Local Employees' Retirement Sys.*, 243 A.D.2d 54, 58 (3d Dept. 1998). Plaintiff's citation to *Union Free School District No. 6 v. New York State Human Rights Appeal Bd.*, 35 N.Y.2d 371, 379 (1974) is inapposite because the plaintiff there brought suit to vindicate a public interest, to which § 3813 is not applicable. Here, Plaintiff seeks to vindicate her own private interest and seeks money damages solely for the harm allegedly done to her, therefore she is required to comply with § 3813.

Moreover, Plaintiff asks this Court to find that serving a discrimination complaint that has been filed with the New York State Division of Human Rights ("NYSDHR"), on the DOE's legal department (not the Board of Education of the City of New York), six months after her termination (not within 90 days as required §3813), somehow comports with the strictly enforced requirements of §3813. *See Varsity Transit*, 5 N.Y.3d at 536. Such argument should be rejected. As an initial matter, Plaintiff's reliance on *Kushner v. Valenti*, 285 F. Supp. 2d 314, 316 (E.D.N.Y. 2003) is misplaced because it was abrogated by *Brtalik v. S. Huntington Union Free Sch. Dist.*, 10-cv-0010, 2010 U.S. Dist. LEXIS 107373, at *14 (E.D.N.Y. Oct. 6, 2010), which cited *Varsity Transit* and held that "service of notice of claim on any entity that is not the statutory governing body, within the meaning of Section 3813, is insufficient to comply with the statute." Here, the DOE's legal department is not the "statutory governing body," i.e. the Board of Education of the City of New York, therefore her NYSDHR complaint cannot satisfy the notice of claim requirement. *Kingsley Arms, Inc. v. Copake-Taconic Hills Cent. Sch. Dist.*, 9

A.D.3d 696, 696-697 (3d Dept. 2004) (service upon school district's attorney is not sufficient to meet the notice of claim requirements of Education Law § 3813).

Furthermore, Plaintiff cites no legal authority for her contention that the complaint filed in a lawsuit may satisfy the notice of claim requirement. This is not surprising because the law is to the contrary. *Williams v. Mahoney*, 41 Fed. Appx. 519, 519 (2d Cir. 2002) (citing *Davidson v. Bronx Mun. Hosp.*, 64 N.Y.2d 59, 62 (1984) (summons and complaint did not constitute a valid notice of claim, therefore no timely notices of claim were ever served)).[1]

## POINT III
## THERE IS NO EVIDENCE THAT PLAINTIFF WAS A VICITIM OF RACE OR NATIONAL ORIGIN DISCRIMINATION

**A.    The Only Adverse Action Plaintiff Suffered Was Her Progressive Discipline And Resulting Termination**

Plaintiff fails to address Defendants' argument that having to undergo a medical examination is not an adverse employment action. *See* Pl. Opp. at 15-16. Plaintiff's argument that she was treated disparately because she was given "disproportionally excessive and/or out of title work," *see* Pl. Opp. at 16, is not supported by the record. School aide Lopez testified that she too lifts heavy boxes regularly, *see* Defendants' Reply 56.1 Statement ("Defs. Reply 56.1 Stmt.") ¶ 5. Further, photocopying was one of Plaintiff's job duties, especially after she was assigned exclusively to the main office and not permitted to have contact with children as a result of a student's allegation of corporal punishment. *See* Defs. 56.1 Stmt. ¶ 6; Martin Reply Decl. Ex. HHH at 62:15-20; Martin Reply Decl., Ex. III; *Brown v. City of New York*, 11 Civ. 2915, 2013 U.S. Dist. LEXIS 101337, at *61 (S.D.N.Y. July 18, 2013) ("assignment of minor,

---

[1]    Even if the Court found that service on the legal department complied with § 3813, Plaintiff's retaliation and breach of contract claims against DOE are untimely. Plaintiff fails to cite any legal authority that applies the "reasonably related" exception to the administrative exhaustion requirement to notices of claim.

additional duties—especially where similar tasks have been a part of [Plaintiff's] duties in the past—may be 'minor annoyances' [b]ut they are not 'materially adverse change[s] in the terms and conditions of [plaintiff's] employment") (citation omitted). Excessive scrutiny, being yelled at, and having to notify administration of one's whereabouts do not constitute adverse employment "in the absence of other negative results such as a decrease in pay or being placed on probation." *See Uddin v. City of New York*, 427 F. Supp. 2d 414,429 (S.D.N.Y. 2006). Here, none of these alleged adverse actions led to discipline; rather, Plaintiff was disciplined for substantiated charges of corporal punishment, verbal abuse, and insubordination.

**B.     Plaintiff's New Allegations About Supposed Comments Add Nothing**

While Plaintiff now claims that Thompson, Pepper, and Levy "mimicked" her accent, Plaintiff testified that they "mimicked" the way she spoke because she spoke too fast, not because of her accent. *See* Defs. Reply 56.1 Stmt. ¶ 4 ("Q: How would they mimic you? A: They would try to speak like (indecipherable), she speak so fast. I try to speak how I am speaking, they say – they laugh and they say, I don't understand a word you're saying. She said, can you repeat what you're saying? Q: They said that you were speaking too fast? A: Yeah. I don't understand, and I had to repeat what I was saying.").[2]

The case law Plaintiff cites is inapposite. In *Morgan v. NYS AG Office*, 11 Civ. 9389, 2013 U.S. Dist. LEXIS 17458, at *5-6 (S.D.N.Y. Feb. 8, 2013), the defendants "pretended to be [plaintiff], exaggerating [his] accent and saying inappropriate things," a far cry from Plaintiff's allegations that various administrators told her she spoke too fast. In *Altman v. N.Y. City Dept. of Educ.*, 06 Civ. 6319, 2007 U.S. Dist. LEXIS 91348, at *10-22 (S.D.N.Y. Dec. 12,

---

[2]     To the extent Plaintiff's affidavit contradicts her deposition testimony, it should be disregarded for the reasons set forth in Point I above.

2007), the court found that the defendant's correction of certain of plaintiff's words, who was teaching an English class, <u>did not</u> raise an inference of discriminatory intent.

### C. Plaintiff's Various Theories Are Illogical And Contrary To The Evidence

Plaintiff's allegation that Lopez was "rehired into Bacchus' full-time position" is contradicted by the evidence. Lopez could not have been hired to fill Plaintiff's position because Lopez was re-hired months before Plaintiff was terminated. *See* Defs. 56.1 Stmt. ¶¶ 12, 82. Further, Plaintiff's allegations that Pepper and Thompson wanted to terminate Plaintiff before January 2011, that the OSI investigator "thwarted that effort when she rejected the pressure to substantiate the fabricated charge," that Pepper solicited "fabricated statements from students in January 2011," and that Pepper "realized the allegations of spitting was too far-fetched to be believed" are wholly conclusory and not supported by any evidence.

There is also no evidence that Plaintiff was treated differently from the other school aides. Non-West Indian school aides received counseling memos, were made to undergo medical examinations, and lifted heavy boxes. *See* Defs. 56.1 Stmt. ¶¶ 23, 24, 28; Defs. Reply 56.1 Stmt. ¶ 5. Further, Plaintiff contends that she was treated disparately from all of the other school aides, including Parbatie "Donna" Arjoon, a West Indian school aide (who is from Guyana, *see* Declaration of Parbatie Arjoon dated October 2, 2014). Being treated differently from Arjoon refutes any notion that the basis for this "disparate" treatment was national origin. Moreover, Plaintiff's allegation that Lopez was not reprimanded for failure to properly supervise students is without merit. There is no evidence of any allegations of corporal punishment or verbal abuse against Lopez. *See* Defs. Reply 56.1 Stmt. ¶ 19.

Plaintiff posits that the same actor inference is not applicable when there is a gap of two years between the hiring and firing. The Second Circuit, however, has not prescribed a set time period after which the same actor inference does not apply and has indeed found it

"highly relevant" that a plaintiff was fired by the same individual who had hired him three years earlier. *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000). Notably, the time gap in this case may be far shorter because Plaintiff contends that the alleged "conspiracy" to fire her began as early as September 2009, *see* Second Amended Complaint ¶ 38.

### D. Plaintiff's Contention That The Numerous Complaints Of Abuse And Corporal Punishment Were Part Of Some Conspiracy Is Meritless

Indisputedly, there are numerous complaints of verbal abuse and corporal punishment from multiple students from different grades between November 2009 and February 2011, three of which were reported to administration by adults, as well as documented instances of insubordination and unsatisfactory work performance. Plaintiff's conclusory allegations that these complaints were fabrications, that the administration "manipulated" students into making complaints, and that other school aides committed similar misconduct but were not disciplined have no evidentiary support and cannot overcome the extensively documented evidence of Plaintiff's misbehavior that led to her termination. *See Powell v. Consolidated Edison Co. of N.Y., Inc.*, 97 Civ. 2439, 2001 U.S. Dist. LEXIS 2706, at *41-42 (S.D.N.Y. Mar. 12, 2001) ("[Plaintiff's] subjective belief that a supervisor had an improper motive is not evidence at all, and generalizations about the allegedly tolerated misbehavior of others are insufficient to allow a jury to make a finding of improper motivation, where the record contains no evidence that … specific incidents leading to disciplinary action were sufficiently comparable to episodes involving others to permit a meaningful comparison …").[3]

Plaintiff's claim that Thompson and Pepper did not adequately investigate the verbal abuse and corporal punishment allegations made against her does not demonstrate pretext.

---

[3] Plaintiff's allegation that the arbitrator was "biased" is similarly unsupported.

*Robinson v. Zurich N. Am. Ins. Co.*, 892 F. Supp. 2d 409, 430 (E.D.N.Y. 2012).[4] Moreover, Plaintiff's claim that she had a satisfactory performance record prior to 2009 cannot be used as a shield to protect her from the consequences of her unsatisfactory performance. *Taylor v. Polygram Records*, No. 94 Civ. 7689, 1999 U.S. Dist. LEXIS 2583, at *39 (S.D.N.Y. Mar. 5, 1999).

## POINT IV
### THERE IS NO EVIDENCE OF A HOSTILE WORK ENVIRONMENT

Plaintiff's allegations that Pepper yelled at her and scrutinized her work and that Thompson made a stray remark to people other than Plaintiff about having a problem with West Indians constitute, as a matter of law, the sort of petty slights and personality conflicts that are not actionable. *Urban v. Capital Fitness,* 08-cv-3858, 2010 U.S. Dist. LEXIS 124307, at *29-30 (E.D.N.Y. Nov. 23, 2010) ("[A] hostile work environment is not synonymous with an unpleasant, harsh, combative or difficult work environment.") (internal quotation marks omitted); *Wilson v. N.Y.P. Holdings, Inc.,* 05 Civ. 10355, 2009 U.S. Dist. LEXIS 28876, at *82 (S.D.N.Y. Mar. 31, 2009) (finding that references to black female employees as "whores," "sluts," and "girls," among other things, over a number of years did not constitute a hostile work environment under the NYCHRL).

## POINT V
### THERE IS NO EVIDENCE OF RETALIATION

---

[4] The facts here are significantly different than those *in Ibraheem v. Wackenhut Servs.*, 09-CV-5335, 2014 U.S. Dist. LEXIS 64475, at *31-32 (E.D.N.Y. May 9, 2014). Here, a disciplinary hearing took place in which the student victim who had her hair pulled testified and was found to be "very credible" while Plaintiff was "less than credible in her testimony." *See* Defs. 56.1 Stmt. ¶¶ 49, 51; *Schnabel*, 232 F.3d at 90 (mandating "a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.") (internal quotations omitted).

Contrary to Plaintiff's claim, there is no direct evidence of retaliation. Plaintiff now alleges that after she filed her complaints of discrimination, Pepper "angrily made threatening retaliatory comments" to her. *See* Pl. Opp. at 30. Plaintiff testified, however, that Pepper said to her "you filed a complaint with Office of Equal Opportunity. Now it's not going to do no good. You still have to go downstairs and unpack those boxes." *See* Martin Reply Decl., Ex. HHH at 85:16-86:4. When asked at her deposition whether Pepper said anything else, Plaintiff testified, "That's what she said. She just walk out of the copy room and left." *Id.* She further testified that Pepper made a similar comment after Plaintiff filed a complaint with the NYSDHR. *Id.* at 108:13-23.[5] Plaintiff only now claims that these remarks were said "angrily," *see* Pl. Aff. at 10, which should be rejected for the reasons set forth in Point I above, and they can hardly be considered "threatening."

Finally, Plaintiff claims that Pepper supposedly continued the actions that had already been occurring, i.e., allegedly fabricating additional student statements, coercing students to make false complaints, overly scrutinizing her work, and yelling at her, *compare* Second Amended Compl. ¶ 44(a) – (e) with ¶ 41(a) – (m) and ¶ 47(a) - (f), are not evidence of retaliation as the alleged conduct was nothing more than a continuation of what had already been occurring before the supposed protected activity. Plaintiff cannot now claim that these actions were caused by her complaint of discrimination.[6]

---

[5] Plaintiff also testified that no one else at PS 295 said anything to her regarding her EEO complaint or her NYSDHR complaint. *See* Martin Reply Decl., Ex. HHH, at 86:5-7, 108:24-25.

[6] Notably, Plaintiff fails to address the inherent contradiction in her argument that on the one hand the school administration was planning on firing her as early as September 2009 in order to rehire Lopez but on the other hand fired her in retaliation for filing complaints of discrimination.


## CONCLUSION

For the foregoing reasons and for the reasons set forth in the City Defendants' moving papers, the motion for summary judgment should be granted and Plaintiff's second Amended Complaint dismissed in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 3, 2014

ZACHARY W. CARTER
Corporation Counsel of the
 City of New York
Attorney for Defendant
100 Church Street, Room 2-102
New York, New York 10007-2601
(212) 356-2444

By: _____/s/_____
Kathryn E. Martin
Senior Counsel