UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MERLENE BACCHUS,

        Plaintiff,

-against-

THE CITY OF NEW YORK, RENÉE PEPPER and BOARD OF EDUCATION EMPLOYEES LOCAL 372, DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO,

        Defendants.

Case No.: 12-cv- 1663 (PKC)(MDG)

*SERVED ON AUGUST 22, 2014*

---

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
*UNION DEFENDANTS'* MOTION FOR SUMMARY JUDGMENT

---

Vincent I. Eke-Nweke, Esq.
Law Office of Vincent I. Eke-Nweke, P.C.
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF CONTENTS | i |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 1 |
| ARGUMENT | 5 |

I. BACCHUS' DFR CLAIMS BASED ON THE UNIONS' ACTIONS OR INACTIONS RELATIVE TO THE TERMINATION GRIEVANCE ARE NOT STATUTE BARRED..................8

II. THE UNIONS' ADMITTED FAILURE TO INVESTIGATE BACCHUS' TERMINATION GRIEVANCE AND THE DECISION NOT TO PROCEED TO ARBITRATION CONSTITUTE BREACH OF DFR AS A MATTER OF LAW..................10

    A. The Unions' Admitted Failure to Investigate Was Arbitrary And Seriously Undermined The Arbitral Process Therefore Constituted A Breach Of DFR..................10

        1. The Unions' Argument That Bacchus Can Not Demonstrate That The Unions Breached The Duty Of Fair Representation Under The Taylor Law And NYCCBL Is Misplaced..................13

    B. The Unions' Conduct Was Arbitrary, Discriminatory And In Bad Faith..................14

CONCLUSION..................15

Plaintiff Marlene Bacchus ("Plaintiff" or "Bacchus") submits this Memorandum of Law in opposition to the motion by defendants Board of Education Employees Local 372, District Council 37 and American Federation of State, County and Municipal Employees, AFL-CIO ("Unions" or"Union Defendants) pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment.

## PRELIMINARY STATEMENT

The Second Amended Complaint in this action alleges discrimination, hostile work environment and retaliation claims pursuant to the Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law, Executive Law § 269 *et seq.* ("Human Rights Law") and the New York City Civil Rights Law ("City Law") against the City of New York[1] (the "City") and Renée Pepper ("Pepper") (together DOE defendants") as well as claims against the DOE and the Unions pursuant to the New York Civil Service Law Article 14 - Public Employees' Fair Employment Act, § 209-a (2) © ("Taylor Law") and the New York City Collective Bargaining Law (Administrative Code of the City of New York) § 12-306 (b) (1) and (3) ("NYCCBL") for breach of Collective Bargaining Agreement ("CBA") and the Unions' duty of fair representation (DFR"), respectively.

## STATEMENT OF FACTS

Bacchus respectfully refers the Court to her accompanying (I) Affidavit in Opposition to the instant motion ("Bacchus Opp. Aff"), (ii) Statement of Disputed Material Facts ("Plaintiff's Rule

---

[1] Pursuant to the So Ordered Stipulation of the parties dated July 20, 2012 (Dkt. # 16), the City was dismissed as a party to this action and plaintiff granted leave to further amend complaint to, *inter alia,* add the New York City Department of Education ("DOE") as a Defendant to this action. On August 27, 2012, plaintiff filed a Second Amended Complaint (Dkt. # 20) naming the DOE a defendant in the action. However, the caption to the action has not been formally amended to reflect DOE as a party defendant.

56 Counter Statement") and (iii) the Affidavit ("Bacchus Aff.") and (iv) Statement of Undisputed Material Facts ("Plaintiff's Statement") she submitted in support of her motion for partial summary judgment against the Unions as well as Plaintiff's Statement of Disputed Material Facts Pursuant to Rule 56.1 ("Plaintiff's Disputed Statement") submitted in opposition to the DOE defendants' motion for summary judgment (all of which are hereby repeated and incorporated herein by reference), for a complete recitation of the material facts.

Bacchus further incorporates herein by reference, relevant portions of the facts and argument contained in the Memoranda of Law she submitted in support of her motion for partial summary judgment against the Unions and in opposition to the DOE defendants' motion for summary judgment, respectively.

It is undisputed that the DOE terminated the employment of Bacchus on March 11, 2011, on the alleged grounds that Bacchus called a sixth grade student named AA[2] "fat boy." Pepper alleged that Bacchus called AA "fat boy" while AA and CT, another sixth grader, were having a verbal altercation in the auditorium. (Plaintiff's Statement ¶¶16-18) Without conducting any investigation into the "fat boy" allegation, Pepper concluded in her February 3, 2011, report to the DOE's Office of Special Investigations ("OSI"), that "Bacchus called AA "fat boy'" (Pepper Exh. 53) and suppressed all exculpatory evidence that disproved such conclusion. Such exculpatory evidence, included but was not limited to, a written statement obtained from CT about the "fat boy" allegation. Pepper suppressed the statement and did not disclose its existence until July 1, 2013 after her initial deposition where she testified as follows with respect to any statement obtained from CT:

---

[2]Pursuant to Fed. R. Civ. P. 5.2(a)(3), the students mentioned in this memorandum, and accompanying affidavit and Plaintiff's Statement are identified by their initials.

| Q. | Did you ask [CT] if he or she overheard Ms. Bacchus call the alleged victim hey fat boy? |
|---|---|
| A. | **I don't recall.** |
| Q. | Did [CT] make any statement with respect to this incident? |
| A. | **If it's not here, then no, I don't know.** |
| Q. | So if the alleged victim told you that [CT] was close to him, why is it that a statement was not obtained from [CT]? |
| A. | **I'm telling you that I don't know.** (Pepper Tr. 194) |

Unbeknown to Bacchus and her union representative, Phyllis Wambser ("Wambser"), CT made a written statement dated February 3, 2011, about the "fat boy" allegation in which he stated as follows in relevant parts:

> "I tried to tell [Ms. Bacchus] but all she said was what is he doing to you[?] So I told her can you move [him] but all she said was set down **and then she told A[A] to move but he didn't so she turned her head and didn't do nothing.**" (emphasis added)

(Pepper Tr. 248-251, Exh.49; O'Connell Tr. 155, 164-176).

In addition to CT's statement, Pepper and O'Connell also suppressed until July 1, 2013, other exculpatory statement obtained from students in connection with the alleged investigation into the "fat boy" allegation. The statements in question do not state that Bacchus called AA "fat boy". (Pepper Exhs. 50-52). Rather, the statement by the student known as EA clearly indicates that School Safety Agent ("SSA") Parker was very close to AA when he was allegedly called "fat boy." EA's statement dated February 2, 2011, states in relevant parts, "[w]hen C[T] told Ms. [Bacchus] she ignored him, **so then he went to Ms. Parker and she talked to us about it. Then Ms. Parker told A[A] to move from the seat.**" (emphasis added) (Pepper Exh. 52 D001382)

Despite the fact that SSA Parker was in the same vicinity as AA at the time in question, Pepper did not interview Parker nor obtain a statement from her in connection with her investigation

3

of the "fat boy" charge. Rather, Pepper testified that she did not ask any SSA officer if the officer heard Bacchus call a student "fat boy" because the "SSA was way on the other side [of the auditorium]" or because she usually stands in the back of the auditorium. (Pepper Tr. 183-184) Pepper further testified that they don't question the SSA unless the SSA is involved in the investigation and that her investigation did not disclose that the SSA was involved.(Pepper Tr. 204, 260-261, Exh. 52; Bacchus Aff. ¶ 12)

Also, Pepper acknowledged that Bacchus informed her that she was with her co-worker, Donna Arjoon at the time in question and testified that she interviewed Ms. Arjoon about the "fat boy" allegation but claims she did not obtain a statement from Ms. Arjoon because Ms. Arjoon said she didn't hear anything. (Pepper 181, 213, Plaintiff's Statement ¶¶18-24)

Pepper allegedly concluded that the "fat boy" charge was substantiated based solely on the statements she allegedly obtained from AA and two female witnesses named JM and KR (Plaintiff's Statement ¶¶ 38-68). Pepper failed to obtain and/or disclose statements obtained from CT, EA, JS, SSA Parker and Ms. Arjoon nor disclose any relevant surveillance video footage in her investigation of the "fat boy" allegation. And the Unions did not attempt to interview said individuals nor request the school Administration to interview them.

Following the termination of Bacchus, on or about September 23, 2011, Bacchus and Wambser (as well as Craig Dickerson ("Dickerson") who attended as a non-participant observer) attended a Step 3 hearing on the discharge grievance. The Union did not present any evidence on behalf of Bacchus at the Step 3 hearing. Also, neither Wambser nor Dickerson submitted any written material, witness statement or evidence which corroborated Bacchus' version of events nor call any witness in support of her defense. Rather, Wambser relied upon copies of the same students'

statements, allegedly written by JM, AA and KR as well as copies of Bacchus' rebuttals dated February 16, 2011 and May 1, 2011, to represent Bacchus at the Step 3 hearing. (Plaintiff's Statement ¶¶ 42-44)

While at the September 2011 grievance hearing, both Wambser and Dickerson informed Bacchus that the Unions would take her termination grievance to arbitration. As a result, from September 2011 through early March 2012, Bacchus assumed that her termination grievance had been taken to arbitration. However, on or about March 8, 2012, when Bacchus contacted the Unions by telephone to inquire about the status of such arbitration, Dickerson informed plaintiff, for the first time, that the Unions decided not to take the grievance to arbitration and that a "20-day letter" was allegedly mailed to Bacchus in November 2011. Bacchus told Dickerson that she never received the alleged 20-day letter. Subsequently, on or about March 22, 2012, Bacchus received in the mail, a copy of the alleged 20-day letter dated November 10, 2011 together with a copy of a memorandum dated November 4, 2011, by which the Unions' Legal Department recommended that the termination grievance not proceed to arbitration. **(Bacchus Tr. 150-151)** The alleged 20-day letter states in relevant parts:

> If you do not agree with this recommendation, you have twenty (20) working days, from the date of this letter to contact **your Representative Craig Dickerson ... to schedule a meeting to discuss this matter. If you do not respond within 20 days, your case will be closed.** (Emphasis added)

(Cabranes Tr. Exh. 23; Plaintiff's Rule 56 Counter Statement ¶44)

The Unions admittedly allegedly mailed the 20-day letter to: "146-47 **160th** Avenue, 1st Floor, Jamaica, New York 11435", a wrong address where Bacchus never resided. It is undisputed that the alleged the 20-day letter and the memorandum dated November 4, 2011 were never received by

5

Bacchus until March 2012. (*Id* at ¶¶ 17, 41)

Upon receipt of the alleged 20-day letter and memorandum dated November 4, 2011, on or about March 22, 2012 -- more than 20 days from the date on the letter -- Bacchus contacted Dickerson as she was instructed to do by the 20-day letter. Dickerson informed Bacchus that the termination grievance can no longer proceed to arbitration because 21 days had elapsed from the date on the face of the 20 day letter and that nothing could be done about the grievance. (Plaintiff's Rule 56 Counter Statement ¶42(e)) At the time, it was the Unions practice, that whenever a member failed to contact the Unions following the issuance of a 20-day letter, such member's union representative would contact the member to find out from the member if he or she received the 20-day letter, or why there was no response from the member or what the member wants to do regarding arbitration. However, in this case, Dickerson and the Unions did not contact nor make any attempt to contact Bacchus following the purported mailing of the 20-day letter in November 2011 to Bacchus. *Id* at ¶¶ 19, 42(a) and (b). Contrary to the Unions' practice as testified by Myna Cabranes (Cabranes Tr. 97-99), Dickerson testified as follows with respect to his admitted failure to contact Bacchus following the alleged 20-day letter:

> Q. If Ms. Bacchus hadn't contacted you in March 2012, would have contacted her with respect to the 20 day letter?
> A. **No.**
>
> Q. Why not?
> A. **Because at that time my caseload was extremely heavy.** (Dickerson Tr. 47:8-14)

As set forth in the Unions memorandum dated November 4, 2011, the Unions' decision not to proceed to arbitration with Bacchus' termination grievance was "[b]ased on the employer's investigation of the incident,..." Cabranes Tr. Exhibit 23. Not only did the Unions not conduct any

investigation into the alleged "fat boy" incident and other allegations of misconduct brought against Bacchus, they also, failed to interview or obtain any statement from CT, EA, JS, SSA Parker or Ms. Arjoon or request the school Administration to interview such persons and also prevented[3] Bacchus from conducting her own investigation into the allegations and repeatedly cautioned Bacchus not to seek to obtain witness statements from adults. (Bacchus Tr. 66:9-16; Bacchus Aff. Eke-Nweke Decl. Exh. 9(a) pp. 16-19:25-17:24)

---

[3] The conference participants were partly recorded follows:

| | |
|---|---|
| Bacchus: | **Do these parents have any knowledge of all allegations made against me, the kids parents?** |
| Wambser: | Parents are not required unless they are the ones reporting. |
| Thompson: | Reporting. |
| Wambser: | Nor should you. I will caution you again Ms. Bacchus, we have signed the paperwork that we are taking copies, okay of all of this and we will need to sign a new one for this one that we will have no conversation whatsoever with any of these.<br>What you need to know Ms. Bacchus, okay, is that if any severe disciplinary comes from this and you, okay end up where you're in an arbitration, these children have to come forth and testify. |
| Bacchus: | **And their parents would be subpoenaed to come to court.** |
| Wambser: | Parents have nothing to do with this. |
| Bacchus: | **Okay but they're minors.** |
| Wambser: | The children still get subpoenaed. The children still have to forth and testify, okay? |
| Bacchus: | Okay. |
| Wambser: | I caution you and advise you clearly, do not have any conversation with any parent of any student in this -- .... |
| Thompson: | Please, also remind her about conversations about these issues and people that work in the building. |
| Wambser: | You're being very -- you're putting yourself in a lot, a lot of harms way with anyone in this building about what goes on --. |

(Eke-Nweke Decl. Exh. 9(a) pp. 16-18:19)

# ARGUMENT

## I

## BACCHUS' DFR CLAIMS BASED ON THE UNIONS' ACTIONS OR INACTIONS RELATIVE TO THE TERMINATION GRIEVANCE ARE NOT STATUTE BARRED

"Under New York law, a claim against a union for violating the duty of fair representation is subject to a four-month statute of limitations." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2nd Cir. 2006). "The four-month limitations period begins to run when: (1) the plaintiff knew or should have known of the union's breach of its duty of fair representation; or (2) the plaintiff suffered harm from that breach, whichever is later." *Gertskis v. New York City Dep't of Health & Mental Hygiene*, 375 Fed. Appx. 138 (2nd Cir. 2010) (citing N.Y. C.P.L.R. § 217(2)(a)). *See also*, *Straker v. Metro. Transit Auth.*, 2005 U.S. Dist. LEXIS 30956 *13, (E.D.N.Y. Dec. 5, 2005) ("Under New York law the statute of limitations for a public employee's DFR claim is four months [which] begins to run on the date the employee or former employee knew or should have known that the breach has occurred, or [on] the date the employee or former employee suffers actual harm, whichever is later.") (internal quotation marks and citation omitted).

It is well settled in the Second Circuit that "a cause of action accrues when the plaintiff could first have successfully maintained a suit based on that cause of action." *Ghartey v. St. John's Queens Hosp.*, 869 F. 2d 160 at 163 (2nd Cir. 1989). *See also*, *Straker*, 2005 U.S. Dist. LEXIS at *16 (holding that "a union member could not maintain a DFR claim based on the union's interference with a witness until that interference had resulted in some concrete harm, namely, an adverse arbitration decision."); *Rosario v. Local 1106 Transp. Works of America*, 2014 U.S. Dist. LEXIS 9691 *12-13 (E.D.N.Y. Jan. 27, 2014), ("Where [] the Union's alleged breach of duty was the subject matter of

8

a grievance that ran its full course, the issuance of the final disposition commences the statute of limitations.").

In this case, Bacchus could not have successfully sued the Unions for breach of the Unions' DFR at any time prior to March 22, 2012 -- the date Bacchus was first notified that her termination grievance would not be pursued to arbitration. Therefore, the DFR claim in this action was timely commenced as of April 4, 2012, because the applicable four-month statute of limitations began to run on or about March 22, 2012. *See, Ghartey* 869 F. 2d at 165 (holding that "[w]here a union refuses or neglects to assist a union member,...a breach of duty by the Union is apparent to the member at the time she learns of the union action or inaction about which she complains.") (citations omitted). *See also, Demchik v. General Motors Corp.*, 821 F. 2d 102, 105-06 (2nd Cir. 1987)(plaintiff's claim based on union's withdrawal of grievance began to accrue when plaintiff learned the claim had been withdrawn on the merits as opposed to administratively); *Jackson v. New York City Transit*, 2005 U.S. Dist. LEXIS 25111 *(E.D.N.Y. Oct. 19, 2005)(plaintiff's cause of action for breach of DFR accrued from the date plaintiff knew the union refused to pursue his grievance.); *Davis v. Holliswood Care Center*, 858 F. Supp. 18 (S.D.N.Y. 1994) (DFR cause of action accrued when plaintiff discovered the union had declined to pursue arbitration of his termination); *Rosario*, 2014 U.S. Dist. LEXIS 9691 *13 (finding that DFR claim was statute barred where plaintiff's action was commenced over two and half years following plaintiff's knowledge that the Arbitrator denied her grievance.); *Kalyanaram v. AAUP at NYIT*, 742 F. 3d (2nd Cir. 2014)("Where a union purports to fulfill its duty of fair representation during the hearing process, the requisite knowledge generally will not be inferred prior to the [termination of the process]."

9

Therefore, contrary to the Unions' argument, all the Unions' actions, inactions or events that relate to Bacchus' termination grievance --including but not limited to the Unions' failures to investigate the termination grievance, interview witnesses, request the school Administration to interview witnesses and/or produce video footage -- are within the statue of limitations and any of such actions, inactions or events can properly support a finding that the Unions breached the DFR they owed to Bacchus.

## II

### THE UNIONS' ADMITTED FAILURE TO INVESTIGATE BACCHUS' TERMINATION GRIEVANCE AND THE DECISION NOT TO PROCEED TO ARBITRATION CONSTITUTE BREACH OF DFR AS A MATTER OF LAW

As previously submitted, in order to establish a breach of DFR against a union, a plaintiff must prove two elements, firstly, that the union's conduct was "arbitrary, discriminatory or in bad faith." *Barr v. United Parcel Service, Inc.*, 868 F.2d 36, 43 (2nd Cir. 1989) *cert. denied*, 493 U.S. 975 (1989), (quoting *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Secondly, the unions conduct must in fact have "seriously undermine[d] the arbitral process." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567, 96 S.Ct. 1048,(1976).

### A. The Unions' Admitted Failure to Investigate Was Arbitrary And Seriously Undermined The Arbitral Process Therefore Constituted A Breach Of DFR

"Several courts have held that the failure to fairly and adequately pursue an investigation of a grievance may satisfy [the arbitrary conduct] test and constitute a breach of the duty of fair representation, for this failure may undermine the integrity of the arbitral process." *Gold v. Local Union No. 888*, 758 F. Supp. 205, 207-08 (S.D.N.Y. 1991) (citing *Hines*, 424 U.S. at 567). "When a union ignores or perfunctorily presses a meritorious claim, it is held to have acted arbitrarily."

10

*Samuels v. Air Transport Local 504* 992 F. 2d 12 at 16 (2nd Cir. 1993) (union's conduct was arbitrary and undermined the arbitral process where the union "neglected to discuss the case or possible witnesses with [plaintiff] until the day of the hearing"). *See also, Gorwin v. Local 282*, 1997 U.S. Dist. LEXIS 3822 * 17 (S.D.N.Y. Apr. 1, 1997). ("[E]xamples of arbitrary behavior include the union's ignoring or perfunctorily pressing a meritorious claim."); *Young v. U.S. Postal Serv.* 907 F. 2d 305 at 308 (2nd Cir. 1990)("A breach occurs when the union handles a meritorious grievance ... in a perfunctory fashion.")(internal quotation marks omitted); *Tenorio v. N.L.R.B.*, 680 F.2d 598, 601, (9th Cir. 1982) (to comply with its DFR, a union must conduct some minimal investigation of grievances brought to its attention); *Moore v. Roadway Express, Inc.*, 07-cv-977, 2008 U.S. Dist. LEXIS 64886 at *16 (concluding that plaintiff's allegation that the Union failed to investigate plaintiff's grievances stated a claim for breach of DFR); *Thomas v. Little Flower for Rehab. & Nursing*, 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011)(holding that an allegation of a failure to perform any investigation after notice of a grievance plausibly alleges a breach of the DFR); *Lapir v. Maimonides Medical Center*, 750 F. Supp. 1171 (E.D.N.Y. 1990) (a union's handling of an employee's grievance must meet certain minimum standards of competence and fairness).

In this case, the written statements from CT, EA and JS – presumably, said students were asked to state whether or not they overheard Bacchus allegedly call AA "fat boy" -- do not anywhere state that any of the students over-heard Bacchus call AA "fat boy." Similarly, Pepper testified that she interviewed Ms. Arjoon and that she stated that she didn't hear any thing. In other words, Ms. Arjoon said she did not hear Bacchus call AA "fat boy." It is therefore reasonable to conclude that Bacchus' grievance was meritorious since there was ample evidence that would have corroborated Bacchus' testimony that she did not call AA "fat boy." Given the Unions' admitted failure to

investigate and the availability of potential exculpatory and/or corroborative testimony from CT, EA, JS and Ms. Arjoon, Bacchus is entitled to summary judgment on her DFR claim. Summary Judgment is warranted because as a result of the Unions' inactions Bacchus lost the right to have her grievance arbitrated before an independent arbitrator. *See Yearwood v. New York Presbyterian Hosp.*, 2014 U.S. Dist. LEXIS *29-30 (E.D.N.Y. Apr. 23, 2014)(granting summary judgment against the Union where "[t]he consequence of the Union's inaction [was] to forfeit the right to arbitrate [plaintiff's] claim.").

It is significant to note that the statements obtained from CT, EA and JS, each contains sufficient factual details and context from which it could be readily inferred that said students actually witnessed the verbal altercation between CT and AA but did not hear Bacchus allegedly call AA "fat boy." In contrast, the "fat boy" allegation contained in the statements allegedly obtained from AA, JM and KR, appears to have been added as an "after-thought" or addendum without any factual detail or context sufficient to warrant a reasonable inference that the allegation was true.

Union Defendants' reliance on the cases of *Lettis v. United States Postal Serv.*, 39 F. Supp. 2d 181, (E.D.N.Y. 1998), *Mullen v. Benova*, 1999 U.S. Dist. LEXIS 16434 (S.D.N.Y. Oct. 26, 1999) and *Phillips v. Lenox Hill Hospital*, 673 F. Supp. 1207 (S.D.N.Y 1987) is misplaced because the facts and circumstances of those cases are not applicable here. As demonstrate above, the statements obtained from CT, EA, JS, Ms. Arjoon coupled with Bacchus' sworn testimony that she did not call AA "fat boy" constitute sufficient proffer that their testimony would have affected the outcome any arbitration in Bacchus' favor. Thus, the Unions seriously undermined the arbitral process by failing to obtain and/or request Administration for statements from CT, EA, JS, and Ms. Arjoon thereby foreclosing the opportunity to arbitrate Bacchus' termination grievance. *See Young v. U.S. Postal*

*Serv.* 907 F. 2d 305 at 308 (2nd Cir. 1990)(recognizing "that a union may breach its duty when it fails to process a meritorious grievance in a timely fashion with the consequence that arbitration on the merits is precluded.")

Similarly, the Unions' argument that Bacchus was allegedly familiar with the Unions' internal procedures or that she did not request the Unions in writing to interview or obtain witness statements from her co-workers, students and other adults is without merit. There is no evidence that the terms of the CBA required Bacchus to submit only written requests to the Unions or to comply with the Unions' internal procedures. *See Clarke v. Communs. Workers of Am.*, 318 F. Supp. 2d 48, 58 (E.D.N.Y. May 2004) (denying grant of summary judgment to the Unions partly because the CBA did not require that a member's complaint to the union must be written.).

### 1. *The Unions' Argument That Bacchus Can Not Demonstrate That The Unions Breached The Duty Of Fair Representation Under The Taylor Law And NYCCBL Is Misplaced*

Bacchus reiterates her contention that this Court, per Honorable William F. Kuntz, II, previously held in this case that "[u]nder New York law, public sector unions owe a duty of fair representation to their members....[and that such] such duty is codified in the Taylor Law, *New York Civil Service Law §§203, 209-a(2)*, and New York City Collective Bargaining Law [], *New York City Administrative Code § 12-306(b)(1) and (3))*." 2013 U.S. Dist. LEXIS 47628 *6 (E.D.N.Y. Mar. 29, 2013). Also, as recognized by the Court in *Cunningham v. Local 30, Int'l Union of Operating Engrs.*, 234 F. Supp. 2d 383 at 398 (S.D.N.Y 2002), "New York courts have followed the same general standard as federal courts in weighing claims by public employees alleging breaches of duty of the duty of fair representation." Therefore, Bacchus' breach of DFR claim is appropriately evaluated under the same standards as federal courts.

13

## B. The Unions' Conduct Was Arbitrary, Discriminatory And In Bad Faith

The DFR requires that a union must "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Klaper v. Cypress Hills Cemetery*, 2012 U.S. Dist. LEXIS 38651 *23 (E.D.N.Y. March 2012) (quoting *Air Line Pilots Ass'n. Int'l v. O'Neill*, 499 U.S. 65, 76, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991)). "A showing of bad faith requires a showing of fraudulent, deceitful, or dishonest action." *White v. White Rose Food*, 237 F. 3d 174 at 179 (2nd Cir. 2001)(internal quotation marks omitted.) See also, *Moore v. Roadway Express, Inc.*, 07-cv-977, 2008 U.S. Dist. LEXIS 64886 at *11 (E.D.N.Y. 2008)

In this case, evidence of deceitful, dishonest and misleading conduct is abound in the record. Firstly, the Unions connived with Thompson in preventing Bacchus from gathering evidence and interviewing potential witnesses, such as, co-workers and parents of students alleged to be witnesses or victims of fabricated allegations of corporal punishment or verbal abuse, see Plaintiff's Statement ¶47. Secondly, the Unions by and through Wambser repeatedly sided with the Administration's position, undermined Bacchus' defense to the fabricated allegations of misconduct, and unfairly criticized, scolded or antagonized Bacchus in the presence of Thompson or Pepper. *See Id.* at ¶¶ 58-63, 67, 69. Thirdly, the Unions through Wambser and Dickerson represented to Bacchus that her grievance would be pursed to arbitration. Unbeknown to Bacchus, the Unions abandoned the grievance. In March 2012, when Bacchus contacted the Unions about the grievance, Dickerson represented to her that a 20-day letter together with memorandum dated November 4, 2011, by which the Unions allegedly declined take the grievance to arbitration had allegedly been mailed to Bacchus at an address where Bacchus never resided.

14

The Unions now claim by counsel's argument only, and without any evidentiary support, that the purported mailing of the so-called 20-day to a wrong address was a clerical mistake. Such argument should be rejected by the Court as it is not supported by any evidence. Given the Unions' admitted departure from its usual practice to contact a member who had been sent a 20-day letter and the undisputed fact that the Unions did not make any attempt to contact Bacchus following the purported mailing of the 20-day letter, a jury can reasonably infer that the purported 20-day letter and memorandum were generated in March 2012 solely as a "cover-up" for Unions' abandonment of Bacchus' grievance.

Therefore, there is a question of fact regarding whether the Unions' conduct was in bad faith.

## CONCLUSION

In view of all the foregoing, Bacchus respectfully requests that the Unions' motion for summary judgment be denied in its entirety.

Dated: August 22, 2014
Brooklyn, New York

Respectfully submitted,

LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C.

By: _____
Vincent I. Eke-Nweke (VE 5282)
Attorney for Plaintiff MERLENE BACCHUS
498 Atlantic Avenue
Brooklyn, New York 11217
(718) 852-8300