UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

MERLENE BACCHUS

                     Plaintiff,

           - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION; DISTRICT COUNCIL 37,
AFSCME, AFL-CIO; BOARD OF
EDUCATION EMPLOYEES LOCAL 372;
and RENEE PEPPER,

                    Defendants.[1]

-------------------------------------------------------X

**MEMORANDUM & OPINION**

Case No. 12 CV 1663 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Merlene Bacchus, a former school aide in the New York City public school system, brings this action against the New York City Department of Education ("DOE"), District Council 37 and its affiliate, the Board of Education Employees Local 372 (collectively "Union Defendants" or "Union"), and Renee Pepper ("Pepper"), assistant principal at Public School 259 ("PS 259").   Bacchus alleges that the DOE and Pepper violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") by embarking on a disciplinary campaign against Bacchus that resulted in her termination, subjecting her to a hostile work environment, and retaliating against her after she complained to the DOE and the New York State Division of Human Rights.   Bacchus also alleges that the Union Defendants breached their duty of fair representation to her.

---

[1]     The Court hereby amends the caption to reflect Plaintiff's voluntary dismissal of the City of New York from this case on July 23, 2012.  (Dkt. 16.)

There are three motions currently pending before the Court. The DOE and Pepper (collectively, "the City Defendants" or "the City") move for summary judgment on Bacchus's discrimination and retaliation claims. The Union and Bacchus each cross-move for summary judgment with respect to Bacchus's State and City law claims for breach of the duty of fair representation.

For the reasons set forth below, the Court grants the City Defendants' motion for summary judgment in part and denies it in part. Specifically, the Court grants summary judgment to the City Defendants on Bacchus's Title VII and NYSHRL retaliation and retaliatory hostile work environment claims; and NYCHRL retaliation and retaliatory hostile work environment claims. The Court denies summary judgment to the City Defendants on the remainder of Bacchus's Title VII, NYSHRL, and NYCHRL claims. The Court denies summary judgment to the Union and Bacchus on her State law claim for breach of the duty of fair representation. The Court dismisses Bacchus's 42 U.S.C. § 1981 claims, her breach of contract claim against the DOE, and her City law claim for breach of the duty of fair representation. Finally, with respect to the claims remaining in this case, the Court dismisses Pepper from Bacchus's Title VII claims, and the DOE from Bacchus's NYSHRL and NYCHRL discrimination claims.

## I.     BACKGROUND AND FACTS

### A.     The Union's Failure To Oppose Bacchus's 56.1 Statement

Pursuant to Local Rule 56.1(c), "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c). The Union submitted a Rule 56.1 statement in support of its summary judgment

motion (Dkt. 66, Union Defendants' Local Rule 56.1 Statement ("Union 56.1")), but failed to submit an opposing statement to Bacchus's 56.1 Statement supporting her cross-motion for summary judgment. Bacchus therefore asks the Court to deem all facts in her 56.1 Statement as uncontested. (Dkt. 77, Bacchus Reply Memorandum ("Bacchus DFR Reply"), at ECF 1–2.)[2]

"Where the party opposing a motion for summary judgment fails to submit a *proper* counterstatement of material facts, the court may choose to accept all factual allegations of the opposing part[y] as true for the purposes of deciding the motion." *Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Grp., Inc.*, No. 09 CV 3463, 2015 WL 867010, at *5 (E.D.N.Y. Feb. 27, 2015) (internal quotations and citations omitted) (emphasis in original). Alternatively, the Court may opt to conduct an assiduous review of the record. *Id.* Given the nature of the case, and the competing 56.1 statements filed on the Union's motion for summary judgment, the Court has elected to conduct such a review of the record rather than accept all factual allegations in Bacchus's 56.1 statement as true.

---

[2] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

### B.    Facts

The following facts are undisputed unless otherwise noted.[3]

####    1.    Parties and Individuals Relevant to Bacchus's Claims

Merlene Bacchus, a black woman, is of Guyanese national origin.  (DOE 56.1, ¶ 3; Pl. DFR 56.1, ¶ 1.)  She worked for the DOE as a School Aide from approximately December 1994 through March 11, 2011.  (Pl. DFR 56.1, ¶ 2.)  From about September 4, 2007 through March 11, 2011, Bacchus was assigned to PS 259, located in Jamaica, Queens.  (Pl. DFR 56.1, ¶ 3; DOE 56.1, ¶ 2).  Her duties included answering phones, making copies, maintaining book inventory, delivering books to classrooms, supervising students, and performing related work for the principal and PS 259 office staff.  (DOE 56.1, ¶ 6.)

The principal of PS 259, Angela Thompson, hired Bacchus.  (DOE 56.1, ¶ 2.)  Thompson also identified as black.  She died in January 2012 and is not a named defendant in this suit.

---

[3]    The Court bases the facts on the 56.1 statements and opposing statements filed by the parties.  The 56.1 statements pertaining to the City's motion for summary judgment are: Dkt. 56, DOE's 56.1 Statement ("DOE 56.1"); Dkt. 60, Bacchus Statement of Disputed Material Facts ("Pl./DOE 56.1 Opp."); and Dkt. 69, DOE 56.1 Reply ("DOE 56.1 Reply").  Bacchus also supplied an affidavit in support of her opposition: Dkt. 61-1, Affidavit in Opposition to Defendants' Respective Motions for Summary Judgment ("Bacchus DOE Aff.").

The 56.1 statements relevant to the Union's motion for summary judgment are:  Dkt. 66, Union Defendants' Local Rule 56.1 Statement ("Union 56.1"); and Dkt. 72, Plaintiff's Statement of Disputed Material Facts ("Pl./Union 56.1 Opp.").

Plaintiff filed a 56.1 statement in support of her cross-motion for summary judgment against the Union.  *See* Dkt. 64, Plaintiff's 56.1 Statement ("Pl. DFR 56.1").  As discussed above in Section I.A, the Union did not file a response.  Bacchus also supported her 56.1 statement with an affidavit: Dkt. 78-1, Affidavit in Support of Motion for Partial Summary Judgment ("Bacchus DFR Aff.").

Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein.  Where relevant, however, the Court may cite directly to underlying documents.

(DOE 56.1, ¶ 4.)  Defendant Renee Pepper was an Assistant Principal at PS 259.  (DOE 56.1, ¶ 13.)  Barbara Levy began working Thompson's secretary in August 2007.  (DOE 56.1, ¶ 14.)  Colleen O'Connell was a guidance counselor at PS 259; her duties included taking student statements regarding student problems or conflicts.  (DOE 56.1, ¶¶ 15–16.)  Jennifer LaBella was a teacher at PS 259.  (Dkt. 79-6 at ECF 3.)  Levy, O'Connell, and LaBella are not named as defendants in this suit.

Other school aides who worked at PS 259 during the relevant time frame included: Trina Mixon, who is black and non-West Indian; Katarzyna Lopez, who is white and of Polish national origin; Donna Arjoon, who is West Indian;[4] and Shawn Horton, who is black and non-West Indian.  (DOE 56.1, ¶¶ 7-9; Dkt. 70, Affidavit of Donna Arjoon.)  In November 2009, PS 259 laid off Lopez and Horton due to budget cuts.  (DOE 56.1, ¶ 9.)  Lopez and Horton occasionally worked as substitute aides and Lopez returned to PS 259 full-time in January 2011.  (DOE 56.1, ¶¶ 11–12.)

During her DOE employment, Bacchus belonged to the American Federation of State, County, Municipal Employees, District Council 37 ("District Council 37") and its affiliate, Local 372, and was a member in good standing.  (Pl. DFR 56.1, ¶¶ 4, 7.)  The Union officials relevant to this action are Robin Roach, General Counsel for District Council 37 (Pl. DFR 56.1, ¶ 5); Myrna Cabranes, Assistant Director of District Council 37 (Pl. DFR 56.1, ¶ 6); Phyllis Wambser, Union representative for all School Aides (Pl. DFR 56.1, ¶ 8); and Craig Dickerson, who replaced Wambser as representative upon Wambser's retirement, (Pl. DFR 56.1, ¶ 10).

A collective bargaining agreement ("CBA") between the DOE and the Union covered Bacchus's employment.  (Pl. DFR 56.1, ¶¶ 13.a–13.e.)  The CBA set forth a four-step grievance

---

[4]     Arjoon's race is not specified.

procedure. (Union 56.1, ¶ 5.) In cases of suspensions and terminations, the Union could initiate a grievance at the second level ("Step 2"). (Union 56.1, ¶ 6.) If denied at Step 2, the Union could take the grievance to a third level ("Step 3"). (Dkt. 80-5 at ECF 59.) If denied at step 3, the Union could appeal the denial and request that the grievance be arbitrated before a grievance panel. (Union 56.1, ¶ 7.) The CBA provided that "[u]pon request to the head of the school, a Union staff representative shall be permitted to meet with the employees in the unit during their non-working time, within the school, for the purpose of investigating complaints and grievances[.]" It also provided that a Union representative "shall be permitted to investigate grievances and complaints during working time provided such grievances require inspection of working conditions at the work location." (Pl. DFR 56.1, ¶ 13.b (quoting CBA, Article XX).)

The Union maintains that it has established procedures that are initiated upon the filing of a grievance by a union member. (Union 56.1, ¶ 8.) With respect to a denial of a grievance at the Step 3 level, the grievance representative submits an internal request for arbitration to one of the Union's Assistant Directors. (Union 56.1, ¶ 9.) The Assistant Director reviews the request and then forwards the case to the Union's Legal Department. (Union 56.1, ¶ 9; Pl./Union 56.1 Opp., ¶ 9.) The Associate General Counsel of the Union[5] conducts a merit review of arbitration requests sought by Union members. (Union 56.1, ¶¶ 13–15.)

2.      Bacchus's Affidavit in Opposition to the City Defendants' Motion

Before recounting the events relevant to Bacchus's claims, the Court addresses the City's objection to the July 29, 2014 affidavit Bacchus submitted in opposition to the City's motion. (DOE Reply Memo at ECF 2–4.) The City contends that the affidavit makes certain allegations that appear for the first time in the affidavit; Bacchus apparently did not raise these allegations in

_____

[5]      Roach previously occupied this position. She is now the Union's General Counsel. (Union 56.1, ¶¶ 13-15.)

her rebuttal statements to the DOE, her complaints to the DOE's Office of Equal Employment ("OEO"), her complaints to the NYSDHR, or her deposition.  (*Id*. at ECF 3.)

"[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citing *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969)).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Id*.  Thus, "statements in an affidavit filed in response to a summary judgment motion [do] not create material factual disputes where none existed without such affidavit."  *Id*. (citing *Perma Research*, 410 F.2d at 578).

Accordingly, while the Court does not reject Bacchus's affidavit in its entirety, it does reject the portions of the affidavit identified by the City as raising factual issues for the first time. Specifically, the Court disregards Bacchus's contentions that: (1) Pepper, Thompson, Levy and non-Defendant teacher LaBella made derogatory remarks or insulting comments about her national origin (Bacchus DOE Aff., ¶ 13); (2) Thompson stated that West Indian women were stupid (Bacchus DOE Aff., ¶ 15); (3) Thompson frequently corrected Plaintiff's pronunciation of words in front of staff and visitors, and stated "Merlene, what are you saying?  You sound like you're saying blah blah blah . . ." (Bacchus DOE Aff., ¶ 16.); and (4) LaBella called Bacchus an "ugly monkey" while making animal noises.  (Bacchus DOE Aff., ¶ 17.)

### 3. Bacchus's Employment at PS 259

Prior to working at PS 259, Bacchus had never had disciplinary charges brought against her.  (Dkt. 79-6, Bacchus Complaint to DOE Office of Equal Employment ("OEO Compl.") at ECF 5.)  The events relevant to her claims began in 2009, approximately a year and a half after she began working at PS 259.  From November 2009 to February 2011, Bacchus contends that

staff at PS 259 fabricated incidents against her and manipulated students into accusing her of verbal abuse and corporal punishment.

Bacchus testified that between 2009 and 2011, she frequently overheard Thompson say that she did not like West Indian women and that they could not speak English.  (DOE 56.1, ¶ 17.)  Bacchus further testified that Thompson regularly shouted at her and mocked her, that Thompson told her to "learn to speak the English language", and that Thompson, Pepper and Levy regularly mimicked Bacchus's accent and laughed at Bacchus when she spoke.  (Pl./DOE 56.1 Opp., ¶ 17.)  Bacchus also testified that LaBella would make comments about Bacchus such as "look at the mad old lady" and referred to her as "Aunt Jemima" at least twice a week.  (Dkt. 78-2, Bacchus Dep. at ECF 72.)

*Letter of Instruction*.  On May 26, 2009, Pepper met with Bacchus and union representative Wambser to discuss an incident on May 19, 2009, in which Bacchus brought a fourth-grade class from the auditorium to the students' classroom without instruction from a supervisor.  (DOE 56.1, ¶ 26.)  Bacchus disputes the incident happened as Pepper alleged.  (Pl./DOE 56.1 Opp., ¶ 26.)  Pepper issued a letter of instruction to Bacchus regarding the incident; Bacchus concedes that the letter was not a disciplinary letter.  (DOE 56.1, ¶ 27; Pl./DOE 56.1 Opp., ¶ 27.)  Pepper also issued a letter of instruction to Mixon regarding the same May 19, 2009 incident, but Bacchus contends that the letter to Mixon was an "after-thought" because it was not signed by Pepper, and Mixon received it a week after Bacchus received hers.  (DOE 56.1, ¶ 28; Pl./DOE 56.1 Opp., ¶ 28.)

*Box Dispute*.  On several occasions in September 2009, Thompson and Pepper ordered Bacchus to lift heavy boxes onto a flatbed cart.  (DOE 56.1, ¶ 18; Pl./DOE 56.1 Opp., ¶¶ 18– 19.)  Though Bacchus contends that no other school aides were asked to lift heavy boxes, the

record, including Bacchus's own OEO complaint, plainly contradicts her. (*Compare* Pl./DOE 56.1 Opp., ¶ 18 *with* Dkt. 78-11, Deposition of Katarzyna Lopez ("Lopez Dep.") at ECF 63 ("we do lift boxes") *and* OEO Compl. at ECF 3 (noting Bacchus and another aide were asked to do heavy lifting.)) Bacchus thereafter hurt her back and presented the school with a doctor's note stating that she could not lift heavy objects. (Pl./DOE 56.1 Opp., ¶ 20.) Thompson then requested that Bacchus undergo a medical examination by the DOE. (DOE 56.1, ¶ 20.) Following a DOE-ordered medical examination on December 2, 2009, Bacchus was deemed fit for duty. (DOE 56.1, ¶¶ 21–22.)

At about the same time that Bacchus was ordered for a medical examination in 2009, Thompson also requested that Trina Mixon undergo a medical examination following Mixon's refusal to carry two reams of paper. (DOE 56.1, ¶ 23.) Following a DOE-ordered medical examination on December 1, 2009, Mixon was deemed fit for duty. (DOE 56.1, ¶ 24.)

*November 23, 2009 Incident with M.P.*: A fourth-grade student, M.P., alleged that on November 23, 2009, Bacchus grabbed her by the shoulders. (DOE 56.1, ¶ 29.) Bacchus maintains that M.P.'s statement is subject to certain irregularities: (1) M.P. delayed in reporting the incident to the school, and only did so at O'Connell's behest; (2) M.P. alleged that the incident happened outside, but Thompson, Pepper and/or O'Connell could not provide an eyewitness to the incident; (3) M.P.'s statement appears to be written in at least two different handwritings; (4) M.P. reported that "it was starting to rain", but it did not rain on the date in question; and (5) a different version of M.P.'s statement omits the statement "it was starting to rain." (Pl./DOE 56.1 Opp., ¶ 29.) (*See* Dkt. 79-5 at ECF 122 ("starting to rain"); Dkt. 79-7 at ECF 18 (no mention of rain).)

*Incident with Pepper.*  On November 25, 2009, Pepper shouted at Bacchus.  (DOE 56.1, ¶ 25.)  While the City contends that Pepper disciplined Bacchus for her failure to line up students in the gym, Bacchus contends that Pepper yelled at her without cause.  (DOE 56.1, ¶ 24; Pl./DOE 56.1 Opp., ¶ 25.)

*Incidents on November 25, 2009 and November 30, 2009*:  Two fourth-grade students, M.S. and P.H., alleged that on November 25, 2009, Bacchus grabbed them by their collars and yelled, "you are in trouble."  (DOE 56.1, ¶ 32.)  Bacchus states that while the school claims that the incidents happened at the same time, the school reported them as separate incidents, and made the reports on different dates.  (Pl./DOE 56.1 Opp., ¶ 32.)

Another fourth-grade student, M.A., alleged that on November 25, 2009, Bacchus grabbed him by the wrist.  Students K.Z. and T.W. provided witness statements regarding that incident.  (DOE 56.1, ¶¶ 33–34.)  Bacchus states that T.W.'s and K.Z.'s statements contain two different kinds of handwriting; and that M.A.'s statement, which was originally given in Spanish, does not exactly match O'Connell's translation.  (Pl./DOE 56.1 Opp., ¶ 33–34.)

On November 30, 2009, the grandmother of fourth-grader I.D. called the school to report that I.D. came home crying because Bacchus had yelled at him and his class, calling them "jerks."  (DOE 56.1, ¶ 35.)  Bacchus points out that O'Connell's initial report on the incident states that I.D.'s grandmother called O'Connell personally, but during O'Connell's deposition, she maintained that the report was made to Thompson.  (Pl./DOE 56.1 Opp., ¶ 35.)

*Disciplinary Meeting on Student Allegations*.  Bacchus met with Thompson and Wambser on December 9, 2009 to discuss the allegations by students M.P., M.S., P.H., M.A. and I.D.  (DOE 56.1, ¶¶ 29, 36.)  Thompson deemed the incidents substantiated, stated that

Bacchus's actions "were a result of extreme poor judgment", and issued Bacchus a letter to file. (DOE 56.1, ¶¶ 31, 37–39.)

*December 3, 2009 Incident with J.T.*: The mother of fourth-grade student J.T. alleged that on December 3, 2009, Bacchus called him "stupid." (DOE 56.1, ¶¶ 40–41.) Bacchus states that J.T.'s mother did not speak English (Pl./DOE 56.1 Opp., ¶ 41), and O'Connell could not recall how the report was made (Dkt. 80-1, Deposition of Colleen O'Connell ("O'Connell Dep.") at ECF 8.)

On February 5, 2010, Thompson deemed the allegation substantiated and issued Bacchus a letter to file. (DOE 56.1, ¶¶ 42–43.) The letter recommended that Bacchus avail herself of the Union's Personal Service Unit for training (*id.*), but Bacchus maintains the Union had no such unit. (Pl./DOE 56.1 Opp., ¶ 42.)

*Bathroom Incident*. On January 6, 2010, Pepper asked Bacchus whether she was on the clock as Bacchus was heading to the bathroom. (DOE 56.1, ¶ 54.) Bacchus responded that she was, and then said, "Now I am being followed to the bathroom." (DOE 56.1, ¶ 54.) According to the DOE, when Bacchus returned from the bathroom, she laughed and said to Pepper, "wipe my butt." (DOE 56.1, ¶ 55.) Witness statements from O'Connell and Levy state that they heard Bacchus say, "Are you going to wipe my butt too?" (DOE 56.1, ¶ 56.) However, Bacchus maintains she never said the phrase "wipe my butt", and disputes O'Connell's presence during the incident. (Pl./DOE 56.1 Opp., ¶ 56.)

On January 15, 2010, Bacchus met with Pepper, Wambser, Thompson and O'Connell to discuss the January 6, 2010 bathroom incident. (DOE 56.1, ¶ 53.) During the meeting, Wambser told Bacchus that it was within Pepper's purview to ask whether she was on the clock, and that making a comment to a supervisor about being followed to the bathroom was not

appropriate. (DOE 56.1, ¶¶ 59–60.) Wambser recommended that Bacchus meet with the Union's Personal Service Unit for training, which Bacchus contends does not exist. (DOE 56.1, ¶ 61; Pl./DOE 56.1 Opp., ¶ 61.) It is undisputed that Bacchus did not attend any training. (DOE 56.1, ¶ 62.)

Pepper issued a disciplinary letter to Bacchus's file dated January 19, 2010, stating that Bacchus's behavior was unsatisfactory and unprofessional. (DOE 56.1, ¶ 64.) Bacchus submitted a rebuttal, denying that she had ever uttered the phrase "wipe my butt," stating that Levy, Pepper, and Thompson lied about the incident, and accusing Levy of "perjur[ing] herself to try to have [Bacchus] dismissed" and have the school aides she preferred re-hired. (Dkt. 79-6, Bacchus Letter dated 1/28/2010, at ECF 10.)

*Umbrella and Handbag Incident.* On April 15, 2010, Pepper met with Bacchus and Wambser to discuss two incidents: (1) Bacchus's use of an open umbrella while supervising students outside and her carrying a handbag while supervising students in the lunchroom; and (2) Bacchus's failure to immediately report an incident between two students. (DOE 56.1, ¶¶ 65, 68.) Bacchus states that other school aides carried their handbags and umbrellas, but that she was the only one written up for doing so. (Pl./DOE 56.1 Opp., ¶ 65; *see also* Dkt. 61-7, Bala Dep. at ECF 18; Dkt. 79-4, Pepper Dep., at ECF 22.)

With respect to the incident between the two students, a fifth grader had reported to Bacchus that another student had slapped her in the bathroom between 11:20 am and 12:00 pm, but Bacchus did not report the incident to school administrators until 2:35 pm. (DOE 56.1, ¶ 68.) Pepper found that Bacchus had failed to use good judgment by not reporting the incident immediately, but Bacchus disputes Pepper's finding, given that she made a report and that the student who reported the incident was laughing at the time of the report, and was not injured.

(DOE 56.1, ¶ 68; Pl./DOE 56.1 Opp., ¶ 68.)  Wambser pointed out that the school's incident-reporting policy did not specify that such reports should be made immediately and that Bacchus had technically complied with the policy.  (Pl./DOE 56.1 Opp., ¶¶ 68.a-68.b.)  Pepper issued Bacchus a warning letter on both incidents.  (DOE 56.1, ¶ 70.)

Bacchus notes that in 2009, a parent complained to the school that Lopez had failed to properly supervise students during a lunch period, thereby allowing one student to pull on her daughter's neck/back brace.  (Pl./DOE 56.1 Opp., ¶ 68.e.)  Pepper did not counsel Lopez, discipline her, or issue a letter to Lopez's file.  (Pl./DOE 56.1 Opp., ¶ 68.f.)  Lopez testified that she did not report or log the incident because the students were fine.  (*See* Lopez Dep. at ECF 56–57.)

### 4.    Bacchus's Suspension

Student E.S. alleged that on December 1, 2009, Bacchus pulled E.S.'s hair when she walked out of line without Bacchus's permission.  (DOE 56.1, ¶ 44.)  E.S. reported the incident after LaBella heard other students discussing it.  (DOE 56.1, ¶ 45.)  Students B.B. and R.R. provided witness statements.  (DOE 56.1, ¶ 46.)  Bacchus points to issues with the reports of the incident: (1) Thompson stated the incident happened beyond the double doors, but the statements by E.S., R.R. and B.B. indicate that it happened in the lunch room; (2) Thompson did not interview other school staff present in the lunch room; and (2) the allegation was reported to the DOE's Office of Special Investigation ("OSI") on December 10, 2009 at 2:53 p.m., but the student did not make the allegation until December 10, 2009 at 3:00 pm.  (Pl./DOE 56.1 Opp., ¶¶ 44–45.)

On January 15, 2010, Bacchus met with Thompson and Wambser.  (DOE 56.1, ¶ 47.)  Thompson deemed the allegation substantiated, and suspended Bacchus without pay for two weeks.  (DOE 56.1, ¶ 47.)

Bacchus challenged the suspension through her union.  (Union 56.1, ¶ 26.)  Roach initially declined to take the suspension grievance to an arbitration panel, and mailed Bacchus a letter stating her reasons for the declination.  (Union 56.1, ¶ 28.)  The letter was addressed to Bacchus at her residence on 106th Avenue.  (Union 56.1, ¶ 29.)  Bacchus met with Roach to contest the decision, and the Union thereafter took the suspension grievance before an arbitration panel.  (Union 56.1, ¶ 31.)

E.S. testified at the hearing, and the arbitrator found her to be "truthful and consistent with her prior written statement" and "very credible."  (DOE 56.1, ¶ 49.)  Bacchus also testified at the hearing, and denied that the incident happened.  (Pl./DOE 56.1 Opp., ¶ 49.a.)  The arbitrator found that inconsistencies in the witnesses' statements were minor and immaterial. (DOE 56.1, ¶ 50.)  The arbitrator found Bacchus "less than credible, and determined that her denial, without anything more, did not outweigh the evidence supporting E.S.  (DOE 56.1, ¶ 51; Pl./DOE 56.1 Opp., ¶¶ 49.c–49.d.)  The grievance panel denied Bacchus's grievance and upheld the suspension, with the District Council 37 grievance panelist dissenting.  (DOE 56.1, ¶ 52; Pl./DOE 56.1 Opp., ¶ 52.)[6]

### 5.    Bacchus's Termination

In February 2011, two female sixth-graders approached Pepper about issues they were having with Bacchus, and Pepper told them to write statements documenting the issues.  (DOE 56.1, ¶ 71.)  Their statements alleged that on February 2, 2011, Bacchus called another sixth-grader, A.A., "fat boy" while the class was in the auditorium.  (DOE 56.1, ¶ 72.)  Pepper asked A.A. to provide a statement, and he stated that Bacchus had called him "fat boy."  (DOE 56.1, ¶

---

[6]    Bacchus objects to the arbitrator's conclusion, in part, noting that the arbitrator had not reviewed surveillance footage of the incident.  (Pl./DOE 56.1 Opp., ¶ 50.)  The Court notes that surveillance video is not part of the record on summary judgment.

73.)  Bacchus alleges that Pepper manipulated the students into providing these statements.  (Pl./DOE 56.1 Opp., ¶¶ 71, 73.)   The school secured additional student statements on the incident, some of which Bacchus also disputes as having been coerced and/or manipulated by the school.  (DOE 56.1, ¶ 75; Pl./DOE 56.1 Opp., ¶¶ 71, 75.)[7]  Bacchus did not become aware of these additional statements until discovery was exchanged in this action.  (Pl./DOE 56.1 Opp., ¶ 75.a.)

On February 16, 2011, Pepper convened a disciplinary conference attended by Pepper, Bacchus, and Wambser.  (Pl. DFR 56.1, ¶ 14; DOE 56.1, ¶ 76.)  Pepper told Bacchus that two students had reported that Bacchus had called A.A. "fat boy" on February 2, 2011.  (Pl. DFR 56.1, ¶¶ 14–15; Dkt. 79-2 at ECF 14.)   At the conference, Bacchus wrote a statement in her defense, stating that the incident never happened.  (Pl. DFR 56.1, ¶ 15; Dkt. 79-2 at ECF 19.)

At the meeting, Bacchus's log book came under scrutiny.  Bacchus had not made an entry for February 2, 2011.  In addition, although she stated that on February 4, 2011, she had called a student's parent about the student's behavior, Bacchus had failed to report the call to the administration, or by noting it in her school log book.  (DOE 56.1, ¶¶ 77–80.)  Bacchus disputes the school's position that she was required, under the school's policy, to make entries in her log book regarding the events of February 2, 2011 and February 4, 2011.  (Pl./DOE 56.1 Opp., ¶ 79.)

Thompson deemed the allegations against Bacchus regarding the A.A. incident to be substantiated, and terminated Bacchus on March 11, 2011.  (DOE 56.1, ¶ 82.)  The termination letter cited the verbal abuse incident and other disciplinary issues, including the previous incidents with students and Bacchus's failure to follow school policy regarding her log book.

---

[7]      Bacchus characterizes some of the statements as exculpatory, but does not explain how the false statements against her were coerced by the school, while the exculpatory statements were not.

(Dkt. 79-2 at ECF 14–18.)  The letter also stated that the school had conducted individual interviews with the victim and witnesses, all of whom were separated from each other prior to conducting these interviews.  (Dkt. 79-2 at ECF 14.)  It further stated that the school found the victim and witnesses credible, and Bacchus's written statement not credible.  (Dkt. 79-2 at ECF 18.)

### 6.    Bacchus's Discharge Grievance

On March 15, 2011, Bacchus initiated a discharge grievance.  (DOE 56.1, ¶ 85.)  Roach initially approved the discharge grievance to proceed directly to arbitration.  (Pl. DFR 56.1, ¶ 35.)  The DOE would not consent to directly arbitrating the grievance, so the grievance began at the Step 2 level.  (Union 56.1, ¶¶ 34–37; Pl. DFR 56.1, ¶ 37.)

Wambser represented Bacchus at the Step 2 grievance hearing, which took place on May 11, 2011.  (Pl. DFR 56.1, ¶ 38.)  Prior to the hearing, Bacchus asked Wambser to interview Arjoon and school safety agent Parker[8] as witnesses to the alleged verbal abuse incident involving A.A. on February 2, 2011.  (Bacchus DFR Aff., ¶ 18.)  However, at the hearing, the Union did not present any witness statements or other evidence that corroborated Bacchus's version of the events.  (Pl. DFR 56.1, ¶ 39.)  The DOE did not respond or render a decision on the Step 2 discharge grievance.  (Pl. DFR 56.1, ¶ 40.)

On July 2, 2011, the Union filed a Step 3 grievance on behalf of Bacchus.  (Pl. DFR 56.1, ¶ 41.)  Bacchus again verbally asked Wambser to interview Arjoon and Parker as witnesses to the February 2nd A.A. incident.  (Bacchus DFR Aff., ¶ 18.)  On September 23, 2011, Wambser, Bacchus, and Dickerson attended a Step 3 hearing.  (Pl. DFR 56.1, ¶ 42.)  The Union again did not present any witness statements or other evidence that corroborated Bacchus's version of the

---

[8]      Bacchus' affidavit does not provide Parker's first name.

events.  (Pl. DFR 56.1, ¶ 43.)  On October 21, 2011, the Step 3 grievance panel denied Bacchus's grievance.  (Pl. DFR 56.1, ¶ 45; DOE 56.1, ¶ 84.)

Roach conducted a review of Bacchus's discharge grievance, and determined that it was not suitable for arbitration.  (Union 56.1, ¶ 40.)  On November 10, 2011, the Union wrote and mailed Bacchus a letter informing her of this decision, but the letter was sent to an address on *160th Avenue*, not Bacchus's *106th Street* address.  (Union 56.1, ¶ 41.)  Because of this error, Bacchus did not learn of the Union's decision not to arbitrate her discharge grievance until March 2012.  (Union 56.1, ¶¶ 41, 44.)

### 7. Bacchus's Discrimination Complaints

On December 16, 2009, Bacchus made a complaint of discrimination to the OEO.  (DOE 56.1, ¶ 85.)  Bacchus alleged that Levy, Pepper, O'Connell and LaBella had discriminated against her based on age, color, ethnicity/national origin, and race.  (DOE 56.1, ¶ 86.)  Bacchus further alleged that Levy, Pepper, O'Connell and LaBella had coerced students into writing statements of abuse against her, and had actually written the students' statements themselves.  (DOE 56.1, ¶ 87.)  Bacchus believed that their aim was to have her fired so that they could replace her with Lopez.[9]  (DOE 56.1, ¶ 88.)  The OEO complaint did not mention any remarks by Thompson regarding Bacchus's accent or views on West Indian women, or Pepper, Levy and O'Connell mimicking Bacchus's accent.  (DOE 56.1, ¶ 90.)  However, Bacchus's rebuttal statement referred to Thompson as "having a problem with West Indian women."  (Pl./DOE 56.1 Opp., ¶ 90.)

---

[9]     Bacchus's OEO complaint does not specifically allege that Lopez is white and Polish, and states that Bacchus believed PS 259's aim was to replace her with an aide with less seniority. Her NYSDHR complaint, however, notes Lopez's race and national origin.

On March 3, 2010, Bacchus brought a complaint of discrimination based on race/color and national origin with the New York State Division of Human Rights ("NYSDHR"). (DOE 56.1, ¶ 91.) Bacchus's complaint stated that she had "been the victim of systemic harassment and discrimination by the administrative staff of PS/IS 295" whose "ultimate goal [was] to . . . terminate [her] and fill [her] position with one of their close friends who was previously laid off due to budget constraints." (Dkt. 79-6, Bacchus NYSDHR Complaint at ECF 20.) The complaint further stated that Thompson "was overheard saying that she has a problem with West Indian women." (*Id*.) It also recounted Thompson's request that Bacchus move heavy boxes, a May 20, 2009 accusation by Pepper of professional misconduct, and Bacchus's contention that a "series of fabricated incidents or corporal punishments began to surface against [her]" beginning in December 2009. (*Id*. at ECF 20–21.)

On September 26, 2011, Bacchus brought a complaint of retaliation with the NYSDHR. (DOE 56.1, ¶ 92.) Bacchus's retaliation complaint was premised on the January 2010 bathroom incident; the April 2010 umbrella and handbag incident; the school's disciplinary letter regarding Bacchus's failure to report the slapping of the fifth grade student; and her termination following the February 2011 A.A. incident. (DOE 56.1, ¶ 93.)

At Bacchus's request, the NYSDHR dismissed both complaints for administrative convenience on January 11, 2012, so that Bacchus could pursue her claims in federal court. (DOE 56.1, ¶ 94; Dkt. 57-1 at ECF 299.)

### C.    Procedural History

Bacchus commenced this action on April 4, 2012. (Dkt. 1, Compl.) On May 9, 2012, Bacchus filed her first Amended Complaint. (Dkt. 9, First Am. Compl.) On July 23, 2012, the Honorable William F. Kuntz, II endorsed a joint stipulation by the parties dismissing the City of New York from this action and adding the DOE as a defendant. (Dkt. 16.)

On August 17, 2012, the Union moved for judgment on the pleadings, arguing that the court lacked subject matter jurisdiction over Bacchus's breach of the duty of fair representation claim. (Dkt. 17.)

On August 27, 2012, Bacchus filed her Second Amended Complaint ("SAC"), requesting that the Court approve it *nunc pro tunc*. (Dkt. 20, Second Am. Compl.) Judge Kuntz granted Plaintiff's request in part and denied it in part, noting that Plaintiff had not sought leave of the Court to amend her claims against the Union Defendants, as required under Federal Rule of Civil Procedure 15. (Order dated August 30, 2012.) Judge Kuntz ultimately deemed the SAC filed, but amended it to strike a reference in paragraph 4 that purported to add a common law claim against the Union Defendants.

On March 29, 2013, Judge Kuntz denied the Union's motion for judgment on the pleadings, finding that he had subject matter jurisdiction over Bacchus's breach of the duty of fair representation claim. *Bacchus v. City of New York*, No. 12 CV 1663, 2013 WL 1345153 (E.D.N.Y. Mar. 29, 2013).

On April 19, 2013, this Court was assigned to the case. On October 23, 2013, the Court granted Defendants leave to file motions for summary judgment, as well as leave to Bacchus to file a cross-motion for summary judgment on her duty of fair representation claim. (Order dated October 28, 2013). The parties' motions were fully briefed on October 3, 2014.

## II.     STANDARD OF REVIEW

The Court may grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) ("*Liberty Lobby*"). "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport*

*Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Liberty Lobby*, 477 U.S. at 249); *see also F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *see also Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 273 (2d Cir. 2015) ("'A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") (quoting *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir. 2003)).

The nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp.*, 477 U.S. at 323. "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].'" *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Liberty Lobby*, 477 U.S. at 252) (alterations in original); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012). The nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Brown*, 654 F.3d at 358 (quotations and citations omitted), and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008) (citations and quotations omitted). This is so in employment discrimination cases,

though "direct evidence of discriminatory intent is rare[.]" *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller*, 258 F.3d 62, 69 (2d Cir. 2001)). "'[I]n the discrimination context . . . a plaintiff must provide more than conclusory allegations to defeat a motion for summary judgment.'" *Delaney v. Bank of America*, 766 F.3d 163, 170 (2d Cir. 2014) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where both parties move for summary judgment, as Bacchus and the Union have done with respect to Bacchus's claim for breach of the duty of fair representation, "each party's motion must be examined on its own merits, and . . . all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc*., 249 F.3d 115, 121 (2d Cir. 2001).

## III.   DISCUSSION

Bacchus asserts the following claims in her SAC: (1) causes of action against the DOE and Pepper under Title VII and 42 U.S.C. § 1981, for discrimination and hostile work environment (Count One), and retaliation and retaliatory hostile work environment (Count Two); (2) causes of action against the DOE and Pepper under the NYSHRL and NYCHRL, for discrimination and hostile work environment (Count Three), and retaliation and retaliatory hostile work environment (Count Four); (3) a cause of action against the DOE for breach of the CBA under the Taylor Law and/or the New York City Collective Bargaining Law (Count Five)[10]; and (4) a cause of action against the Union for breach of the duty of fair representation under State and City law (Count Six).

---

[10]     Count Five of the SAC does not include a claim under common law, pursuant to Judge Kuntz's August 30, 2012 order.

**A.** **Dismissal of Bacchus's State and City Law Discrimination and Breach of Contract Claims Against The DOE For Failure To Comply With Education Law § 3813(1)**

The City argues that Bacchus's State and City law discrimination claims, as well as her breach of contract claim, are barred for failure to comply with New York Education Law § 3813(1) ("Section 3813"). (DOE Memo at ECF 13–15, 32–33.) A plaintiff asserting employment discrimination claims against a school district must comply with the notice of claim requirements in Section 3813. Section 3813 states that no action shall proceed against a school district unless "it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action . . . is founded was presented to the governing body of said district or school within three months after the accrual of such claim." N.Y. Educ. Law § 3813(1); *see also Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 311 (E.D.N.Y. 2014).

It is undisputed that Bacchus did not file a formal notice of claim against the DOE on her State and City law discrimination claims, or her breach of contract claim. And though Bacchus filed a complaint with the NYSDHR prior to filing this action, she served that complaint on the DOE's legal department, not its governing board. (DOE Memo at ECF 14 (citing DOE 56.1 ¶¶ 91–92).

Though in some instances courts have allowed a complaint of discrimination filed with the EEOC or the NYSDHR to substitute for the actual notice of claim, they have held plaintiffs to the requirement to serve on the DOE's governing board. "New York's highest court has noted that 'the statutory prerequisite is not satisfied by presentment to any other individual or body, and, moreover, the statute permits no exception regardless of whether the Board had actual knowledge of the claim or failed to demonstrate actual prejudice.'" *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. CV 10 0010, 2010 WL 3958430, at *4 (E.D.N.Y. Oct. 6, 2010)

(quoting *Parochial Bus Systems, Inc. v. Bd. of Educ. of City of New York*, 470 N.Y.S.2d 564, 568 (N.Y. 1983)). *Brtalik* is consistent with the New York Court of Appeals' 2005 decision rejecting "proposals to compromise the strict statutory notice of claim requirement" under Section 3813(1). *See Varsity Transit, Inc. v. Bd. of Educ. of City of New York*, 5 N.Y.3d 532, 536 (N.Y. 2005). Thus, Bacchus may not rely on her service of her NYSDHR claim on DOE's general counsel to satisfy Section 3813.[11]

Bacchus further argues, however, that she was excused from complying with Section 3813 because the CBA between her union and the DOE provided for a detailed four-step grievance procedure, implicitly waiving the applicability of Section 3813 to complaints by employees covered by the CBA. (Pl. Opp. Memo at ECF 11.) In support of her argument, Bacchus cites cases finding Section 3813's notice of claim provision waived where the CBA between the parties contains detailed procedures for the submission of grievances plainly inconsistent with Section 3813. *See, e.g.*, *Matter of Local 832 Terminal Employees of the City of New York v. Dep't of Educ. of the City of New York*, 60 A.D.3d 567, 570 (N.Y. App. Div. 2009) (finding union's petition to compel arbitration was not barred for non-compliance with Section 3813 because the CBA between the parties contained detailed grievance procedures inconsistent with Section 3813); *Matter of Enlarged City School Dist. of Troy v. Troy Teachers Ass'n*, 79

---

[11]  Bacchus cites to N.Y. Gen. Mun. Law § 50-e(3)(a) to argue that her service on the DOE was sufficient because the DOE is a public corporation and that provision allows for service of the notice of claim to an attorney regularly engaged in representing a public corporation. (Pl. Opp. Memo at ECF 14–15.) However, that provision clearly applies to notices of claim for tort actions. *See* N.Y. Gen. Mun. Law § 50-e(1). Indeed, in arguing that the DOE waived the applicability of Section 3813's governing body requirement, Bacchus cites to a case that involved a tort action. *See Nacipucha v. City of New York*, 849 N.Y.S.2d 414 (N.Y. Sup. Ct. 2008).

A.D.2d 738, 739 (N.Y. App. Div. 1980) (finding union's demand for arbitration was not barred for failure to comply with Section 3813).

The Court finds these cases unavailing. In such cases, the party being excused from complying with Section 3813 was also a party to the CBA.[12] Here, Bacchus attempts to argue that as a member of a union, she should be excused from complying with Section 3813 based on the CBA in effect between District Council 37 and the DOE. Bacchus cites *no* case whereby an individual member of a union may rely on the grievance procedures set forth in a CBA to excuse her compliance with Section 3813. Furthermore, because Bacchus's discharge grievance was never brought to arbitration and did not involve her claims for race discrimination, Bacchus cannot rely on the underlying proceeding to argue that the DOE effectively had notice of her state and city discrimination claims, or her breach of contract claim. Thus, the Court finds that Bacchus's failure to comply with Section 3813 requires the dismissal of her State and City law discrimination claims and breach of contract claims against the DOE.

However, the Court does not dismiss Bacchus's State and City law discriminations claims against Pepper for failure to comply with Section 3813. Section 3813 applies to suits against the school district or school officers. In a recent case, the Honorable Arthur D. Spatt found that a principal is not a school officer because a principal does not hold district-wide office. *Benedith*, 38 F. Supp. 3d at 312. Furthermore, Section 3813(2) indicates that administrators and other school employees are not included within the scope of Section 3813(1). *Id.* (quoting *Carlson v. Geneva City Sch. Dist.,* 679 F. Supp. 2d 355, 367 (W.D.N.Y. 2010)). The Court agrees with this analysis. Here, because Pepper is an assistant school principal, and does

---

[12] Bacchus also cites to *N. Picco & Sons Contracting Co., Inc. v. Bd. of Educ. of Bronxville School*, 808 N.Y.S.2d 781, 781 (N.Y. App. Div. 2006), but this case is also inapposite because the plaintiff and defendant had contracted with each other and specifically agreed to a grievance procedure in the contract.

not hold district-wide office, the Court considers her to be an administrator of PS 259, and not a school officer. Thus, Bacchus's claims against Pepper are not barred for failure to comply with Section 3813.

In sum, the Court dismisses Bacchus's State and City law discrimination claims as to the DOE for failure to comply with Section 3813, but not as to Pepper. The Court also dismisses Bacchus's breach of contract claim against the DOE.

### B.    Dismissal of Section 1981 Claims

The SAC pleads several causes of action under 42 U.S.C. § 1981 ("Section 1981") without also pleading a corresponding cause of action under 42 U.S.C. § 1983 ("Section 1983"). (*See* SAC, ¶¶ 78–86.) Bacchus concedes that she cannot bring a Section 1981 claim without also pleading a claim under Section 1983, because Section 1983 provides the exclusive federal remedy for violation of the rights guaranteed in Section 1981. (Pl. Opp. Memo at ECF 17); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). Bacchus requests, through her opposition brief, leave to further amend her complaint to plead a claim under Section 1983.

The Court denies Bacchus's informal request to amend her complaint. Though Federal Rule of Civil Procedure 15(a) provides that the Court shall grant a party leave to amend "when justice so requires," leave to amend should generally be denied in instances of "futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies . . . . or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2006). Here, Bacchus has already amended her complaint twice, filing her SAC in 2012. She provides no reason for her delay in seeking to add a Section 1983 claim; indeed, it is apparent to the Court that the delay is attributable to the fact that her counsel only became aware of the error

through the City's summary judgment briefing.  (*See* DOE Memo at ECF 15–16.)  This does not constitute good cause for granting leave to amend.

The Court thus dismisses Bacchus's Section 1981 claims against the DOE and Pepper.

### C.    Discrimination Claims Pursuant to Title VII and the NYSHRL

#### 1.    Dismissal of Title VII Claims against Pepper

The SAC pleads its Title VII claims against both the DOE and Pepper.  However, there is no individual liability under Title VII.  *See Hart v. Affinita Sec. Grp.*, No. 14 CV 824, 2014 WL 580890, at *2 (E.D.N.Y. Feb. 13, 2014) (citing *Wrighten v. Glowski,* 232 F.3d 119 (2d Cir. 2000); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313–17 (2d Cir. 1995)).  Thus, the Court dismisses Counts One and Two as to Pepper, with prejudice.

#### 2.    *McDonnell Douglas* Burden-Shifting Framework

The Court analyzes Bacchus's Title VII claims against the DOE and her NYSHRL claims against Pepper under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-805 (1973).  *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir. 2000) (noting that *McDonnell Douglas* framework applies to claims brought pursuant to NYSHRL).  First, the plaintiff bears the entire burden of proving, *i.e.*, producing evidence and persuading the jury by a preponderance of the evidence, that she has a *prima facie* case of employment discrimination.  *Tex. Dep't of Cmty. Affairs v. Burdine* ("*Burdine*"), 450 U.S. 248, 252-53 (1981).  To state a *prima facie* case of race or national origin discrimination, a plaintiff must proffer evidence that (1) she belongs to a protected group; (2) she was qualified for her position; (3) her employer took an adverse action against her; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *Kirkland*, 760 F.3d at 225 (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  The plaintiff's burden of proving a *prima*

*facie* case is "not onerous," *Burdine*, 450 U.S. at 253, and "minimal," at best, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

Once a *prima facie* case has been established, the burden of producing evidence, but not persuading the jury, shifts to the defendant, and the defendant is required "to articulate some *legitimate, nondiscriminatory reason*" for its adverse employment decision. *Kirkland*, 760 F.3d at 225 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is a pretext for discrimination. *Id.* The plaintiff's "'admissible evidence must show circumstances that would sufficient to permit a rational finder of fact to infer that the [defendant's] employment decision was more likely than not based in whole or in part on discrimination.'" *Id.* (quoting *Terry*, 336 F.3d at 138).

The burden of persuasion, however, "remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. In other words, even though the defendant's burden is to produce evidence of their nondiscriminatory reasons, such evidence is not subject to attack by way of a "credibility assessment." *St. Mary's Honor Ctr.*, 509 U.S. at 509; *see also Burdine*, 450 U.S. at 254 ("The defendant need not persuade the court that it was actually motivated by the proffered reasons.").

       3.   <u>Discrimination</u>

Bacchus alleges that the City Defendants violated Title VII and the NYSHRL by discriminating against her on the basis of race and/or national origin. The crux of these claims is that the staff at PS 259 trumped up a series of false disciplinary charges in order to justify firing her and replacing her with Lopez, a white school aide of Polish descent who had previously been laid off due to budget cuts.

       *a.*   *Prima Facie Case*

The City does not dispute the first two elements of Bacchus's *prima facie* case—that as a black West Indian, Bacchus belonged to a protected group and that she was qualified to be a

school aide at PS 259.  Furthermore, there is no dispute that Bacchus's termination constitutes an adverse employment action.  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) ("there is no question . . . that termination [of employment] is an adverse employment action.").

Thus, the only potentially disputed issue of fact is whether Bacchus's termination was motivated by race or national origin discrimination.  Bacchus argues that the circumstances of her termination give rise to an inference of discrimination based upon the combination of:  (1) the numerous disciplinary charges the City leveled at her before her termination; (2) Thompson's remarks about West Indians; (2) Thompson, Pepper, Levy and O'Connell mimicking her accent; (4) LaBella calling Bacchus a "mad old lady" and "Aunt Jemima" twice a week; (5) disparate treatment she received in comparison to other aides; and (6) PS 259's re-hiring of Lopez shortly before terminating Bacchus.  (Pl. Opp. at ECF 22–25.)  In contrast, the City argues that the circumstances of Bacchus's termination do not give rise to an inference of discrimination sufficient for her *prima facie* case because: (1) Lopez returned to PS 259 before Bacchus was formally terminated and thus cannot be considered Bacchus's replacement; and (2) any remarks Thompson or others may have made regarding West Indians were at most "stray remarks" not probative of race or national origin discrimination.  (DOE Memo at ECF 20–23.)[13]

---

[13]     The City also argues that because Thompson is deceased, Bacchus's allegations regarding Thompson's comments are inadmissible under FRE 801 and 402.  (DOE Memo at ECF 21.)  The City is correct that "hearsay evidence is inadmissible on a motion for summary judgment." *Pamphile v. Tishman Speyers Properties, L.P.*, No. 03 CV 5964, 2006 WL 1806505, at *5 n.2 (E.D.N.Y. June 29, 2006).  However, it is not evident that Bacchus seeks to offer each of Thompson's statements for the truth of the matter asserted; in certain instances, it is clear that Bacchus offers the statement as evidence of discriminatory animus, not for the truth of the matter asserted (i.e. "Learn to speak the English language").  Thus, at this juncture, the Court is not prepared to rule that Thompson's alleged remarks regarding West Indians constitute inadmissible hearsay.  For purposes of deciding the City's motion for summary judgment, the Court will assume the admissibility of Plaintiff's allegations regarding Thompson's remarks, as the City did in its memorandum.  (*See* DOE Memo at ECF 21 n.5.)  The City may move to exclude Thompson's remarks as hearsay or on relevance grounds under FRE 402 prior to trial.

To determine whether remarks are probative of discrimination or are "stray remarks" not probative of bias, the Court considers "who made the remark, when the remark was made in relation to the employment decision, the remark's content, and the context in which the remark was made." *Obinabo v. Radioshack Corp.*, 522 F. App'x 55, 57 (2d Cir. 2013) (summary order) (citing *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)). No one factor is dispositive. *Henry*, 616 F.3d at 149.

Viewing the evidence in the light most favorable to Bacchus, the Court finds a genuine issue of fact with respect to whether Thompson's remarks were probative of discriminatory animus based on race or national origin.[14] Thompson was the principal of PS 259, and thus an individual with substantial influence over Bacchus's employment, thus weighing in favor of a finding that the remarks were probative of discrimination. *See Sethi v. Narod*, 12 F. Supp. 3d 505, 539 (E.D.N.Y. 2014). The content of the remarks, that Bacchus should learn to speak English and that Thompson did not like West Indians, also weighs in favor of a finding of discriminatory animus. *Id*. at 542. Bacchus also alleges that she overheard Thompson "frequently" make such remarks from 2009 through January 2011, a period coinciding with the period of the warnings and disciplinary proceedings against Bacchus. A reasonable juror could therefore find in Bacchus's favor that Thompson's remarks were more than stray remarks.

Considering the remaining evidence that Bacchus advances in support of her *prima facie* case, the Court finds that, in light of Bacchus's minimal burden at this stage, she has proffered sufficient evidence that could allow a reasonable juror to find she was terminated under

---

[14] Though Bacchus also contends that LaBella made discriminatory remarks, she does not allege that LaBella was a decisionmaker who made such remarks in connection with the employment decisions against her. (Bacchus DOE Aff., ¶ 17.) The Court therefore considers LaBella's remarks in the context of Bacchus's hostile work environment claim.

circumstances giving rise to an inference of race or national origin discrimination.[15]  The Court thus finds a triable issue of fact exists with respect to Bacchus's *prima facie* case of discrimination.

b.     *Legitimate Reasons Advanced by the DOE and Pepper*

The City states that it had legitimate, nondiscriminatory reasons for terminating Bacchus. It points to Bacchus's history of warnings, letters to file, and disciplinary charges, beginning 22 months before her final termination.  (DOE Memo at ECF 23.)  It also invokes Bacchus's suspension, which was upheld by an arbitrator following a hearing where Bacchus testified and was found not credible in her denial of the incident at issue.  (*Id*. at ECF 24.)  Finally, it points to the warning letters, its substantiation of the verbal abuse allegation made by A.A., and Bacchus's admitted failure to report that she had called a student's parent.  (*Id*.).

The Court finds that the City has met its burden to proffer evidence showing that it had legitimate, nondiscriminatory reasons for terminating Bacchus.

c.     *Pretext*

At the pretext stage, a plaintiff must provide more than conclusory allegations to defeat a motion for summary judgment.  *See Delaney*, 766 F.3d at 170 (citing *Gorzynski*, 596 F.3d at 101); *see also Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985) (explaining that at the pretext stage, a plaintiff's allegation of discrimination must be "increasingly sharpened and focused"). An employee may satisfy her burden at the pretext stage by setting forth direct evidence of a discriminatory motive or an indirect showing that "the employer's proffered explanation is unworthy of credence."  *Id*. at 997 (citing *Burdine*, 450 U.S. at 256); *see also Brierly v. Deer*

---

[15]     Though the Court notes that the evidence with respect to Bacchus's national origin claim seems more robust than her race claim, the Court does not differentiate between the claims at this juncture.

*Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005) ("A discrimination claimant may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence[.]'") (case citations omitted).

Here, Bacchus has pointed to a number of irregularities and inconsistencies in the disciplinary record against her that call the integrity of the DOE's disciplinary process into question. Specifically, Bacchus points to the two different versions of M.P.'s statement; the possibility that the student statements were written by more than one person;[16] a report made by a parent who allegedly did not speak English; inconsistent accounts of where the incident with E.S. happened; the DOE's failure to obtain statements from other adult staff members who may have been present during the alleged incidents between Bacchus and students; and witness statements regarding the incident with A.A. that were never produced to Bacchus until this litigation. *See* Section I.B. Bacchus also points to testimony from other school aides corroborating her account that she was the only school aide disciplined for carrying a handbag and umbrella while other aides did so, and testimony from Lopez stating that she was not disciplined as Bacchus was for a comparable incident with a student. (*See* Dkt. 61-7, Bala Dep. at ECF 18; Pl./DOE 56.1 Opp., ¶ 68.f. (citing Lopez Dep. at ECF 56–57)).

Thus, though the City Defendants have set forth evidence detailing long-running concerns with Bacchus's conduct, the Court finds that Bacchus has sufficiently rebutted their evidence to create a genuine issue of material fact on the issue of pretext. She has set forth specific facts that call into question the City's "legitimate, non-discriminatory" evidence. While

---

[16]     The Court has examined the statements at issue and finds that a reasonable juror could conclude that the statements contain handwriting by different people.

"[a] jury might credit all of this proffered evidence, some of it, or none at all," that is a question left for the jury to decide at trial. *Kirkland*, 760 F.3d 223 at 227 (citing *Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 21 (2d Cir. 2012) (internal quotations omitted)).

The Court therefore denies summary judgment to the City Defendants on Bacchus's Title VII and NYSHRL race and national origin discrimination claims.

4.    Hostile Work Environment

Bacchus alleges that the City Defendants subjected her to a hostile work environment in violation of Title VII and the NYSHRL. Hostile work environment claims brought under either statute are analyzed under the same standard. *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013)). To establish a *prima facie* case of hostile work environment, Bacchus must show that the conduct at issue was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and "that a specific basis exists for imputing" the objectionable conduct to the employer. *Id.* (quoting *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir. 1997) (internal quotations omitted)). She must also show that the hostile conduct occurred because of her race or national origin. *Id.* (citing *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002)). The City Defendants argue that Bacchus cannot show that their actions were sufficiently severe or pervasive to alter the conditions of Bacchus's employment. (DOE Memo at ECF 27–28.)

When determining whether the plaintiff has met her burden to show that the conduct at issue was "sufficiently severe or pervasive," the Court examines the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with the victim's job performance." *Rivera,* 743 F.3d at 20 (citations omitted). The incidents at issue must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Das v. Consolidated School Dist. of New Britain,* 369 F. App'x 186, 190 (2d Cir. 2010) (quoting *Alfano,* 294 F.3d at 374)); *see also Alfano,* 294 F.3d at 379 ("There is no fixed number of incidents that a plaintiff must endure . . . we view the circumstances in their totality, examining the nature, severity, and frequency of the conduct."). A plaintiff must link the hostile conduct to her protected characteristics. *Id.* at 374. While a plaintiff need not present direct evidence that she suffered a hostile work environment on the basis of her protected characteristics, she must at least set forth circumstantial or other indirect evidence to allow the Court to conclude that the any facially-neutral incidents were, in fact, discriminatory. *Id.* at 378.

The Court therefore examines "the totality of the circumstances" alleged by Bacchus in support of her hostile work environment claim. Most relevant is her assertion that she "frequently" endured mimicking of her accent by Thompson, Pepper and Levy, and that Thompson "frequently" made comments about how she did not like West Indians. (Bacchus DOE Aff., ¶ 15.) Beyond stating that she endured such conduct frequently, she does not offer any further specifics as to the time or date that these events took place between November 2009 and January 2011. Bacchus also names "several occasions in the Spring and fall of 2010" where Thompson made comments about her proficiency with the English language. (Bacchus DOE Aff., ¶ 16.)[17]

---

[17] These allegations, standing alone, would be insufficient to create an issue of fact with respect to the existence of a hostile work environment because of the lack of specificity and the long period of time at issue. *Cf. Matthews v. Corning Inc.,* 77 F. Supp. 3d 275, 297 (W.D.N.Y. 2014) (finding plaintiff's claims of a retaliatory hostile work environment "general and unsupported" (citing *Hicks,* 593 F.3d at 167)). However, the Court does not view these

Bacchus also alleges that LaBella would call her a "mad old lady" or "Aunt Jemima" at least twice a week. (Dkt. 78-2, Bacchus Dep. at ECF 72.) In addition, Bacchus claims that Pepper would follow her around, would not allow her to use the bathroom without permission, and subjected Bacchus to excessive scrutiny in comparison to other school aides. (Bacchus DOE Aff., ¶ 11.a.) She states that Pepper would berate her and use a harsh tone of voice whenever they spoke, and that each week Pepper would give her a printout of vacant postings for school aide positions. (Bacchus DOE Aff., ¶¶ 11.c, 11.d.) Pepper also increased her workload by making her supervise two classes each lunch period, though other school aides only had one class,[18] and by doing all the photocopying for the school office. (Bacchus DOE Aff., ¶ 11.b.)[19]

Finally, Bacchus relies on the disciplinary charges and reprimands that the DOE and Pepper issued to her. There is no dispute that Bacchus was subjected to a total of six disciplinary incidents over a 15-month period: (1) an incident in November 2009, where Pepper shouted at her without cause; (2) a December 9, 2009 meeting where Thompson and Pepper confronted Bacchus with allegedly fabricated accusations of student abuse; (3) the January 2010 bathroom

---

statements in isolation, but rather as part of the "totality of circumstances." *Das*, 369 F. App'x at 190. Furthermore, the Court does not view its determination that these comments are insufficient to be at odds with the Court's determination that Thompson's remarks constituted "stray remarks." In a stray remarks analysis, one of the factors to be weighed is "when the remark was made in relation to the employment decision." *Obinabo*, 522 F. App'x at 57. In a hostile work environment analysis, however, the Court must consider whether the comments are sustained and sufficiently continuous over the course of Bacchus's employment, not simply when the remarks were made in relation to the adverse actions against her. *See Das*, 369 F. App'x at 190.

[18]    The City Defendants produced a lunch schedule dated November 24, 2010. The schedule appears to show that Bacchus was assigned to supervise two lunchrooms in each lunch period for a total of six lunchrooms, while other aides only had a total of four lunchrooms. (Dkt. 57-1 at ECF 257.)

[19]    Bacchus also relies on the fact that Pepper required her to deliver books using a heavy flatbed cart, but it is undisputed that delivery of books was part of her duties as a school aide. The Court therefore finds this fact does not contribute to Bacchus's claim.

incident resulting in a reprimand; (4) the January 2010 meeting, where she was confronted with the allegedly fabricated allegation by E.S.; (5) the April 2010 umbrella and handbag incident; and (6) the February 2011 A.A. incident. The incidents against Bacchus seem to be clustered in the November 2009 through January 2010 period, and then more dispersed through the remainder of her employment at PS 259. Given the separation in time between the initial disciplinary charges and the later incidents, the Court finds these allegations favor a finding that Bacchus did not suffer pervasive conduct.

The totality of the circumstances thus consists of unspecific allegations regarding frequent comments about Bacchus's national origin, specific allegations regarding frequent comments of a racially tinged nature, frequent conduct by Bacchus's supervisor of a facially-neutral nature, and six allegedly trumped-up disciplinary charges over a 15-month period. Evaluating this evidence in the light most favorable to Bacchus, the Court finds that it meets the threshold, though barely, of creating issues of fact as to whether Bacchus suffered severe and pervasive discriminatory conduct while employed at PS 259. The Court is also persuaded that where, as here, other claims, such as Bacchus's Title VII and NYSHRL discrimination claims, as going forward based on the same evidence as is being relied upon for the challenged claim, the better course is not to dismiss the challenged claim. *See Thibodeaux v. Travco Ins. Co.*, 13-CV-5599, 2104 WL 354656, at *2 (E.D.N.Y. Jan. 31, 2014) ("If one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted.") (citing *Audi Vision Inc. v. RCA Mfg. Co.*, 136 F.2d 621, 625 (2d Cir. 1943) ("There seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of

time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue.") (internal quotation marks omitted)).

The Court therefore denies summary judgment to the City Defendants on Bacchus's hostile work environment claims pled under Title VII and the NYSHRL.

    5.    Retaliation

Bacchus alleges that the City Defendants retaliated against her in violation of Title VII and the NYSHRL, following her complaint to the DOE's OEO on December 16, 2009 and her NYSDHR complaint on March 3, 2010.

To establish a *prima facie* case of retaliation, Bacchus must show: (1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (quoting *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005) (citation and internal quotation marks omitted)). Bacchus's burden at this stage is minimal. *Id.* Once the plaintiff has established her *prima facie* case, the burden shifts to the employer to articulate a non-retaliatory reason for the adverse action. *Id.* at 845. Upon the employer's showing, the burden shifts back to the plaintiff to bring forth evidence establishing that the non-retaliatory reason is pretext for retaliation. *Id.*

There is no dispute that Bacchus engaged in protected activity by making a complaint to the OEO on December 16, 2009 and by filing a complaint with the NYSDHR on March 3, 2010.

The City Defendants also do not dispute their knowledge of Bacchus's complaints.[20]  However, they argue that the employment actions that occurred after these complaints do not constitute "adverse employment actions" under Title VII or the NYSHRL, and that Bacchus cannot establish the requisite causal connection because she has consistently alleged that PS 259 officials had embarked on a campaign to terminate her well before she filed her first complaint with the OEO.

To establish an adverse action for purposes of a retaliation claim, "'[a] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *St. Juste*, 8 F. Supp. 3d at 325 (quoting *Fincher v. Depository Trust and Clearing Co.*, 604 F.3d 712, 721 (2d Cir. 2010)).  Title VII's retaliation provision protects an employee from "retaliation that produces an injury or harm." *Fincher*, 604 F.3d at 721 (citation omitted).  Thus, a broader scope of actions may qualify as "adverse employment actions" for purposes of a retaliation claim than those prohibited by Title VII's anti-discrimination provisions, and an employee is not limited to only those actions that materially affect the terms and conditions of her employment.  *Id.*  Furthermore, the Court must consider the alleged acts of retaliation "both separately and in the aggregate[.]"  *St. Juste*, 8 F. Supp. 3d at 325 (quoting *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010)).

---

[20]     Pepper testified in her deposition that she did not know about Bacchus's OEO and NYSDHR complaints.  However, at this stage, Bacchus may establish the second element of her *prima facie* case by demonstrating that defendants had "general corporate knowledge" of her complaints.  *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 324 (E.D.N.Y. 2014) ("Plaintiff does not have to prove that other specific actors knew of the protected activity as long as Plaintiff can demonstrate general corporate knowledge." (citing *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)).  The City Defendants do not dispute their "general corporate knowledge" of Bacchus's complaints.

The employment actions that could potentially establish the third element of Bacchus's *prima facie* case are: (1) her suspension without pay following the allegation that she pulled E.S.'s hair, which was first decided by Thompson on January 15, 2010 and then upheld following arbitration in August 2011; (2) the January 19, 2010 disciplinary letter issued after the bathroom incident; (3) the warning letter issued on April 15, 2010 following Pepper's reprimand of Bacchus for carrying an umbrella and handbag and delayed reporting of an incident between students; and (4) Bacchus's termination in March 2011.

Considering these actions both separately and the aggregate, the Court finds that Bacchus has sufficiently alleged that she suffered an adverse employment action for purposes of her retaliation claims. As discussed above, her suspension and termination clearly qualify as adverse employment actions. The Court also finds that the disciplinary and warning letters Bacchus received also qualify, since they factored into the DOE's ultimate decision to terminate her. *See Regis v. Metro. Jewish Geriatric Center,* No. 97 CV 0906, 2000 WL 264336, at *8 (E.D.N.Y. Jan. 11, 2000) (noting disciplinary memoranda may constitute adverse employment actions "only if they affect ultimate employment decisions such as promotion, wages, or termination.").

Bacchus's *prima facie* case for retaliation falters, however, on the element of causation. While temporal proximity between the protected activity and the adverse employment actions may satisfy the plaintiff's burden at the *prima facie* stage, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001) (finding plaintiff failed to establish an inference of retaliation where the adverse employment actions "were both part, and the ultimate product, of 'an extensive period of progressive discipline[.]'"); *see also Chang v. Safe Horizons,*

254 F. App'x 838, 839 (2d Cir. 2007) (summary order) (finding plaintiff failed to establish a *prima facie* case of retaliation where she was issued warnings consistent with her employer's progressive discipline policy before termination). Here, Bacchus filed her OEO complaint after receiving reprimands, disciplinary letters and warnings, and she herself alleges that the DOE undertook its disciplinary actions against her so as to terminate her. Bacchus has thus alleged that the actions she suffered were part of an extensive campaign of discipline already underway when she made her first complaint to the OEO. Accordingly, she has failed to establish the causation prong of her *prima facie* case.[21]

Even if Bacchus could establish a *prima facie* case of retaliation, she would not be able to show that "but for" the protected activity, she would not have been terminated. *St. Juste*, 8 F. Supp. 3d at 320 ("If the employer succeeds at the second stage, then the presumption of retaliation dissipates, and the plaintiff must show that, *but for* the protected activity, she would not have been terminated.") (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)). Though "'but-for' causation does not require proof that retaliation was the only cause of the employer's action," the plaintiff must still show that "the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan*, 737 F.3d at 845–46. Here, Bacchus has failed to create a genuine issue of material fact as to the "but for" causation of the actions she suffered following the filing of her OEO and NYSDHR complaints. Throughout her complaints to the OEO, the NYSDHR, and her pleadings in this case, she has consistently maintained that PS 259 sought to terminate her. She fails to set forth any facts that bring into

---

[21]    In her opposition, Bacchus alleges that Pepper angrily made threatening, retaliatory comments to Bacchus. (Pl. Opp. at ECF 34.) Pepper's comment, however, was "you filed a complaint with the [OEO.] Now it's not going to do no good. You still have to go downstairs and unpack those boxes." (DOE Reply Memo at ECF 11.) Even taking this comment in the light most favorable to Bacchus, it is insufficient to give rise to an inference of retaliatory animus, since Pepper's comments relates to Bacchus performing her existing duties.

question whether her termination "would not have occurred in the absence of the retaliatory motive. *Zann Kwan*, 737 F.3d at 846.

The Court therefore grants summary judgment to the City Defendants on Bacchus's Title VII and NYSHRL retaliation claims.

### 6. Retaliatory Hostile Work Environment

Bacchus also alleges a claim of retaliatory hostile work environment in violation of Title VII and the NYSHRL, claiming that the City Defendants subjected her to a hostile work environment in retaliation for her filing an OEO complaint and/or NYSDHR complaint.

To establish a claim for retaliatory hostile work environment, "a plaintiff must satisfy the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct." *Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 438 (E.D.N.Y. 2009).[22] The Court's finding that Bacchus has established the existence of an issue of fact as to the severity or pervasiveness of the alleged harassing conduct with respect to her hostile work environment claim therefore applies to its analysis of this element with respect to her retaliatory hostile work environment claim.

However, Bacchus's retaliatory hostile work environment claim fails for the same reason as her Title VII and NYSHRL retaliation claims fail, *i.e.,* an insufficient showing as to causation.

---

[22]     As the Honorable Brian M. Cogan noted in *Cajamarca v. Regal Entm't Grp.*, 863 F. Supp. 2d 237, 254 (E.D.N.Y. 2012), some courts have questioned whether, following the Supreme Court's 2006 decision in *Burlington Northern & Santa Fe Railway Co. v. White*, a plaintiff could establish a *prima facie* case for retaliatory hostile work environment via a "materially adverse action," as would apply to a retaliation claim, rather than an "adverse employment action," as would normally apply in a hostile work environment claim. 863 F. Supp. 2d 237, 254 (E.D.N.Y. 2012) (citing cases). The Court agrees with Judge Cogan that the Supreme Court "provided no indication in *White* that it intended to expand the reach of the judicially-created claim of retaliatory hostile work environment in addition to lowering the burden of making out a claim based on the retaliatory acts of an employer." *Id*. (citing *Ezuma v. City University of New York*, 665 F. Supp. 2d 116 (E.D.N.Y. 2009)).

To establish a causal connection between the protected activity and the alleged hostility, Bacchus must demonstrate "'some increase in the discrimination or harassment—either a 'ratcheting up' of the preexisting behavior, or new, additional forms of harassment[.]'" *Hall v. New York City Dep't of Transp.*, 701 F. Supp. 2d 318, 339 (E.D.N.Y. 2010) (quoting *Hall v. Parker Hannifan Corp.*, 824 F. Supp. 2d 464, 469 (W.D.N.Y. 2009)). "If, however, 'the discrimination was just as bad before the employee complained as it was afterwards, then the employee's complaints cannot be said to have led to that discriminatory behavior.'" *Id.* (citing *Hall v. Parker Hannifan Corp.*, 824 F. Supp. 2d at 469).

Here, Bacchus filed her OEO complaint on December 16, 2009 and her NYSDHR Complaint on March 3, 2010. Unlike the plaintiff in *Hall v. New York City Department of Transportation*, however, Bacchus does not specifically allege that Thompson, Pepper, Levy or LaBella intensified and/or increased their hostile behavior toward her immediately following the filing of her complaints. 701 F. Supp. 2d at 339 (finding plaintiff established *prima facie* case of retaliatory hostile work environment upon testimony that her co-workers and supervisors' harassment intensified and increased in frequency shortly after she made complaints). Bacchus relies instead on general allegations of hostile behavior by the PS 259 staff; indeed, she only alleges that the hostile behavior "was just as bad as before." *See id.* Accordingly, she has failed to establish the causation prong of her retaliatory hostile work environment *prima facie* case.

The Court therefore grants summary judgment to the City Defendants on Bacchus's retaliatory hostile work environment claims under Title VII and the NYSHRL.

### D. New York City Human Rights Claims

Due to an amendment of the New York City Human Rights Law ("NYCHRL") in 2005, claims brought under the NYCHRL are no longer construed as coextensive with federal and State law claims. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir.

2013). Therefore, the Court undertakes a separate and independent analysis of Bacchus's claims under the NYCHRL. *Id.* The Court considers "the totality of the circumstances," and while courts may dismiss "'truly insubstantial cases,' even a single comment may be actionable in the proper context", for purposes of the NYCHRL. *Id.* (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 41 (N.Y. App. Div. 2009)). Thus, summary judgment may still be awarded in NYCHRL cases, "but only if the record establishes as a matter of law that a reasonable jury could not find the employer liable under any theory." *Id.* (case citations omitted).

1.     Discrimination/Hostile Work Environment

The NYCHRL makes it unlawful for an employer (or an employee or agent thereof) to discharge an employee based on the employee's race or national origin. N.Y.C. Admin. Code § 8–107(1)(a). Individual employees may also be held liable under the NYCHRL if they participated in the conduct giving rise to the discrimination claim. *Dillon v. Ned Mgmt., Inc.*, 85 F Supp. 3d 639, 658 (E.D.N.Y. 2015) (citing *Britt v. Merrill Lynch & Co.*, No. 08 CV 5356, 2011 WL 4000992, at \*11 (S.D.N.Y. Aug. 26, 2011)). "To hold an individual defendant liable for creating a hostile work environment under NYCHRL, evidence must show that the claim relates directly to the conduct and behavior of the individual." *Id.* The NYCHRL also prohibits an employer, or an employee or agent thereof, to discriminate against an employee based on race or national origin with respect to the "terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a). Because claims for hostile work environment and discrimination are governed by the same provision of the NYCHRL, they are analyzed under the same standard. *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 449–50 (E.D.N.Y. 2013) ("The

NYCHRL does not differentiate between discrimination and hostile work environment claims.").[23]

While it remains unclear to what extent *McDonnell Douglas* applies to NYCHRL claims, the Second Circuit recently determined that it was not necessary to decide that issue "because the NYCHRL simplified the discrimination inquiry[.]" *Mihalik*, 715 F.3d at 110 n.8. To defeat summary judgment on a discrimination or hostile work environment claim, the plaintiff "need only show that her employer treated her less well, at least in part for a discriminatory reason." *Id.* at 110. The employer may then "present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination," but is only entitled to summary judgment where "the record establishes as a matter of law that 'discrimination play[ed] *no* role' in its actions." *Id.* (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 n.27 (N.Y. App. Div. 2009)).

Having dismissed the DOE from Bacchus's NYCHRL claims for failure to comply with Section 3813, Bacchus's NYCHRL claims remain only as to Pepper. Because Bacchus has proffered evidence showing that Pepper mimicked Bacchus's accent, gave her a disproportionate workload, and disciplined her for conduct that other school aides were not disciplined for, Bacchus has established an issue of fact on whether Pepper treated her less well in part for a discriminatory reason. The Court therefore denies summary judgment to Pepper on Bacchus's NYCHRL discrimination/hostile work environment claim.

---

[23]     The NYCHRL only takes into account the severity or pervasiveness of the alleged hostile conduct at the damages stage. *Dillon*, 85 F. Supp. 3d at 657 (citing *Mihalik*, 715 F.3d at 110, 113).

## 2. Retaliation and Retaliatory Hostile Work Environment

The NYCHRL makes it unlawful for an employer, or an employee or agent thereof, to retaliate or discriminate against an employee for opposing a practice prohibited by the statute. N.Y.C. Admin. Code § 8–107(7). It further provides that "the retaliation or discrimination complained of under this subdivision *need not* result in an ultimate action with respect to employment, . . . or in a materially adverse change in the terms and conditions of employment, ... provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." *Id.* (emphasis added). "Thus, to prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citations omitted); *see also Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 791 (N.Y. App. Div. 2013) ("a plaintiff must show that (1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct.").

The Court dismisses Bacchus's NYCHRL retaliation and retaliatory hostile work environment claims for the same reasons as her retaliation claims under federal and State law, *i.e.*, failure to establish a "causal connection between the protected activity and the alleged retaliatory conduct." *Id.* "An employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged

conduct." *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 42 (N.Y. App. Div. 2012) (dismissing plaintiff's NYCHRL retaliation claim for lack of causation). Here, Bacchus has failed to establish a genuine issue of fact that the actions Pepper took against her were anything but a "continuation of a course of conduct." The Court therefore grants summary judgment to Pepper on Bacchus's NYCHRL retaliation and retaliatory hostile work environment claims.

### E. Duty of Fair Representation

Count Six of the SAC claims that the Union breached its duty of fair representation to Bacchus in violation of New York Civil Service Law § 209-a(2) ("Taylor Law") and New York City Collective Bargaining Law § 12-306 ("NYCCBL"). (SAC, ¶¶ 4, 99–102.) The Union moves for summary judgment on this count. Bacchus cross-moves for summary judgment.

#### 1. NYCCBL

As a threshold matter, the Union argues that Bacchus can only bring her duty of fair representation of claim under New York's Taylor Law, and not also the NYCCBL, because the DOE is not subject to the NYCCBL. (Union Memo at ECF 24–25.) Bacchus does not meaningfully address this jurisdictional argument in her opposition to the Union's motion. (Pl. Opp. at ECF 15.)[24]

Whether a former DOE employee may bring a claim for breach of the duty of fair representation under the NYCCBL appears to be a matter of first impression in this Circuit. While the NYCCBL states that a "public employee organization" may not breach its duty of fair

---

[24]     Bacchus relies on a prior ruling by Judge Kuntz to argue that she may bring a claim for breach of the duty of fair representation under the NYCCBL. However, the issue before Judge Kuntz was whether the New York State Public Employment Relations Board had exclusive jurisdiction over a public employee's allegations of improper practices by his or her union. *Bacchus v. City of New York*, No. 12 CV 1663, 2013 WL 1345153, at *3 (E.D.N.Y. Mar. 29, 2013). Because Judge Kuntz did not specifically confront the issue of whether the DOE is subject to NYCCBL, the Court finds that Judge Kuntz's prior decision has no bearing on the issue presented in the Union's current motion.

representation to its members, N.Y.C. Admin. Code § 12-306(b)(3), the NYCCBL does not apply to every public employee in the city. *See* N.Y.C. Admin. Code § 12–304. By its terms, the NYCCBL applies to the employees of all municipal agencies, agencies or public employers *subject to the law by state statute*, and other public employers *electing to be subject to the law*. *Id.* (emphasis added). The NYCCBL treats the Board of Education ("BOE")[25] as a "public employer." N.Y.C. Admin. Code § 12–303(f). The BOE is not subject to the NYCCBL, as there appears to be no state statute requiring its application, and the BOE has not elected to be subject to it. *Matter of Application of Plumbers Local Union No. 1, U.A., AFL-CIO*, Index No. 112139/08, 2010 N.Y. Misc. LEXIS 1470, at *18–19 (N.Y. Sup. Ct. Feb. 2, 2010).

Following New York City's amendments to the Education Law in 2002, the BOE created the DOE. *Matson v. Bd. of Educ. of City School Dist. of New York*, 631 F.3d 57, 77 (2d Cir. 2011) (Straub, J., dissenting) (citing BOE Bylaws); *Eason-Gourde v. Department of Educ.*, No. 14 CV 7359, 2014 WL 7366185, at *1 (E.D.N.Y. Dec. 23, 2014) (citing *Matson*, 631 F.3d at 77); *Matter of Application of Plumbers Local Union No. 1, U.A., AFL-CIO*, Index No. 112139/08, 2010 N.Y. Misc. LEXIS 1470, at *9 (N.Y. Sup. Ct. Feb. 2, 2010). As the Supreme Court of New York (New York County) noted in an unpublished decision, New York City did not update the NYCCBL upon its amendment of the Education Law. *Id.* at *22 n.9 (N.Y. Sup. Ct. Feb. 2, 2010). And so the status of the DOE under the NYCCBL is unclear.

The Court sees no reason to treat the DOE differently than the BOE, which created it, for purposes of the NYCCBL. The Court therefore finds that the DOE comes within the definition of a "public employer" under N.Y.C. Admin. Code § 12–303(f), and therefore can only be subject to the NYCCBL if there is a State statute requiring its application, or the BOE elects to

---

[25] The New York City Board of Education is a creation of state statute and consists of thirteen appointed members. N.Y. Educ. Law § 2590-b.

be subject to the NYCCBL.[26] *Accord Matter of Application of Plumbers Local Union No. 1,* 2010 N.Y. Misc. LEXIS 1470 at *18–19. Finding neither to be the case, the Court finds that the Union does not owe Bacchus a duty of fair representation under the NYCCBL. Her cause of action for breach of that duty, therefore, arises exclusively under the Taylor Law.

2. <u>Statute of Limitations Applicable to Claim</u>

The Union first claims that Bacchus's duty of fair representation claim under the Taylor Law is time-barred. Bacchus's Taylor Law claim has a four-month statute of limitations: "Any action or proceeding against an employee organization . . . which complains that such employee organization has breached its duty of fair representation regarding someone to whom such employee organization has a duty shall be commenced within four months of the date the employee or former employee knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, *whichever is later.*" N.Y.C.P.L.R. § 217(2)(a) (emphasis added). Bacchus filed this action on April 4, 2012. Thus, for her duty of fair representation claim to be timely, it must have accrued on or after December 4, 2011.

The Union argues that Bacchus's claim is time-barred because the conduct upon which Bacchus bases her claim precedes December 4, 2011. (Union Memo at ECF 74–75.) On September 1, 2011, the Union informed Bacchus that her suspension had been upheld at the arbitration and her suspension grievance had been denied. (Union 56.1, ¶ 32.) On November 10,

---

[26]     Nor could Bacchus argue that the DOE is a mayoral agency subject to the NYCCBL. In *Matter of Application Plumbers Local Union*, the Supreme Court of New York (New York County) interpreted the NYCCBL to find that the DOE was not a mayoral agency within the scope of that law. 2010 N.Y. Misc. LEXIS 1470 at *19. The Court agrees, given that the BOE created the DOE, and the DOE is a separate entity from the City. *See, e.g.*, *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 210 (E.D.N.Y. 2014) ("The City and the DOE are separate legal entities") (citing *Perez v. City of New York,* 837 N.Y.S.2d 571, 572 (N.Y. App. Div. 2007); *Falchenberg v. New York Dep't of Educ.,* 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005)).

2011, the Union wrote a letter to Bacchus informing her that it would not take her discharge grievance before an arbitration panel. (Dkt. 73-2 at ECF 46.)

Bacchus, however, points out that the letter pertaining to her discharge grievance was mailed to an incorrect address. (*Id*.) She thus did not learn that the Union would not be pursuing her discharge grievance at arbitration until March 22, 2012. (Pl. DFR 56.1 Opp., ¶ 44.) The Union does not dispute that the letter was mailed to an incorrect address or that Bacchus did not find out about the Union's decision until March 2012. (Union 56.1, ¶¶ 41, 44.)

The C.P.L.R. is clear that the applicable statute of limitations runs "within four months of the date the employee . . . *knew* . . . that the breach has occurred." N.Y.C.P.L.R. § 217(2)(a). Given that Bacchus did not learn that the Union would not be pursuing her discharge grievance at arbitration until March 22, 2012, the Court finds that her claim for breach of the duty of fair representation is timely. *See Jackson v. New York City Transit*, No. 05 CV 1763, 2005 WL 2664527, at *3 (E.D.N.Y. Oct. 19, 2005) (finding duty of fair representation claim accrued on date that plaintiff learned that his union would not pursue his grievance), *aff'd* 348 F. App'x 666 (2d Cir. 2009).[27]

### 3. Breach of Duty of Fair Representation Under Taylor Law

"Under New York law, public sector unions owe a duty of fair representation to their members." *Bacchus*, 2013 WL 1345153, at *2. New York's Taylor Law makes it unlawful "for

---

[27] Bacchus's 56.1 statement in support of her motion for partial summary judgment also references the Union's failure to investigate her grievance related to her suspension. (Pl. DFR 56.1, ¶¶ 69–74.) To the extent Bacchus alleges that the Union breached its duty of fair representation with respect to her suspension grievance, the claim is clearly time-barred. Bacchus's memo also makes reference to the Union ignoring her complaint for racial discrimination. (Pl. DFR Memo at ECF 12.) However, her 56.1 statement does not set forth any facts relevant to the Union's alleged failure to act on Bacchus's racial discrimination complaint. The Court therefore excludes this allegation from the scope of her fair representation claim.

an employee organization or its agents [to] deliberately . . . breach its duty of fair representation to public employees[.]"  N.Y. Civ. Serv. Law § 209–a(2).

"The standard for establishing a breach of the duty of fair representation is generally the same whether [the] plaintiff is alleging such a breach under federal law or New York state law." *Gordon v. Health & Hospitals Corp.*, No. 06 CV 1517, 2007 WL 2021853, at *2 (E.D.N.Y. July 12, 2007) (citing cases).  To establish a breach of the duty of fair representation, the plaintiff must show that the union's actions were arbitrary, discriminatory, or in bad faith, and that the union's conduct seriously undermined the arbitral process.  *See Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (citing cases); *see also Beachum v. AWISCO New York*, 785 F. Supp. 2d 84, 101 (S.D.N.Y. 2011) (citing *Barr v. United Parcel Serv*., 868 F.2d 36, 43 (2d Cir. 1989)), *aff'd sub nom. Beachum v. AWISCO New York Corp.*, 459 F. App'x 58 (2d Cir. 2012); *Grassel v. Pub. Emp't Relations Bd*., 301 A.D.2d 522, 523 (N.Y. 2003).  To survive a motion for summary judgment, the plaintiff must "'set forth concrete, specific facts from which one can infer a union's hostility, discrimination, bad faith, dishonesty or arbitrary exercise of discretion.'"  *Gold v. Local Union No. 888*, 758 F. Supp. 205, 208 (S.D.N.Y. 1991) (quoting *Spielmann v. Anchor Motor Freight, Inc.*, 551 F. Supp. 817, 822 (S.D.N.Y. 1982)).

### a.  Arbitrary conduct

Bacchus opposes the Union's motion and seeks summary judgment by arguing that the Union breached its duty to her through its arbitrary conduct.  (Pl. DFR Memo at ECF 11.)  To establish this claim, Bacchus must show that the union's behavior was "so far outside a wide range of reasonableness, as to be irrational."  *Torres v. Int'l Bhd. of Teamsters*, No. 13 CV 5352, 2015 WL 774679, at *5 (S.D.N.Y. Feb. 20, 2015) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citation omitted)).  Where a union determines, after a good faith

investigation of the plaintiff's grievance, that the claim is unsubstantial, the union satisfies its duty of fair representation. *Id.* (citing *Taylor v. MCI Int'l*, 215 F. Supp. 2d 347, 350 (S.D.N.Y. 2002)). Indeed, so long as the union's action "is based on a reasoned decision," it will not be found arbitrary. *Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1226 (E.D.N.Y. 1990) (denying summary judgment on plaintiff's duty of fair representation claim where there was "no explanation or excuse" for the union's action).

Here, Bacchus points to various actions or inactions by the Union: (1) failure to investigate the February 2, 2011 A.A. incident; (2) relying on Pepper's investigation into the A.A. incident, where Pepper did not supply the full record on A.A. statement to Bacchus; (3) ignoring Bacchus's requests to interview other adult school staff present during the A.A. incident, and to obtain video footage that could have corroborated Bacchus's innocence. (*See* Pl. DFR Memo at ECF 12; Bacchus DOE Aff., ¶¶ 17–18.) Bacchus maintains that the video footage would discredit the two students who first reported the alleged incident to Pepper, because it would show that these students were not sitting near A.A. (Bacchus DOE Aff., ¶¶ 19–20.)

The Court finds that a genuine issue of material fact exists as to whether the union acted arbitrarily. The Union claims that it acted within the range of reasonableness in its handling of her discharge grievance. More specifically, the Union argues that it followed its internal processes and procedures when pursuing Bacchus's discharge grievance during Steps 2 and 3, and that Roach based her decision against pursuing the grievance at arbitration "on experience, knowledge and common sense." (Union Memo at ECF 19). However, the Union offers no explanation for why Wambser ignored Bacchus's verbal requests to interview additional staff members who may have witnessed the incident, *i.e.*, Arjoon and Parker, and students who might have corroborated her version of events. The Union merely states that Bacchus made no written

request to Wambser on this point, but Bacchus avers that she made repeated verbal requests to Wambser. (*Compare* Union 56.1, ¶ 52 *with* Bacchus DFR Aff. ¶¶ 17-18.)  Nor does the Union explain why Roach initially approved Bacchus's discharge grievance to proceed directly to arbitration, but then determined that it should not proceed to arbitration. (*See* Pl. DFR 56.1, ¶ 35, 62.)  The Union also has no explanation for why the additional student statements obtained by O'Connell were not before the Step 2 and Step 3 grievance panels.  Indeed, it is not apparent to the Court that the Union was even aware of these statements before they were revealed to Bacchus during the discovery exchanged in this case.[28]

Bacchus thus has raised sufficient concrete facts that could lead a jury to find that the Union handled her discharge grievance "in an arbitrary fashion."  *See Gold*, 58 F. Supp. at 208 (S.D.N.Y. 1991) (denying summary judgment to union based on facts raised by plaintiff on duty of fair representation claim).  Unlike the plaintiff in *Gonzalez*, who failed to identify any information or favorable witnesses that the union could have discovered through further investigation, Plaintiff has identified specific individuals and witness statements that could have corroborated her innocence.  *See Gonzalez v. Airborne Express, Inc.,* No. 02 CV 3369, 2006 WL 229913, at *6 (E.D.N.Y. Jan. 31, 2006) (in granting summary judgment to union, finding that plaintiff failed to identify any information or favorable witnesses union would have discovered as a result of further investigation), *aff'd*, 226 F. App'x 54 (2d Cir. 2007).

---

[28]     If the Union was aware of these statements and determined them to be of little value to Bacchus, the Union should have put forth its reasoning as part of its motion or in response to Bacchus's motion.  If the Union was not aware of these statements, as the Court suspects, then there arises the question of whether the Union would have uncovered these statements by conducting its own investigation, or by asking more probing questions of DOE.  These are all questions that are appropriate for the jury to decide in determining whether the Union acted arbitrarily in its representation of Bacchus in her discharge grievance.

Despite the Court's finding against the Union, the Court refrains from granting summary judgment to Bacchus, because an issue of fact remains as to whether the Union's conduct "seriously undermined" the arbitral process. *See Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 563 (S.D.N.Y. 2005) ("plaintiff cannot prevail on [duty of fair representation] claim unless she establishes that further action on the Union's part would have resulted in a favorable outcome"). Though Bacchus has identified specific information and witnesses that tend to corroborate her version of events, such evidence does not undisputedly refute the allegations against her. Thus, it is not clear that, armed with this material, the Union's representation of Bacchus would have been more effective or that "it would have resulted in a favorable outcome." *Id*.

### b. Bad faith

Bacchus opposes the Union's motion for summary judgment by arguing that a genuine issue of material fact exists as to whether the Union acted in bad faith. (Pl. DFR Opp. at ECF 16.) "Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." *Spellacy*, 156 F.3d at 126; *see also Musto v. Transport Workers Union of America*, 818 F. Supp. 2d 621, 635 (E.D.N.Y. 2011) (citing *Spellacy*, 156 F.3d at 126)).

In urging the Court to deny summary judgment to the Union, Bacchus argues that the Union "connived with Thompson in preventing Bacchus from gathering evidence and interviewing witnesses," "repeatedly sided with the Administration's position," "undermined [her] defense to the fabricated allegations of misconduct," and represented that her grievance would be pursued to arbitration when, in fact, the Union had abandoned the grievance. (*Id*.) But the only concrete evidence to which Bacchus cites in support of her argument is the mailing of the November 4, 2011 letter regarding her grievance to the wrong address. (*Id*. at ECF 17.) The

Court finds the mis-addressed letter insufficient to create a genuine issue of material fact as to whether the Union acted in bad faith.  That the Union's November 4, 2011 letter was addressed to a residence on "160th Avenue", as opposed to Bacchus's residence on "106th Street" (Union 56.1, ¶¶ 29, 41), plainly suggests a typographical error.  It is well established that negligence by the union is insufficient to establish a breach.  *Beachum*, 785 F. Supp. 2d at 84 (citing *Vaughan v. Airline Pilots Ass'n*, 604 F.3d 703, 709 (2d Cir. 2010)).  Without further concrete evidence that would tend to support the allegation that the Union colluded with the DOE, or that the Union engaged in fraud or dishonest conduct, a reasonable juror would not find that the Union acted in bad faith.

### c.  Denial of Summary Judgment

Accordingly, the Court denies summary judgment to Bacchus and the Union on Bacchus's claim that the Union breached its duty of fair representation through arbitrary conduct. This claim will proceed to trial.  The Court grants summary judgment to the Union on Bacchus's claim that the Union breached its duty of fair representation by acting in bad faith.

**IV.    CONCLUSION**

For the reasons set forth above, the Court hereby grants the City Defendants' motion for summary judgment in part and denies it in part, denies the Union's motion for summary judgment, and denies Bacchus's motion for summary judgment.  Specifically, the Court:

- dismisses Bacchus's breach of contract claim, NYSHRL discrimination claim, and NYCHRL discrimination claim against the DOE;

- dismisses Bacchus's 42 U.S.C. § 1981 claims;

- dismisses Pepper from Bacchus's Title VII claims;

- denies summary judgment to the City Defendants on Bacchus's Title VII discrimination claim against the DOE and her NYSHRL discrimination claim against Pepper;

- denies summary judgment to the City Defendants on Bacchus's Title VII and NYSHRL hostile work environment claim;

- grants summary judgment to the City Defendants on Bacchus's Title VII and NYSHRL retaliation claims, including its retaliatory hostile work environment claim;

- denies summary judgment to Pepper on Bacchus's NYCHRL discrimination/hostile work environment claim;

- grants summary judgment to Pepper on Bacchus's NYCHRL retaliation and retaliatory hostile work environment claims;

- dismisses Bacchus's NYCCBL breach of the duty of fair representation claim against the Union; and

- denies summary judgment to the Union and Bacchus on Bacchus's state law breach of the duty of fair representation claim.

Thus, the following claims will go to trial: Bacchus's (1) Title VII discrimination claim against the DOE, (2) NYSHRL discrimination claim against Pepper, (3) Title VII hostile work environment claim against the DOE; (4) NYSHRL hostile work environment claim against Pepper; (5) NYCHRL discrimination/hostile work environment claim against Pepper; and (6) State law breach of the duty of fair representation claim against the Union.  The parties are ordered to file a proposed joint pre-trial order within ninety (90) days of the date of this Order.

SO ORDERED.


_/s/ Pamela K. Chen_
Pamela K. Chen
United States District Judge

Dated: September 30, 2015
       Brooklyn, New York